# LENNON, MURPHY & LENNON, LLC – *Attorneys at Law*

| | | |
|---|---|---|
| The GrayBar Building | Patrick F. Lennon - *pfl@lenmur.com* | Tide Mill Landing |
| 420 Lexington Ave., Suite 300 | Charles E. Murphy - *cem@lenmur.com* | 2425 Post Road |
| New York, NY 10170 | Kevin J. Lennon - *kjl@lenmur.com* | Southport, CT 06890 |
| *phone* (212) 490-6050 | Nancy R. Peterson - *nrp@lenmur.com* | *phone* (203) 256-8600 |
| *fax* (212) 490-6070 | | *fax* (203) 256-8615 |

June 11, 2007

<u>*Via Facsimile (212) 805-7968*</u>
Hon. Kenneth M. Karas
United States District Judge
United States District Court
Southern District of New York
Daniel P. Moynihan U.S. Courthouse
500 Pearl Street, Room 920
New York, NY 10007



MEMO ENDORSED
ELECTRONICALLY FILED
DOC #:
DATE FILED: 6/13/07

     Re:    <u>*Centauri Shipping Ltd. v. Western Bulk Carriers KS et al*</u>
            Case no.:    07 Civ 4761 (KMK)
            Our ref.:    07-1132

Dear Judge Karas:

     We are instructed by Western Bulk Carriers KS (hereafter "WBC") in the above-captioned matter. On June 5 the plaintiff, Centauri Shipping Ltd. (hereafter "Centauri") filed a Verified Complaint in support of its prayer for a maritime attachment in the sum of $15,350,796.00 pursuant to Supplemental Rule B of the Federal Rules of Civil Procedure. On the same date your Honor issued an ex parte Order authorizing the issuance by the Clerk of Court of Process of Maritime Attachment and Garnishment (hereafter "PMAG") in the amount requested by Centauri. Since that time Centauri has commenced service of its PMAG on garnishee banks located within the Southern District of New York in an effort to secure its alleged claims against WBC.

     While WBC fully contests the merits of Centauri's alleged claims it has agreed to post a bond pursuant to Supplemental Rule E(5) in the full amount of Centauri's alleged claims in order that further service of Centauri's PMAG be avoided so that WBC's business transactions are not further impacted. WBC is heavily engaged in worldwide shipping and must be able to carry out its everyday financial transactions via the New York banking system or will suffer heavy losses all of which it reserves the right to claim against Centauri.

     We proposed to Centauri, via its New York counsel Kirk Lyons, reading below in copy, as early as Friday afternoon, to agree to post a bond for the full amount of Centauri's claims, as have been alleged in its Verified Complaint, in exchange for Centauri's agreement to stay further service of its PMAG up until the close of business today. However, unfortunately, Centauri did

not agree to this proposal and instead initially advised us that it may be willing to accept a bank guarantee issued from a first class New York or London bank in lieu of a bond. WBC is based on Oslo, Norway and its bank is Nordea Bank based in Oslo and this is known to Centauri.

WBC does not agree to provide a bank guarantee as it does not have a bank in London or New York for such purposes. Further, New York banks do not routinely issue such guarantees and as no part of the dispute between Centauri and WBC concerns London there is no legitimate reason to involve that jurisdiction in this matter. WBC's offer to post a bond as per Supplemental Rule E(5) from Western Surety - a reputable and well-financed surety part of the CNA group – is entirely consistent with the letter and spirit of Supplemental Rule E(5) and WBC seeks Court approval of the bond it has proposed to furnish to Centauri. A copy of WBC's proposed bond is annexed hereto for the Court's review. At this time we have had further conversations with Centauri's NY counsel and he now advises that his client agrees to accept a bond, albeit with slightly different language, but will not agree to cease and desist further service of its PMAG whilst the bond is being finalized.

We draw the Court's attention to the fact that WBC's offer to fully secure Centauri's claim was not the product of negotiation. Rather, WBC simply seeks to further avoid the harsh impact on its business due to Centauri's daily service of the PMAG. Because it is highly inequitable for Centauri to have delayed agreement on the proposed bond and to not agree to cease and desist further service of its PMAG, especially where it will be provided with full security for Centauri's alleged claims, WBC further request that the Court order Centauri to cease and desist from further service of its PMAG while the bond is finalized and provided to Centauri. Further, the cease and desist is required in that WBC will be making a premium payment vie electronic funds transfer to the surety which will very likely route through New York. Obviously, these funds are restrained then WBC's good faith efforts to deal with Centauri's attachment will be further stymied since the bond will not be issued until the premium payment has been received.

The salient difference between WBC's proposed bond language and that requested by Centauri is the inclusion of language in the fourth paragraph referring to Angolan court proceedings. A copy of Centauri's requested bond is also attached hereto for the Court's review. WBC only agrees to secure the NY proceeding filed by Centauri and does not agree to secure the Angolan proceeding in any manner. If Centauri wants Angolan security it is certainly entitled to seek the same in an appropriate forum. The Verified Complaint filed by Centauri makes specific reference to the Angolan proceedings but further advises, as it must, that Centauri's New York action is brought to enforce the judgments entered by the Angolan courts (para . 19) and seeks the recognition and enforcement of the Angolan court judgment(s) pursuant to international comity (WHEREFOR clause – section (c)). WBC has advised Centauri at all times that it is reserving all of its rights to oppose the recognition and enforcement of any Angolan court judgments obtained against it by Centauri in connection with provision of substitute security.

The instant action for which a Rule B attachment was sought and granted is the only proceeding that WBC need, and lawfully can be obligated (via either service of Centauri's PMAG or substitute security), to secure. WBC will not agree to post a bond with the language sought by Centauri and instead will only agree to furnish a bond with the language it has proposed. WBC's proposed bond eliminates any vagueness or ambiguity with respect to the

2

purpose of the bond whereas Centauri's language would arguably create a scenario whereby payment under the bond could be sought following the issuance of Angolan judgments even though the same have not yet been recognized in the New York proceeding although this is expressly acknowledged by Centauri in its Verified Complaint filed in support of its prayer for maritime attachment.

We appreciate your Honor's time and attention to the foregoing and we are happy to present ourselves, either in person or telephonically, before your Honor to discuss the foregoing at any time convenient to the Court. We again stress that this is a matter of utmost import to WBC and as such, and to the extent necessary, we ask that your Honor consider this letter as a request by WBC for an immediate hearing pursuant to Supplemental Admiralty Rule E(4)(f) so that WBC may be heard in support of its request to compel Centauri to accept its proposed bond as substitute security for its alleged claims as is provided for expressly by Supplemental Rule E(5).

Respectfully submitted,

Kevin J. Lennon (KL 5072)

KJL/bhs
Enclosures

cc: **_Via Facsimile (212) 594-4589_**
Lyons & Flood LLP
Attorneys for Centauri Shipping Ltd.
65 W. 36th Street, 7th Floor
New York, NY 10018
Attn: Kirk M.H. Lyons, Esq.

*The Court will hold a conference on June 15, 2007 at 11:15 am to discuss the attachment and the proposed bond.*

SO ORDERED

KENNETH M. KARAS U.S.D.J.
6/11/07