LENNON, MURPHY & LENNON LLC
Attorneys for Defendant
WESTERN BULK CARRIERS KS
Patrick F. Lennon (PL 2162)
The GrayBar Building
420 Lexington Avenue, Suite 300
New York, NY 10170
(212) 490-6050 - phone
(212) 490-6070 - facsimile

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------X
CENTAURI SHIPPING LIMITED,           :         07 Civ 4761 (KMK)

          Plaintiff,              :         ECF Case

  - against -                                :


WESTERN BULK CARRIERS KS,            :
WESTERN BULK CARRIERS AS, and
WESTERN BULK AS,                     :

          Defendants.            :
------------------------------------------------X

## DECLARATION OF ANDREW STUART RIDINGS IN SUPPORT OF DEFENDANTS' MOTION TO VACATE MARITIME ATTACHMENT

Andrew Stuart Ridings declares under penalty of perjury of the laws of the United States of America as follows:

1. I am a Solicitor of the Supreme Court of England and Wales and a Partner in the firm of Waterson Hicks of the above address. I have had the conduct of this matter on behalf of the Defendant, Western Bulk Carriers KS ("WBC") in relation to proceedings, *inter alia*, in England and Angola. I am authorised by WBC to make this statement.

2. In so far as the contents of this statement are within my own knowledge,

they are derived from my conduct of this matter on behalf of WBC and are true. Insofar as they are not within my own knowledge, they are derived from information, documents and advice which have been given to me and are true to the best of my information and belief. In particular, I have been given information concerning the proceedings in Angola by Dr. Mendes and Mr. Napoleao, lawyers appointed on behalf of WBC in Luanda, Angola.

3. I refer to a bundle of relevant copy documents which is exhibited hereto marked "ASR1". Unless otherwise stated, references to page numbers in this statement, appearing in bold typeface and square brackets, are to pages of that exhibit. Unless otherwise stated where documents are exhibited relating to proceedings in Angola an English translation of a document is exhibited first followed by a copy of the original in Portuguese.

4. The current dispute began in January 2004 when WBC entered into a freight forward "swap" agreement ("FFA") with Navitrans Maritime Inc. ("Navitrans"). FFAs are, in essence, contracts for the payment of any difference between the stated contract rate and the specified fluctuating freight indices. These types of contract are often used by WBC in order to hedge their freight exposure in relation to the physical chartering and re-letting of vessels, which is the substance of WBC's business.

5. In relation to the January FFA the contract rate was $22,400 per day and the relevant index was the BHMI Routes 1a, 1b, 2, 3, 4a and 4b. If the index rate fell below the contract rate, WBC would have to pay any difference between the rates to Navitrans. If the index rates rose above the contract rate Navitrans would have to pay the difference to WBC.

6. A further FFA was entered into between WBC with Navitrans on 24 June 2004. This was essentially on the same terms as the January FFA save that the contract rate was $11,500 and the referable index was the BHMITC. **Copies of both FFA's are exhibited [9 – 13 and 26 - 30].**

7. Any difference payable under the FFA's were payable at the end of each calendar month and were termed "settlement dates". Under the January FFA the indices had risen so that Navitrans owed sums to WBC. The first settlement date under that FFA was July and the sums due for that month and subsequently August were paid by Navitrans. However the sum due for September was not. As a result of Navitrans' failure to pay the settlement sum due for September, WBC was entitled to terminate the contract and did so on 14 October 2004.

8. In relation to the June FFA the first sum became due on 31 January 2005 from Navitrans to WBC. However, Navitrans did not pay this sum and WBC terminated the FFA in accordance with the agreement.

9. As a result of Navitrans' breach of both the January and June FFA's proceedings were commenced by WBC against Navitrans in the High Court of Justice in London, England (as required by the law and jurisdiction clauses in both FFAs). In relation to the January FFA those proceedings were commenced on 6 January 2005 and in relation to the June FFA on 15 February 2005. **Copies of the Claim Forms and Particulars of Claim are exhibited [1 - 33].**

10. Ultimately, no Defence was ever filed by Navitrans to the Claims and two judgements were issued in favour of WBC and against Navitrans by the High Court in the amounts of $843,415.92 (plus costs) in relation to the January FFA and $5,187,631.31 (plus costs) in respect of the June FFA. **Those judgements were issued on 9 February 2005 and 15 March 2005 respectively [34 - 39].**

11. Concurrent with the issue of proceedings in England, WBC was also seeking to secure its claim against Navitrans.

12. Following detailed investigations, it became clear that there was a network of companies related to Navitrans. It appeared that each of those companies was ultimately beneficially owned by the brothers Ioannis and Evgenios Tingas, citizens of Greece.

13. It was specifically ascertained as part of that investigation process, and by virtue of affirmative representations made by Navitrans and its agents and/or representatives, that Navitrans directly or indirectly owned and managed at least three vessels, one of which was the M/V "CENTAURI".

14. As a result of those investigations I, on behalf of WBC, began tracking the vessels "CENTAURI", "ADMIRAL" and "VENUS". It was identified that the "CENTAURI" would be calling at Luanda, Angola in February 2005 and lawyers were approached in that jurisdiction (Dr. Mendes and Mr. Napoleao) to seek their advice as to the possibility of arresting the "CENTAURI."

15. Following receipt of positive advice in this regard, WBC instructed the Angolan lawyers were to arrest the vessel. **Submissions were filed and an Arrest Order made on 3 March 2005 [40 - 51].**

16. It may be noted that the claim was only advanced in respect of the January FFA as at that stage the amounts due to WBC could not be ascertained with reference to historical freight indices information, as the June FFA had not as at February 2005 "priced out" and would not do so until July 2005.

17. Following the initial Arrest Order lawyers instructed by Centauri Shipping filed detailed **Submissions in reply [52 - 67] to which WBC's lawyers responded [68 - 76].**

18. The court then issued a second Arrest Order upholding the original Order confirming the arrest of the "CENTAURI" and that Centauri Shipping pay $858,673.47 or provide a suitable guarantee to WBC as security in exchange for release of the Vessel. **That second Arrest Order was made on 20 June 2005 [77 - 84].** Centauri Shipping failed to avail itself of the right to post the required security to obtain the release of the Vessel, choosing instead to leave the Vessel sitting idly while it pursued appeals in the Angolan courts.

19. As a result of the further Arrest Order, Centauri Shipping appealed to the Supreme Court in Luanda. **Very detailed Submissions were filed on Centauri Shipping's behalf in September 2005 [85 - 105].**

20. I am advised by Dr. Mendes that Angolan procedure requires a Respondent to an Appeal to await a request from the Supreme Court before filing any Submissions in response. WBC's lawyers waited but received no request. **Then, in November 2006 a judgement was issued by the Supreme Court in favour of Centauri Shipping Ltd. lifting the arrest [106 - 128].**

21. The issue of the Judgment came as a complete surprise to WBC and its lawyers as no opportunity had been given to them to make any submissions at all. Although it refers in the Supreme Court Judgement to notice having been given to WBC's lawyers to make submissions in reply to those of Centauri Shipping (per page 5 of the Judgement where it states: "*...it is recorded that on folio 186 the party subject to the embargo was properly notified of the period of ten days for counter-pleadings...*" [110]), I am advised that WBC's Angolan lawyers never in fact received any such notification from the Court. Immediately, an appeal against the Judgment, on the grounds that **WBC had no opportunity to make any submissions, was lodged with the Supreme Court [129 - 134].** However, very shortly after that, a further order was made dismissing that subsequent appeal asserting that in essence the registered owner (Centauri Shipping) and Navitrans were separate entities and *"[the Court has to] conclude that presenting counter pleadings would in no way contribute anything new to the records likely to change the decision given"* [135 - 138].

22. Consequently, the Supreme Court decision stands and there is no possibility of any further appeal being brought.

23. I am advised by Dr. Mendes that in order to pursue a claim for compensation in relation to the arrest and the Supreme Court judgment, Centauri Shipping will have to commence fresh proceedings in Angola in the Maritime Court. At present, I am advised by Dr. Mendes and Mr. Napoleao that no such claim has been lodged. Therefore, at present, there is no "money judgment" awarding any sums to Centauri Shipping or any claim against WBC by Centauri Shipping before the Courts in Angola seeking any sums from it in relation to the arrest of the "CENTAURI" or otherwise.

24. In addition to a plain reading of the "Decision" section of the Judgment, I am also advised by Dr. Mendes that as a matter of Angolan Law <u>neither the Judgment itself nor any part of that Judgment awards money damages to Centauri Shipping and as such is not an enforceable money Judgment</u>. The sums of Kz 450,000 and Kz 85,000 mentioned in the final page of the Judgement under the section headed "DECISION" are sums to be paid to the Supreme Court and <u>not</u> sums to be paid to Centauri Shipping. As explained above, separate proceedings would have to be commenced in order for Centauri to obtain an enforceable money judgment against WBC.

25. Finally, I wish to confirm that as far as I and WBC's lawyers in Angola are aware there are no extant proceedings in Angola relating to the vessel at all. All Court proceedings there are at an end.

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.

Executed on 6 August 2007

_____
ANDREW STUART RIDINGS