# EXHIBIT ASR 1, PART III

José Julio Figueiredo
Aníbai Espírito Santo
Rua Lucrécia Paim, 28 / 30
Tlf: 395956/332267/Fax 338011
Luanda

Proc° n° 182/05
ENCLOSED

Your Hounor
Dr Judge of Law of the Maritime Issues
Of the Provincial Court of Luanda

CENTAURI SHIPPING LIMITED – VALETTA, MALTA comes to deduct OPOSITION
by SEIZURE to the arrest of the motor vessel CENTAURI, sentenced by veredict of 3th
March of 2005, in terms and the following fundaments:

# I – ABOUT THE GROUNDS OF THE ARREST OF THE PROBABILITY OF EXISTING OF THE LAW

1°

The Claimant in its petition said that had with Navitrans Maritime Inc, owner and
manager of the vessel Centauri, two Freight future Agreements;- FFA's.

2°

Due to those FFA's, the Navitrans has outstanding to the Claimant a total debt of US$
858.674,08, accrued with interests

3°

Moroever the Claimant sustains that "with the present arrest, only requires to the Defendant
the payment related to the year 2004"
But say that,

4°

" The Claimant has to (?) a justified concern to loose a security to satisfy is credit, as ( the
question is ours ) .

5°

The probability to sill the referred vessel is so obvious that on same vessel there are two
morgatges

6°

And in the other end there are the risk of insolvency of the Defendant

7°

Checking the facts argued by the Claimant, to support the petition, its find out:

52

8°

That is not true that the Navitrans was, before, the date or after the contracts proceeding the owner of the vessel Centauri. Doc 1

9°

In fact the was only the manager of the Centauri, being the management contract subscribed between the Navitrans Maritime Inc, as manager and the Centauri Shipping Limited as owner of the vessel. Doc.2

10°

The only document related to a contract within the proceedings is the document on pag 16, the freight future agreement, dated of 6th of January of 2004, where the parts are Western Bulk Carrier K/S, in meantime the Claimant, as a "buyer" and the Navitrans Maritime Inc, Athens, as a "seller".

11°

However nothing is said what or which the vessels were put forward by Bulk for the execution of the FFA's.

12°

The existing contract made by Bulk and Navitrans is not referring, either, even, indict the utilization of the vessel Centauri in the execution of any contract, maximé the contract attached in the arrest pectition.

13°

Their not any reference to the owner of the vessel, the Centauri Shipping Limited ( page 42 ), which property registration of the vessel is dated of 18.02.2000, being this registery in full effect to the date of July of 2004, as can be seem in the document at page 52, attached to the proceedings by the Claimant and in doc. 1 attached.

14°

The documents filed from page 21 to 31 from the proceedings there is no mention to the motor vessel Centauri. So,

15°

The fact to referenced to the contracts which are parts Bulk and Navitrans prove nothing relatively to the liabilities of the vessel.

16°

Accepting, without allowing, that the FFA's Agreements was celebrated with reference to the vessel CENTAURI, its important to analise, which are, viz a viz to the Management Contract, ( doc 2 supra ), the powers givens to the manager. So,

17°

Analising the n°3 of the Contract – the Basis of Agreement, its to be concluded that " the manager will execute the management service as an agent, by and on behalf of the owner. The manager will have powers to execute the services in accordance with the discrition which at each moment consider at its one's description should be necessary to allow him to

53

accomplish this contract in accordance with the behaviour pattern of the good maritime management"

18°

Which is the nature of the powers conferred by the contract to the manager ?

19°

In the simple management power it is not included the pratice of acts that may affect the base of the possession of goods.

20°

It is not included in the management liberty the celebration of risk contracts, even more when this risk contract which is only a commercial one, may be a risk for the vessel, it means for its owner.

21°

And is just to expressly determine and to determinate limits to the free movements from the manage of the contracted party, that both included the article 21°, in which terms " Is expressly agreed that the manager will not have the right, in any event, to give as a security to mortgage, engage ( in guarantee ), to sell, to create embargo on the vessel, without a firm authorization of the owner, for a specific effect".

22°

So, on celebrating contracts on which the price by him quoted and received by chartering, should be partially refounded, the manager over acted the limits fixed in the management contract.

23°

On acting on such way, the manager was, in "fraud of the contract", to escape to a prohibited expressly on it, to create a legal situation which should result prohibited effects on the clause 21°.

24°

The Bulk, a shipping company over more 100 years of activity, by its turn, knows or should know that was not contracting the FFA's with the owner of the vessel or a manager with authority to bind the vessel for maritime debts.
If was intelligent , only to himself she may blame.

25°

Moreover is doubtful that is a maritime credit, as stayed in the "1952 Convention about the arrest of vessel in sea" ( from whom the Norway, the country of the Claimant, is not part), as their was not a breach of the contract of utilization of the vessel Centauri, because what Bulks is not claiming any circumstance relatively to the vessel or its utilization

54

26º

Also from that sense is confirmed that the vessel CENTAURI, may not be taken as a security by debts which its not of him concern.

27º

So, there are not with the points carried to the proceedings. any possibility to deduct the probability of existing of a right coming from a maritime credit related to exploration of the vessel CENTAURI.

# II – ABOUT THE CONCERN TO LOOSE A SECURITY

28º

The Claimant intend to justify the fair concern of loosing the patrimonial security because, say

29º

" The probability of transferring of the vessel is so evident (?) that on same there is two mortgage ( the interrogation are ours )

30º

To identify the existing mortgages in a legal business as a prove of difficulties to satisfy their obligations by the guarantor is, manifestly, pre judge a non existing situations, situations only imaginary

31º

Bad should be the business life if the existence of a guarantee was prove of bankruptcy or an imminent insolvency

32º

View the before ahead mencioned, the CENTAURI SHIPPING LIMITED, owner of the motor vessel CENTAURI, is a third in relation to the contracts agreed by NAVITRANS, as a manager of the vessel, made out of the clauses which support the management contract agreed by both, in particular the clause 21ª of the Contract.

33º

So, there are not any interest as fundamental fact of the Arrest, to add prove of loans where the owner of the vessel gives her to secure loans,

55

### 34°

Its evident that the claimant desires to bring from its side of interests, facts surely excluded of the commercial relation he has , only and but only with the NAVITRANS MARITIME INC.

### 35°

The same, mutates mutandi should be said to the supposed risk of insolvency , which is expressed within pages 113 of the proceedings to Navitrans is concerned.

### 36°

Logic is to conclude that there are not a juridical well – founded    to determinate the concern in loosing the alleged  patrimonial security, when this fact is referred to the CENTAURI SHIPPING LIMITED.

### 37°

The claimant have a perfect knowledge that the vessel Centauri is property of the Centauri Shipping Limited, so to declare the ownership of the vessel to Navitrans, consciously break the true, and so did the testimonies.

## III – ABOUT THE DECISION WHICH ORDER THE REQUIRED ARREST

### 38°

Its said in decision of the arrest, at page 84, " listened  the witness "...
The Judge didn't say in which ground  considers the existence of the supposed outstanding of the owner of the vessel to the claimant.

### 39°

In reality the Judge didn't say the reason that he considers that the FFA's links the vessel and by this way  the defendant, being sure that the claimant in any instant shown any evidence that the referred contracts are connected to the vessel Centauri, the  existing of an outstanding  which may she ( Centauri ) be responsible for.

### 40°

In this respect, the witness appointed nothing told that should be considered

### 41°

The manner and the circumstances on which they pretended to take the knowledge of the facts which in a preliminary way is concerned are incredible

### 42°

Is not very well perceptible how them are qualified as witness, alleging knowledge of the facts, facts that in reality were given by the claimant in circumstances which are not clear in the proceedings or taken via internet.

56

**43°**

Say the first witness that " based in is work of Marine Merchant Technician " some documents of the vessel Centauri were tendered to him, were he took knowledge of the facts "

**44°**

Its to be inquired:- .n which capacity as a technician of marine merchant documents has been delivered to him ? Which documents ?

**45°**

With regards to the second witness: " through the internet and some documentation which were given – may be carried by the wind - he knowledge that probably the vessel Centauri should be owned or were property of the company Navitrans . Pity that were not asked to this witness to indicate the document from which he knowledge that the Navitrans had an outstanding in favour of the Bulk and, that debt was due a payment of freight. So, should be a way to correct the mistake made by Bulk failing to add chart party.

**46°**

Really, the witness had an exact knowing of the facts, its testimony should be considered the true.!!

**47°**

So that, the prove of the existing credit is not proved, either by the testimony given by the witness as well as the lack of fundaments advanced by the claimant

**48°**

Moreover which is concerned to the ground " the concern to loose a patrimonial security", the witness nothing told about, either their had not been asked, adding also that the claimant didn't produced prove about it, as the existing of one or more mortgage on a patrimony is far of meaning that said patrimony is in risk.

**49°**

By other end the decision, on its disposition part didn't give consideration, as stayed by law, the grounds advanced by the claimant.

**50°**

In reality, say the n° i of the art° 404°:
" Examined the proves produced , the arrest shall be decided (… ) as long as is fulfil all the legal requirement'"
So,

**51°**

The n° 1 of the art° 659°, to be applied by force of the n°1 of the art° 671, both from Proceeding Civil Code, to make the analytical description of the veridict , so determine:-

**57**

HOTEL ALVALADE    18/03 '05 16:46 FAX 00 244 2 327430

The judge (...) should made a critical examination of the proves which he is obliged o know and should establish the facts that he consider proved; afterwards should made the interpretation and should apply the law to the facts, concluding by the final decision.

52°

From the decision i: not possible to be concluded that the judge , had by critical examine reproduced in the proceedings, concluding by the existence of legal requirements. Specially which is concern to the " fair concern of loosing the patrimonial security, which is stayed in the decision as result of the agreement made.

53°

About this point, say the decision at page 84:
" as a result of the contract agreed by both defendant and claimant, being so, proved the fair concern of the claimant loosing its security..."
Or better,

54°

The simple existing of the contract between Bulk and Navitrans is being made as a a risk of the disappearance of a patrimony which is not bound by eventual debts of the Navitrans.

55°

In this terms, is not shown as proved, either there is not legal fundaments for the decision of the arrest: the probability of the existing credit and fair concern of loosing the patrimonial security, so, the arrest was not to be sentenced by absence of legal requirements.

**In Conclusion:**

a) The defendant is not a legitimate part of the arrest proceedings
b) Both fundaments of the arrest are not true as there is nor probability of the existence of the credit, nor the ground for the fair concern to loose the patrimonial security
c) The claimant and the witness acted in bad faith

In those terms should the present challenge to be attended and proved , and, as such, the claimant to be convicted to pay to the defendant:

a) A compensation for the lost suffered , which are accounted, for each 30 days, to a minimum of US$ 519.000,00, as per following breackdown
   - Cost of a Time Charter dated 09.12.04 ( incl. Wages) of US$    16.000,00 /day
   - Bunkers + Luboils
   - Port Hue ( anchorage + light dues )    US$    550,00/day
     553,00/day
   - Agency fees
   - Other expenses                                        143,00/day
                                                            70,00/day

b) eventual compensation for lost and damages , for a claim file from the receivers of the cargoes to Boma, which are calculated in a minimum of US$ 300.000,00
Also must the claimant be convicted in a fine for bad faith litigation, court fees and right prosecution



58

So, that,

We request to Your Hounor , kindly requesting to notify the claimant and witness, to contest, if they wish , under the legal time, in accordance of the terms of the art° 406, of the Proceeding Civil Code

Enclosed: two documents and legal copies
Value: the same of the arrest

The Lawyers

*N° 1198*
*N° 41*



JOSÉ JÚLIO FIGUEIREDO
ANÍBAL ESPÍRITO SANTO
Rua Lucrécia Paim, 28 / 30
Tel 395956,332267fax338011
LUANDA

REGISTADO SOB O N.° 49106
Luanda, 14 / Março 05

Pr.n.°182/05
**APENSO**

*1/8*

Exmo Senhor
Dr Juiz de Direito da Sala das Questões Marítimas
Tribunal Provincial de Luanda

CENTAURI SHIPPING LIMITED-VALLETTA, MALTA vem deduzir OPOSIÇÃO
Por EMBARGOS ao arresto N/M CENTAURI, dedretado por despacho de 03 de
Março de 2005, nos termos e com os fundamentos seguintes:

**I - DOS FUNDAMENTOS DO ARRESTO. DA PROBABILIDADE DE EXISTÊNCIA DO DIREITO**
1.°
A A. diz no seu requerimento que celebrou com a **Navitrans- Maritime Inc.**,
proprietária e gestora do navio **Centauri**, dois contratos de fretes futuros : FFA`S
art.° 1.°

2.°
Em decorrência desses FFA'S a Navitrans tem para com a A. uma dívida global de usd
858.674.08, acrescidos dos respectivos juros.

3.°
Diz ainda a A. que "com o presente arresto, deseja apenas o requerente o pagamento
referente ao ano de 2004."
Mais diz que,

4.°
" a requerente tem assim (?) justo receio de perder a garantia para satisfazer o seu
crédito, pois ( interrogação nossa)

5.°
A probabilidade de alienação do referido navio é tão evidente que sobre o mesmo
impendem duas hipotecas.

6.°
E que por outro existe o risco de insolvência do requerido:

7.°
da análise dos factos arregimentados pela A. para fundamentar o pedido constata-se:

8.°
Que é **falso** que a Navitrans fosse, antes, á data  ou depois dos contratos referidos no
processo proprietária do navio Centauri Doc 1

60

**9.º**

Na realidade a Navitrans foi apenas gestora do Centauri, tendo o Contrato de Gestão sido celebrado entre a Navitrans-Maritime Inc. como gestora, e a Centauri Shipping Limited como proprietária do navio. Doc2.

**10.º**

O único documento relativo a contrato existente no processo é o documento de fls 16, contrato de venda de futuros, datado de 06 de Janeiro de 2004, em que são partes a Western Bulk Carriers K/S, a ora A. como "comprador" e a Navitrans-Maritime Inc. -- Athens, como "vendedor".

**11.º**

Mas nada se diz qual ou quais os navios postos à disposição da Bulk na execução dos FFA's.

**12.º**

A existência dos FFA'S celebrados entre a Bulk e a Navitrans não refere, nem, sequer, indicia a utilização do navio Centauri na execução de qualquer contrato, *maxime* do contrato anexado ao requerimento de arresto.

**13.º**

Não há qualquer referência ao proprietário do navio, a Centauri Shipping Limited ( fls 42), cujo registo de propriedade do navio data de 18 / 02 /2000, mantendo-se esse registo em vigor à data de de 08 de Julho de 2004, **como se vê do documento de fls 52, junto aos autos pela A. e do doc 1 anexo.**

**14.º**

Os documentos arrolados de fls 21 a fls 31 dos autos não contêm nenhuma referência ao navio Centauri.

Portanto,

**15.º**

O facto de se fazer referência a contratos em que são parte a Bulk e a Navitrans nada prova relativamente à responsabilidades do navio.

**16.º**

**Admitindo, sem conceder,** que os contratos FFA'S tivessem sido celebrados com referência ao navio CENTAURI, importa analisar, quais são, à luz do Contrato de Gestão.( doc 2 supra) , os poderes conferidos ao gestor.Assim,

**17.º**

Analisando o n.º3 do Contrato- Basis of Agreement ;extrai-se que" o gestor executará os serviços de gestão como agente, por e em nome do proprietário.O gestor terá poderes para executar os serviços de acordo com os critérios que a cada momento considere a seu critério sejam necessários para lhe permitir cumprir este contrato de acordo com os padrões da boa prática da gestão marítima."



3/8

**18°**

Qual a natureza dos poderes conferidos pelo contrato ao gestor?

**19°**

Nos poderes de simples gestão não se inclui a prática de actos que possam atingir o casco dos bens.

**20°**

Não se inclui na liberdade de gestão a celebração de contratos de risco, tanto mais quanto esse risco, que é apenas de gestão comercial, se possa transformar em risco para o navio, i.e., para o proprietário do mesmo.

**21°**

E é justamente para expressamente definir e concretizar limites à livre actuação do gestor na actividade contratada, que as partes incluíram a Cl. 21, nos termos da qual,
" Fica expressamente acordado que a gestora não terá direito, a nenhum título, a dar em garantia, hipotecar, comprometer (em garantia), onerar, criar encargos sobre o navio, sem o consentimento expresso do proprietário, para o fim específico".

**22°**

Ora, ao celebrar contratos por força da qual o preço por si cobrado e recebido por afretamentamento, poderia ser parcialmente devolvido, a gestora actuou fora dos parâmetros do contrato de gestão. 

**23°**

Ao actuar por essa forma, a gestora estava, em "fraude ao contrato" a contornar uma proibição expressa deste, ao criar situação jurídica de que resultariam efeitos proibidos na CL21. 

**24°**

A BULK, empresa do ramo marítimo com mais de 100 anos de actividade, por seu lado, sabia ou podería ter sabido que não estava a contratar FFA'S com o proprietário do navio ou com gestor titulado com poderes para vincular o navio por dívidas marítimas. Se foi negligente, só de si se pode queixar.

**25°**

Acresce que é duvidoso que se trate de um crédito marítimo, tal como definido na "Convenção de 1952 sobre arrestos de navios de mar" (da qual a Noruega país da A. não é parte) pois não houve incumprimento de um contrato de utilização do navio Centauri, uma vez que a BULK não reclama qualquer circunstância relativa ao navio ou à sua utilização. 

**26°**

Também por essa via se confirma que o navio CENTAURI não pode ser transformado em garantia por dívidas que lhe não dizem rspeito.

**27°**

Não há assim, com os elementos carreados para o processo, qualquer forma de deduzir a probabilidade de existência de um direito resultante de um crédito marítimo relativo à exploração do navio CENTAURI.



4/8

## H    DO JUSTO RECEIO DE PERDA DA GARANTIA

### 28.º

O requerente pretende justificar o justo receio de perda da sua garantia patrimonial porque, diz

### 29.º

" A probabilidade de alienaçãodo Navio é tão evidente(?) que sobre o mesmo impendemduas hipotecas( interrogação nossa).

### 30.º

Identificar a existência de garantias num negócio jurídico como prova de dificuldades de satisfação dos seus compromissos pelo garante é, manifestamente, pré-julgar situações inexsitentes : situações apenas imaginadas.

### 31.º

Mal andaria a vida dos negócios se a existência de uma garantia fosse prova de falência ou insolvência iminente.

### 32º

Face ao que já anteriormente se disse, a CENTAURI SHIPPING LIMITED, proprietária do navio CENTAURI, é terceiro relativamente aos contratos celebrados pela NAVITRANS, enquanto gestora do navio, feitos ao arrepio das cláusulas que regem o contrato de gestãocelebrado entre ambas, em especial a Cl²21. do Contrato

### 33.º

Po risso não tem qualquer interesse como fundamento factual do Arresto, juntar prova de empréstimos em que o proprietário do navio dá o mesmo em garantia de empréstimos.

### 34.º

É manifesto que a requrente pretende trazer para o seu campo de interesses, factos absolutamente excluidos da relação comercial que tem, apenas e tão somente com a MAVITRANS- MARITIME INC

### 35.º

O mesmo se dirá quanto ao pretenso risco de insolvência, que como resulta de fls 113 dos autos se reporta à Navitrans.

### 36.º

É lógico concluir que não há fundamento para determinar juridicamente o justo receio de perda de garantia patrimonial alegado, quando o mesmo se refere à CENTAURI SHIPPING LIMITED.

63



A requerente tinha e tem perfeito conhecimento de que o navio Centauri pertence à Centauri Shipping Limited, pelo que ao afirmar a propriedade da Navitrans sobre o navio, faltou conscientemente à verdade, o mesmo se afirmando das testemunhas.

## III  DO DESPACHO QUE DECRETOU O ARRESTO REQUERIDO

38.º
Diz o despacho de arresto, a fls 84, " ouvidas as testemunhas"
O juiz a quo não diz c em que base considera provável existir uma dívida do dono do navio para com o requerente.

39.º
Na realidade o juiz a quo não diz por que razão considera que os EFA'S vinculam o navio e por essa via a embargante, sendo certo que a requerente em momento nenhum apresentou qualquer prova de que os referidos coontratos respeitavam ao navio centauri existir uma dívida do por que seja responsáve.

40.º
Sobre esse ponto, as testemunhas apresentadas nada dizem que mereça ser considerado.

41.º
O modo e as circunstâncias em que pretendem ter tomado conhecimento dos factos a que de modo primário se referem são mirabolantes.

42.º
Não se percebe muito bem como as referidas têm a qualidade de testemunhas, alegando conhecimento dos factos, factos que na realidade lhes são fornecidos pela requerente em circunstâncias que não são claras no processo, ou obtidas via interenet.

43.º
Diz a 1.ª testemunha que : " dado o seu trabalho como Tecnico da Marinha Mercante" lhe foram entregues alguns documentos respeitantes ao navio Centauri, donde teve então conhecimento dos factos"

44.º
Cabe perguntar: a que título, como tecnico da marinha mercante lhe foram entregues os documentos? Que documentos?

64

45.º

Quanto à 2.ª testemunha " através da internet e de alguma documentação que lhe foi às mãos- talvez levada pelo vento- teve conhecimento de que provavelmente o navio Centaur pertencesse ou fosse propriedade da Empresa Navitrans."

Pena é que não tivesse sido solicitado a esta testemunha que indicasse o documento por via do qual soube que a Navitrans tinha uma dívida a favor da BULK e, que tal dívida era proveniente de frete. Suprir-se-ia assim o lapso da BULK que se esqueceu de juntar contrato de afretamento.

46.º

Realmente, as testemunhas tinham perfeito conhecimento dos factos, o seu depoimento merecia todo o crédito.!!

47.º

Portanto, o requisito da probabilidade da existência do crédito não se mostra provado, tanto pelo que resulta do depoimento das testemunhas como pela falta de fundamentos apresentados pelo requerente.

48.º

Acresce que quanto ao requisito " receio de perda da garantia patrimonial" as testemunhas nem se pronunciaram , nem pelos vistos lhes foi perguntado, sucedendo ainda que a requerente não aduziu quaisqer elementos comprovativos do mesmo, pois a existência de uma ou mais hipotecas num património está longe de significar que tal património esteja em risco

49.º

Por outro sucede que o despacho, na sua parte dispositiva não aprecia, como exigido por lei, os fundamentos aduzidos pela requerente

50.º

Na realidade , diz o art.º 404.º n.º1::

"Examinadas as provas produzidas,o arresto será decretado(...) desde que se mostrem preenchidos os requisitos legais".

Ora,

51º

O art.º 659.º n.º2, in fine , aplicável por força do art.º 671.º, n.º1, ambos do CPC, ao fazer a descrição analítica da sentena, prescreveque: ..." O juiz (...) fará o exame crítico das provas de que lhe compete conhecer e estabelecerá os factos que considera provados; depois interpretará e aplicará a lei aos factos, concluindo pel decisão final.

52º

Do despacho não se pode concluir que o juiz a quo tenha, por exame crítico reproduzido no processo, conchido pela existência dos requisitos legais.

53º

65

Muito especialmente no que respeita ao requisito: justo receio de perda da garantia patrimonial, que se surge no despacho como consequência da existência do contrato celebrado.

54.º

Sobre este ponto, diz o despacho a fls 84:
"como consequência do contrato celebrado entre si e requerida, ficando assim provado o justo receio de a requerente perder a sua garantia" *sic*
Ou seja,

55.º

A mera existência de contrato entre a BULK e a NAVITRANS, é metamorfoseada em risco de desaparição de um património que nem responde pelas eventuais dívidas da Navitrans.

56.º

Assim, não se mostram provados, nem existem os requisitos legais para decretamento do arresto, a probabilidade de existência de um crédito e justo receio de perda de garantia patrimonial pelo que o arresto não devia ter sido ordenado por carência dos requisitos legais.

*Em conclusão:*
a) a embargante é parte ilegítima no referido processo de arresto;
b) os dois fundamentos do arresto não são verdadeiros pois não existe nem a probabilidade de existência do crédito, nem fundamento para justo receio de perda de garantia patrimonial;
c) o arrestante e as testemunhas faltaram conscientemente à verdade.

Nestes termos devem os presentes embargos ser julgados procedentes e provados e, consequentemente o embargado condenado a pagar à embargante:
a) uma indemnização pelos prejuízos sofridos que computa, por cada 30 dias, no mínimo de Usd. 519.000,00, somatório das seguintes parcelas:
     custo do fretamento a tempo (incluindo salários da tripulação) Usd 16.000/dia
     ( charterparty de 9/12/2004)
        combustíveis e lubrificantes                        usd 550.00 / dia
        encargos portuários(fundeadouro e farolagem)        usd 553.00/ dia
        agency fees                                         usd 143.00/dia
        outros encargos                                     usd 70.00/ dia

b) eventual indemnização por perdas e danos, por reclamação dos recebedores da carga destinada ao porto de Boma, que se calcula no montante mínimo de usd. 300.000.00

Mais deve ainda a requerente ser condenada em multa por litigância de má-fé, custas e procuradoria condigna.

Para tanto,

R. a VB, que ouvidos por apenso, se digne mandar notificar a embargada se as testemunhas para contestarem, querendo, no prazo legal, seguindo-se os demais termos do art. 400 a 463 Pr. Civil.

Juntam-se dois documento e cópias legais.
Valor o mesmo do arresto.

Os advogados

8/8

José Julio Figueiredo

67

Your Hounor the Judge of Law of the Maritime
Issue of the Provincial Court of Luanda
Luanda

Proc° 182 / 05
Enclosed

WBC – Western Bulk Carriers K/S  Baned in attached proceedings above referred,
challenging,, comes to contest the following:

I

Is totally inadmissible the Ban which will be challenged hereunder.
However,

II

Before to explicit the reasons of the inadmissibility, it is important to look into the
following

Prior Question

III

The documents issued in foreign countries in conformity to the Law, do proves as
should the documents from same kind issued in Angola.

IV

However, to be acceptable as valid, they have to be recognised by the Public Servant
of the Embassy or Consulate of the issuing country and its signature as to be
authenticated.

V

Otherwise, the documents submitted in foreign language, has to be supported by its
translation

VI

Therefore, as attached to the proceedings , must the Banant be invited to correct the
insufficiencies here mentioned , otherwise he should be sanctioned in terms of the
Law.

VII

Made the consideration to the prior question, is now time to refuse the inadmissibility
of the Ban, which is replied

*68*



### VIII
It is not true the allegation that the vessel CENTAURI is an illegitimate part of the Arrest sentenced.

### IX
As a matter of fact, the CENTAURI SHIPPING LIMITED proprietor of the vessel CENTAURI is a company belonging among others by KING MARITIME CO. ( see Doc I.)

### X
At the same time the NAVITRANS MARITIME CO, is a company belonging by both Mrs IOANNIS TINGA and EVGANI TINGAS. ( See Doc 2 ).

### XI
So, between the CENTURI SHIPPING LIMITED and the NAVITRANS MARITIME CO, the property of one answer to the debts of the other and vice-versa.

### XII
Therefore and in the terms of the Brussel Convention of 1952, about the Arrest of the vessels at the sea, which Angola is subscriber says, " are maritime credits the rights resulting from the contracts related to a utilization of vessels or the property of sames, paragraphe d) art° I° of the referred Convention.

### XIII
So that, the maritime credits as stipulated in said Convention, regardless the nacionality and the residence os the parts, are legal causes of the Arrest of the vessel of the credit is concerned as well as any other vessel owned by the debtor, art° 3° of the Brussel Convention and the art° 402° of the Process Civil Cod.

### XIV
In this case there are contracts of future maritime freights and validly assumed by the parts, the reason of the conflict.

### XV
Also in the terms of the art° 601° of the Civil Code, it is stayed the Principle of the Non Limited Liability of the debtor, when is stayed that, " the fulfilment of the obligation is granted by all the existings goods in the Patrimony of the debtor, including those ones which was bought after the constitution of the obligation "

### XVI
So, is evident and crystalline that, the vessel CENTAURI is a legitimate part of this disputed juridical relation; as she and the NAVITRANS, as hereunder will be demonstrated , are owned by the same persons.

### XVII
In reality and checked  the Transcription of the Maltese Registry , related to the ownership of the CENTAURI SHIPPING LIMITED, it appear as one of the shareholders the KING MARITIME CO.

69

### XVIII

In said registry, it appear Mr IOANNIS TINGAS, as one of its Directors.

### XIX

Also checked the Addendum of the Mortgage Contract, which are attaced in the proceedings from the pages 44 to 49 and signed between the OMEGA BANK AS, as Lendor and the KING MARITIME, the Borrower, its verified;

1 – IOANNIS TINGAS, signing in the name of VENUS SHIPPING LIMITED, as a Guarantor

2 – Mr EVGENIOS TINGAS, signing in the name of KING MARITIME CO.

### XX

Moroever, the NAVITRANS, is owned by Mr IOANNIS TINGAS, prove which may bee seem from the Transcription of the Registry Book near de Direction of Marine Merchant of Greece. ( see doc. 2 and stayed the follow)

- IOANNIS TINGA – PRESIDENT / DIRECTOR
- EVGENIOS TINGAS – SECRETARY / DIRECTOR

### XXI

So, from the documents attached to the proceedings, there are enough elements to confirm the ownership of the vessel CENTAURI and the validity of said documents, resulting from it existing and they are to be accepted in its exact mining of it text, and as can be seem there is no prove in contrary or the same value.

### XXII

Those are the indestructible realities, which should be contradicted by serious and concret proves, eventually by opposite documental one and never by simple opposing allegations.

### XXIII

In fact the Banant, hided among brambles in a delirious description of facts without any relation with the matter under dispute, and from step to step, he got involved the true facts in a unexplainable entanglement of delirious deductions.

### XXIV

Its is important to say everything of all said, so they cannot say that they were not advised to whom the person that Your Hounor will judge.

### XXV

In fact, the companies CENTAURI SHIPPING LIMITED and NAVITRANS MARITIME CO, based in Malta and Liberia respectively.

### XXVI

The Liberia and Malta are Fiscal Paridise, where the principal constitution datas, as like; shareholders, the capital, etc, are not open to third parties.

### XXVII

There is no doubt that we are in front of a Captious Construction of Companies and which aim is fundamentally to hold back the real identity of the properties belonging to the TINGAS in other to make difficult their identification by the creditors.

### XXVIII

It is why the Fiscal Paradise are elected as the best market to hold back the shareholders, being this the most important reason for which the constitution of the companies are not attached to the present.

### XXIX

However and in the terms of the art° 343° of the Civil Code the burden to do the prove of the Constitution of the companies is for the Banant account.

### XXX

What the Banant says in the articles 18° to 21° from the embargos is exactly, what the good rules of the law recommend.

### XXXI

Hoever, in this case, taking into consideration the fundaments given, the CENTAURI SHIPPING LIMITED and the NAVITRANS MARITIME CO, both acted as only one person; with only one finality, the "Trick".

### XXXII

So, to the Banant, the others saying is "rabish" and the good faith only what they do.

### XXXIII

But, as it was abundantly demonstrated , and proved, the unqualified bad faith comes from the Banant side.

### XXXIV

When the Banant, is putting in question the correctness of the sentenced Arrest, as in is own view, being not from the law, this appreciation; as obvious, results from a wrong evaluation or deficient evaluation of the facts.

### XXXV

About this purpose, " it is said that the concern of losing the patrimonial guarantee is not to be necessary that be certain, it is only enough to be probable ". In this sense, the Sentence of the Supreme Court of Justice, dated 13.04.73, published in the Bouletim of the Justice Ministry, 226, pag 182.

### XXXVI

And moreover, to the sentenced of the Arrest, the law is happy with the appearance of the law and with the peril of its dissatisfaction.
In this sense, also, the Sentence of STJ of 18.05.76, BMJ, pag 144

71



### XXXVII

As a result of a good lecture, the legislator, predict that the judicial issues, its grounds are from two types; first, grounds supported by documentation and second by notorious facts which has to be taken into consideration

### XXXVIII

So, the witness called to the proceedings, didn't say nothing else that the documents submitted in the proceedings; When the Banant, intend to make them responsible; We are in a presence of failure of arguments.

### XXXIX

This failure, is also evident in the fact of the Banant throw sometimes do the Judge, sometimes to the witness, to put in question a right decision.

### XL

This way of lawsuit is not serving the superior interests of the administration of the justice and shows bad faith.

### XLI

And is in that way that the Banant wants a compensation by eventual damages, out of the rules stablished by law.

### XLII

In fact the compensation rule, presumes the fault of the Agent and this fault according its graduation, which means, that its gravity shall determinate the measure of the obligation to compensate.

### XLIII

So, art° 494° of the Civil Code inform that when the liability is based in purely fault, the compensation may be equitably less viz a viz to the damages caused , bearing in mind the degree of the Agent culpability, its economical position, the damage and other attendible circumstances.

So that, which are from law, and Your most supplement must the present Ban be rejected, as not proved and the Arrest already sentenced to stay in force.

WHICH SHALL BE DONE THE USUAL AND CALM JUSTICE

72