LYONS & FLOOD, LLP
65 West 36th Street, 7th Floor
New York, New York 10018
(212) 594-2400

Attorneys for Plaintiff
CENTAURI SHIPPING LTD.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
CENTAURI SHIPPING LTD.,

                        Plaintiff,

- against -

WESTERN BULK CARRIERS KS, WESTERN BULK AS,
and WESTERN BULK CARRIERS AS,

                        Defendants.
------------------------------------------------------------------X

**ECF CASE**

07 Civ. 4761 (RJS)

## AFFIRMATION OF KIRK M. LYONS IN OPPOSITION TO MOTION TO VACATE ATTACHMENT

KIRK M. LYONS, an attorney duly admitted to practice law before this Court, affirms the following under the penalties of perjury under 28 USC § 1746:

1. I am an attorney at law and member of the firm of Lyons & Flood, LLP, attorneys for the plaintiff CENTAURI SHIPPING LTD. ("Centauri"). I have personal knowledge of the facts contained herein, unless otherwise stated upon information and belief. This Affirmation is respectfully submitted in opposition to defendant Western Bulk Carrier KS's ("WBC") motion to vacate the attachment.

2. This Rule B attachment proceeding stems from the wrongful arrest of plaintiff's vessel, the M/V CENTAURI (the "Vessel") by defendant WBC in Angola.

3.  Based on the papers filed in support of WBC's motion to vacate, on January 21, 2002, Centauri contracted with Navitrans Maritime Inc. ("Navitrans") to manage the Vessel. On July 30, 2004, Navitrans entered into a freight forward agreement with defendant WBC. Plaintiff was not a party to this contract and the Vessel was not named in the contract. A dispute subsequently arose between Navitrans and defendant WBC over the freight forward agreement, and on March 8, 2005, defendant WBC caused the Vessel to be arrested in Luanda, Angola as security for its dispute with Navitrans.

4.  Plaintiff applied to the Angolan court to lift the arrest of the Vessel and on November 17, 2006, the Supreme Court of the Republic of Angola ("Supreme Court") issued a decision finding that defendant WBC had no legal relationship with plaintiff or the Vessel and that the Vessel had therefore been wrongfully arrested. The Supreme Court further found that defendant WBC had acted in bad faith by intentionally filing misleading documents with the court when seeking the arrest of the Vessel. WBC was found guilty of "malicious abuse of legal process" by the Supreme Court and sanctioned for its conduct. (See p. 115 of Ex. ASR 1, Part IV, to Ridings Decl. in Support).

5.  Defendant WBC appealed that decision on December 5, 2006, and on April 27, 2007, the Supreme Court upheld its earlier November 17, 2006, decision that the Vessel had been wrongfully arrested. Essentially, the due process arguments raised by WBC were rejected by the Supreme Court. (See p. 135-138 of Ex. ASR 1, Part IV, to Ridings Decl. in Support). This decision was final and unappealable. (See Ridings Decl. in Support at ¶ 22).

6.  Following the denial of defendant WBC's final appeal in Angola, Centauri sought security in this Court based on WBC's wrongful arrest of the Vessel. This

- 2 -

was based on (a) the findings by the Supreme Court that WBC was guilty of "malicious abuse of legal process" when it arrested the Vessel and (b) the order by the Supreme Court for WBC to "pay compensation" to plaintiff for damages flowing from the wrongful attachment. The amount of damages was "to be fixed in the enforcement of the judgment." (See p. 115 of Ex. ASR 1, Part IV, to Ridings Decl. in Support). It was Centauri's intention to obtain security in this Court and then to seek enforcement in this Court of the judgments issued by the Angolan courts.

7. In support of its motion, WBC has submitted a Declaration of Andrew Stuart Ridings ("Ridings Decl.") with numerous attachments, in which Mr. Ridings, as defendant's English counsel, makes a number of comments regarding the Angolan proceedings. I note that some of these comments are unsupported hearsay in that Mr. Ridings is relating what third parties have told him, and to the extent necessary, Centauri objects to the hearsay statements in Ridings Declaration. Further, Mr. Napoleao was only a witness and he is not a lawyer (see ¶ 23 of Ridings Decl.). In any event, the details of the Angolan proceedings are wholly irrelevant to the issues before this Court, and if they have any relevance whatsoever, it can only be to the Angolan proceeding which Centauri has commenced to obtain a money judgment against defendant WBC.

8. I further note that several times throughout its papers, WBC contends that plaintiff has made material misrepresentations to the Court in commencing its action and obtaining the attachment order. (See defendant's Memo. in Support, pp. 8-9 and 21-24)

9. One of these "misrepresentations" was in fact, a misstatement made as a result of a clerical error. As plaintiff explained in its August 16, 2007, letter to the Court (see Exhibit 3 to Lennon Decl.), the Affirmation in Support of Maritime Attachment

- 3 -

and Garnishment Pursuant to Supplemental Rule B(1) submitted to the Court in support of plaintiff's application for an Ex Parte Attachment Order pursuant to Rule B of the Supplemental Rules For Certain Admiralty and Maritime Claims ("Rule B") was inaccurate in that it represented that we "contacted the Division of Corporations of the New York Department of State and found no records indicating that defendants were either incorporated or licensed to do business in the State of New York."

10. This statement was inaccurate because at the time it was submitted to the Court, plaintiff was in fact aware that WBC was registered to do business in the State of New York and had a registered agent for the service of process; this information having been developed as a result of plaintiff's due diligence investigation into WBC presence within the District. However, as we also explained in our August 16, 2007 letter, a clerical error resulted in the misstatement when a *pro forma* Rule B(1) affirmation in support of the application for an attachment order was utilized and we failed to revise the Affirmation in Support to properly reflect the results of our investigation.

11. We deeply regret the error and that the resulting misstatement was communicated to the Court. However, we respectfully submit that even had this information (that WBC was registered to do business in the State of New York and had a registered agent for the service of process) been submitted to the Court, it would not have altered the outcome and the attachment order sought would have ultimately been issued. Thus, we submit that the failure to include the existence of an agent for service of process in New York in the Rule B(1) Affirmation filed in support of the application for an attachment order was harmless error.

12.     As explained more fully in plaintiff's Memorandum of Law in Opposition at POINT II, the fact that a defendant has a registered agent for the service of process is, alone, insufficient to establish presence within the District for the purposes of Rule B. A defendant must also be jurisdictionally present within the District.

13.     In Auckland Shipping Company v. Western Bulk Carriers, KS, 07 Civ. 4139 (CM) (S.D.N.Y.), the plaintiff submitted a Rule B(1) affidavit that set forth that defendant WBC had an agent for service of process in New York and was licensed to do business in New York. Nonetheless, in Auckland Judge McMahon issued an attachment order based on plaintiff's other allegations that WBC was not present in the District in the jurisdictional sense. (See the Affidavit in Support of Attachment of James H. Hohenstein dated May 29, 2007, and Order for Issuance of a Writ Attachment and Garnishment attached hereto as Exhibit A.)

14.     Similarly, plaintiff submits that ¶ 3 of the Rule B(1) Affirmation filed in this action supports the conclusion that WBC is not present in this District in the jurisdictional sense. (See Exhibit 2 to Lennon Decl. at ¶ 3.)

15.     WBC also asserts that plaintiff "misrepresented" the status of the proceedings in Angola in its Verified Complaint. Specifically, defendant takes issue with plaintiff's allegation in ¶ 14 of its Verified Complaint that "[t]he matter is presently pending before the Angolan court to determine the amount of damages that will be awarded to plaintiff for the wrongful arrest of the Vessel." (see defendant's Memo in Support, p. 8; see Exhibit 1 to Lennon Decl. at ¶ 14).

16.  Centauri submits that it has not made any misrepresentations in its Verified Complaint, but to the extent that it is seen as being inaccurate, we offer the following explanation.

17.  At the time the Verified Complaint was being prepared, we understood that a decision had been entered in plaintiff's favor by the Supreme Court on the issue of liability, and that an appeal from that decision had been recently denied. We thus presumed, incorrectly as it turns out due to unfamiliarity with Angolan legal practice, that the money judgment which we were also aware was being obtained, would be part of the same proceeding through which the previous judgment had been obtained.

18.  However, due to peculiarities in Angolan civil procedure, it appears that a wholly separate proceeding must be commenced to assess the amount of damages due Centauri for WBC's wrongful arrest of the Vessel.

19.  We thus submit that any inaccuracies contained in ¶ 14 of the Verified Complaint were unintentional and, in any case, are not material to plaintiff's claims or the present Rule B attachment.

20.  This is especially so here, where Centauri has since filed a separate proceeding to obtain a money judgment against WBC in Angola.

21.  As Centauri advised the Court in its August 16, 2007, letter, proceedings were commenced in Angola that same day to obtain a money judgment against WBC. (Attached hereto as Exhibit B is a copy of the Writ of Execution (as well as an English translation of the Portuguese original) which was filed by plaintiff on August 16, 2007, in the Maritime Court of Luanda Province in Angola. An amendment to the Writ of

Execution was filed on August 27, 2007, to correct the names of the parties. (See Exhibit C attached).

The foregoing is true and correct to the best of my knowledge under the penalty of perjury.

Executed on: August 31, 2007

_____
Kirk M. Lyons

U:\kmhldocs\2648001\Motions\OTSC\Aff-KML-OppVacate.doc

## CERTIFICATE OF SERVICE

Kirk M. Lyons, an attorney duly admitted to practice before this Honorable Court, affirms on this 31st day of August 2007, I served true copies of the foregoing, by U.S. Mail, first-class postage pre-paid, and by e-mail to:

>LENNON, MURPHY & LENNON, LLC
>Tide Mill Landing
>2425 Post Road
>Southport, CT 06890
>
>Attn.: Patrick F. Lennon, Esq.

_____
Kirk M. Lyons

U:\kmhldocs\2648001\Motions\OTSC\Aff-KML-OppVacate.doc