UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
CENTAURI SHIPPING LTD.,

|  |  |  |
|---|---|---|
| | Plaintiff, | **ECF CASE** |

- against -

WESTERN BULK CARRIERS KS, WESTERN BULK AS,            07 Civ. 4761 (RJS)
and WESTERN BULK CARRIERS AS,

                                    Defendants.
------------------------------------------------------------------X


# MEMORANDUM OF LAW IN OPPOSITION TO
# DEFENDANT WESTERN BULK CARRIER KS's
# MOTION TO VACATE THE MARITIME ATTACHMENT


Of Counsel:

Kirk M. Lyons
Jon Werner

**Lyons & Flood, LLP**
Attorneys for Plaintiff
CENTAURI SHIPPING LTD.
65 W. 36th Street, 7th Floor
New York, NY 10018

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. ii

Preliminary Statement.................................................................................... 1

POINT I  PLAINTIFF HAS MET ITS RULE E(4)(f) BURDEN
UNDER AQUA STOLI .................................................................. 3

    a.  Plaintiff has shown a valid *prima facie*
admiralty claim against defendant ........................................... 4

    b.  Defendant was not within the District .................................... 4

    c.  The attached property was within the District ........................ 5

    d.  There is no statutory or maritime law bar to the
attachment.............................................................................. 5

POINT II  DEFENDANT WBC WAS NOT PRESENT WITHIN
THE DISTRICT WHEN THE VERIFIED
COMPLAINT WAS FILED .......................................................... 6

    a.  The existence of an agent for service of
process in the District is insufficient to
establish presence within the District for the
purposes of Rule B ................................................................. 6

    b.  Defendant WBC is not present in the District
in the jurisdictional sense for the purposes of
Rule B .................................................................................... 8

    c.  A license to do business cannot alone establish
personal jurisdiction.............................................................. 14

POINT III  CENTAURI'S CAUSE OF ACTION IS NOT
PREMATURE OR INEQUITABLE .............................................. 19

POINT IV  CENTAURI MADE NO MISREPRESENTATIONS
IN THE VERIFIED COMPLAINT AND NO DUE
PROCESS CONCERNS ARE RAISED BY THIS
ATTACHMENT .......................................................................... 24

CONCLUSION.............................................................................................. 27

## TABLE OF AUTHORITIES

**Cases**

Ackermann v. Levine, 788 F.2d 830 (2nd Cir. 1986) .......................................................... 27

Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd., 460 F.3d 434 (2nd Cir.
    2006) ................................................................................................................ 3, 5, 9, 19

Auckland Shipping Company v. Western Bulk Carriers, KS, 07 Civ. 4139
    (CM) (S.D.N.Y.) ..................................................................................................... 8, 12

Blue Dolphin, Inc. v. Gidding, 666 F.Supp. 1538 (S.D. Fla. 1987)..................................... 4

Blueye Navigation v. Oltenia Navigation, 1995 U.S. Dist. LEXIS 1844
    (S.D.N.Y. 1995) ............................................................................................................ 7

Capitol Resource Funding v. Tri-County Bank, 1997 U.S. Dist. LEXIS
    13055 (N.D.N.Y. 1997) ............................................................................................... 11

Central Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A., 56
    F.3d 359 (2nd Cir. 1995).............................................................................................. 17

Consub Del. LLC v. Schahin Engenharia Limitada, 476 F. Supp. 2d 305
    (S.D.N.Y. 2007)........................................................................................................... 21

Erne Shipping Inc. v. HBC Hamburg Bulk Carriers GMBH & Co. KG, 409 F. Supp. 2d
427, 432-33 (S.D.N.Y. 2006)................................................................ 9, 10, 11, 15, 16

Fesco Ocean Mgmt. v. High Seas Shipping Ltd., 2007 U.S. Dist. LEXIS
    19970 (S.D.N.Y. 2007)............................................................................................... 21

Gulf Ins. Co. v. Caldor Corp., 2006 U.S. Dist. LEXIS 38136 (S.D.N.Y.
    2006) .......................................................................................................................... 11

HBC Hamburg Bulk Carriers GmbH & Co. KG v. Proteinas y Oleicos
    S.A. de C.V., 2005 U.S. Dist. LEXIS 8009 (S.D.N.Y. 2005)....................................... 17

Hilton v. Guyot, 159 U.S. 113, 16 S.Ct. 139, 40 L.Ed. 95 (1895).................................... 23

Integrated Container Service, Inc. v. Starlines Container Shipping, Ltd., 476 F. Supp. 119,
123 (S.D.N.Y. 1979)......................................................................................................9

Mardas Marmara Deniz Isletmeciligi A.S. v. Fast Shipping & Trading Co.,
    2007 U.S. Dist. LEXIS 56685 (S.D.N.Y. 2007) .......................................................... 20

Maritrans Operating Partners Ltd. Partnership v. M/V Balsa 37, 64 F.3d

150 (4th Cir. 1995), cert. denied, 516 U.S. 1073, 116 S. Ct. 775, 133 L. Ed. 2d 727 (1996) .................................................................... 18

Nehring v. Steamship M/V POINT VAIL, 901 F.2d 1044 (11th Cir. 1990) .................... 17

Oilmar Co. v. Energy Transp., Ltd., 2003 U.S. Dist. LEXIS 14350 (D. Conn. 2003)..7, 16

Parkroad Corp. v. China Worldwide Shipping Co., 2005 U.S. Dist. LEXIS 11122 (S.D.N.Y. 2005) .................................................................... 17

Payton v. Summit Loans, Inc., 253 A.2d 459 (D.C. 1969) ................................................ 11

Perca Shipping Ltd. v. Western Bulk Carriers KS, 05 Civ. 4755 (GEL) (S.D.N.Y.) ............................................................................................ 13

Philadelphia National Bank v. United States, 411 F.2d 747 (5th Cir. 1969) ...................... 5

Seaplus Line Co., Ltd. v. Bulkhandling Handymax, AS, 409 F. Supp. 2d 316 (S.D.N.Y. 2005) ................................................................................ 17

Seawind Compania, S. A. v. Crescent Line, Inc., 320 F.2d 580, 582-83 (2nd Cir. 1963)................................................................................. 7, 10, 25

SPL Shipping Ltd. v. Gujarat Cheminex Ltd., 2007 U.S. Dist. LEXIS 18562 (S.D.N.Y. 2007) ................................................................................ 20

Staronset Shipping, Ltd. v. North Star Navigation, Inc., 659 F. Supp. 189 (S.D.N.Y. 1987) ................................................................................ 18

State of Oregon v. Tug Go Getter, 398 F.2d 873 (9th Cir. 1968) ...................................... 25

Taxfield Shipping, Inc. v. Asiana Marine, Inc., 2006 U.S. Dist. LEXIS 77465 (S.D.N.Y. 2006) ................................................................................ 20

Tide Line, Inc. v. Eastrade Commodities, Inc., 2006 U.S. Dist. LEXIS 60770 (S.D.N.Y. 2006). ............................................................................... 26

Transportes Navieros Y Terrestes v. Fairmount Heavy Transp. N.V., 2007 U.S. Dist. LEXIS 50260 (S.D.N.Y. 2007) ............................................ 20

Travelers Cas. & Sur. Co. v. Interclaim Ltd., 304 F. Supp. 2d 1018 (N.D. Ill. 2004) .................................................................................... 11

VTT Vulcan Petroleum v. Langham-Hill Petroleum, Inc., 684 F. Supp. 389 (S.D.N.Y. 1988) ............................................ 7, 9, 12, 15, 16, 19

Wajilam Exports (Singapore) Pte. Ltd. v. ATL Shipping Limited, 2006 U.S. Dist. LEXIS 77033 (S.D.N.Y. 2006) .................................................. 3

Walsh Transp Co. v. Iriquois Transit Corp., 16 F.2d 475 (S.D.N.Y. 1926) ...................... 4

**Statutes**

New York Civil Practice Law and Rules § 5307 ............................................................. 22

**Other Authorities**

19 C.J.S. Corporations § 942 (2003) ............................................................................. 16

This Memorandum of Law is respectfully submitted by plaintiff Centauri

Shipping Ltd. ("Centauri") in opposition to defendant Western Bulk Carrier KS's

("WBC") motion to vacate the maritime attachment. The facts in opposition to the

motion are set forth in the Affirmation of Kirk M. Lyons dated August 31, 2007 ("Lyons

Aff."), to which the Court is respectfully referred.

### Preliminary Statement

It is indeed ironic that WBC alleges "... it is beyond peradventure that Centauri

made illegitimate and abusive use of the Rule B attachment remedy." (WBC's Memo. in

Support, p. 15). For this is the exact "sin" that WBC committed in the Angolan arrest

proceeding, according to the Supreme Court of the Republic of Angola ("Supreme

Court"). The Supreme Court found WBC guilty of "... malicious abuse of legal

process..." when it arrested the M/V CENTAURI ("the Vessel") in Luanda, Angola.

(See p. 115 of Ex. ASR 1, Part IV, to Ridings Decl. in Support). The uncontested facts

are that WBC did not have any "substantive legitimacy" to its claim that the M/V

CENTAURI was owned by third-party Navitrans and that WBC was found to have

"intentional[ly]" "mislead the Court" when it sought to arrest the Vessel. (See p. 115,

*supra*). As a result, it was sanctioned by the Supreme Court to pay fines to the court for

malicious abuse of legal process in connection with the arrest of the M/V CENTAURI.

(See p. 115, *supra*).

Moreover, the Supreme Court specifically mandated that WBC "... pay

compensation ..." to Centauri for the wrongful arrest of the Vessel "to be fixed in the

enforcement of the judgment." (See p. 115, *supra*). Thus, liability for wrongful arrest

has already been established against WBC in the Angolan proceeding and the only

-1-

remaining task is for the Angolan court to assess the amount of the compensation for the damages and losses sustained by Centauri.

Based on the Supreme Court's finding of "malicious abuse of legal process" in the wrongful arrest of the M/V CENTAURI, Centauri now seeks compensation for the damages and losses sustained in connection therewith. To that end, on August 16, 2007, Centauri commenced a proceeding in Angola before the Maritime Court of Luanda Province in which damages in the amount of $14,693,517.00 plus interest and court and litigation costs are sought for the losses sustained by the wrongful arrest of its vessel. (See ¶ 21 and Exs. B and C of Lyons Aff. in Opposition).

To secure its claims against WBC for wrongful arrest, Centauri commenced this Rule B action and eventually attached a number of electronic fund transfers ("EFTs") of WBC as security. In lieu of the attached EFTs as security, alternate security in the form of a bond was issued on behalf of WBC for the full amount claimed in the Verified Complaint.

Against this background, WBC seeks to vacate the attachment of its property in this District and moves based on essentially two grounds: (1) the attachment is improper because defendant was present within the Southern District of New York (the "District") at the time the Verified Complaint was filed; and (2) the underlying cause of action is unripe since no money judgment has been obtained from an Angolan court.

Neither of these arguments has any merit whatsoever under the well-established principles set forth in this Circuit. As such, WBC's motion to vacate should be denied in its entirety.

## ARGUMENT

## POINT I

### PLAINTIFF HAS MET ITS RULE
### E(4)(f) BURDEN UNDER AQUA STOLI

In Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd., 460 F.3d 434 (2nd Cir.

2006), the Second Circuit greatly reduced the grounds upon which a Rule B attachment

can be vacated.  Under Aqua Stoli, in a Rule E(4)(f) inquiry challenging a Rule B

attachment, plaintiff has the limited burden to show that: (a) it has a valid *prima facie*

admiralty claim; (b) the named defendant cannot be found within district; (c) the

defendant's property attached was within the district; and (d) there is no statutory or

maritime law bar to the attachment.  Aqua Stoli, 460 F.3d 434, 445.  No further showing

is required under Aqua Stoli in order to establish plaintiff's right to the attachment.

In a recently decided case, Wajilam Exports (Singapore) Pte. Ltd. v. ATL

Shipping Limited, 2006 U.S. Dist. LEXIS 77033 (S.D.N.Y. 2006), Judge Lynch found

that the applicable standard for establishing the four factors above is "reasonable

grounds" and not a "preponderance of the evidence."

Of the four factors under Aqua Stoli, defendant WBC has not challenged the fact

that its property was within the District when it was attached, nor has defendant raised the

argument that there is a statutory or maritime law bar to the attachment.  Rather, WBC

argues that it was present within the District at the time of the filing of the Verified

Complaint and that plaintiff's claims are premature and, therefore, are not a valid *prima

facie* admiralty claim under Rule B.

As will be seen, Centauri has met the Aqua Stoli four factor burden.

**a.**    **Plaintiff has shown a valid *prima facie* admiralty**
          **claim against defendant**

Centauri's claims against defendant WBC are for wrongful arrest of the M/V

CENTAURI in Luanda, Angola.  Such claims are historically within the maritime

jurisdiction of this Court.  See Walsh Transp Co. v. Iriquois Transit Corp., 16 F.2d 475

(S.D.N.Y. 1926) (holding that a claim for wrongful attachment was within the maritime

jurisdiction of the court since "the consummation of the wrong, if wrong was done, was

upon navigable waters." Accord Blue Dolphin, Inc. v. Gidding, 666 F.Supp. 1538 (S.D.

Fla. 1987) (holding that claims alleging tortuous detention of and injury to vessels, not

"rooted in land," are clearly within the admiralty jurisdiction of the federal courts); see

also Philadelphia National Bank v. United States, 411 F.2d 747 (5th Cir. 1969) (finding

that a wrongful arrest claim was "one which is cognizable by the United States Courts

under the Suits in Admiralty Act.")

In any event, except for challenging the ripeness of the claim, WBC has not put

forward any argument that Centauri has failed to establish a valid *prima facie* admiralty

claim against defendant.  WBC's ripeness argument is addressed below in POINT III.

Thus, setting aside the ripeness issue, Centauri has carried its burden to show that it has a

valid *prima facie* admiralty claim against WBC.

**b.**    **Defendant was not within the District**

WBC, by its own supporting Declarations, has admitted that it has insufficient

continuous and systematic contacts with the State of New York to be considered

jurisdictionally present within the State of New York.  (See WBC's Memo. in Support, p.

11-12).  This should be the beginning and end of the inquiry as WBC cannot therefore be

"found within the district" within the meaning of Rule B.

However, WBC nevertheless contends that its license to do business in the State of New York is alone sufficient to subject it to jurisdiction here so that it would be present within the District for the purposes of Rule B. This argument is does not pass muster for the reasons addressed in POINT II below.

**c.**    **The attached property was within the District**

Defendant has never contended that the attached property was not the property of defendant or that its property was not present within the District at the time of the attachment. Indeed, it could not make such a contention since the EFTs were all captured at various banks in Manhattan – ABN AMRO Bank N.V., JPMorgan Chase and Bank of New York. Thus, Centauri has met its burden under Aqua Stoli to establish that the attached property was properly within the District.

**d.**    **There is no statutory or maritime law bar to the attachment**

As noted above, WBC has not explicitly argued the existence of an applicable statutory or maritime law bar to the attachment. Rather, defendant has attacked the ripeness of plaintiff's claims which goes to whether Centauri has made out a valid *prima facie* admiralty claim, and is not a specific statutory or maritime law bar to the attachment. Additionally, to the extent that WBC has argued that the attachment would be inequitable, this too is not a statutory or maritime law bar to the attachment. Thus, this factor has been satisfied.

## POINT II

### DEFENDANT WBC WAS NOT PRESENT WITHIN THE DISTRICT WHEN THE VERIFIED COMPLAINT WAS FILED

As noted above, WBC principally relies on the fact that it was registered with the Division of Corporations of the New York Department of State ("DOS") at the time the Verified Complaint was filed to support its argument that it could be "found within the district" within the meaning of Rule B at that time. As will be discussed, this argument is fatally flawed and will not support vacatur of the Rule B attachment.

a.    **The existence of an agent for service of process in the District is insufficient to establish presence within the District for the purposes of Rule B**

Initially, we must plead *mea culpa* in connection with WBC's assertion that Centauri made a misstatement to the Court in that it failed to disclose that defendant was registered to do business in the State of New York and had a registered agent for the service of process within the District. We deeply regret this misstatement, which was the result of a clerical error. (See Lyons Aff. in Opposition at ¶¶ 8-14).

However, plaintiff submits this misstatement was harmless error, since the existence of an agent for service of process in the District is not by itself sufficient to defeat a Rule B attachment. It is also necessary that WBC have an actual presence within the District for the purposes of jurisdiction.

It is well-settled in this Circuit that the standard for presence within a district for the purposes of a Rule B attachment is a two-pronged inquiry, requiring a defendant be present both for the purposes of service of process as well as jurisdictionally. Both prongs must be met in order for a defendant to be "found within the district" under Rule

B.  See, e.g., Seawind Compania, S. A. v. Crescent Line, Inc., 320 F.2d 580, 582-83 (2nd

Cir. 1963) (finding that "the requirement is said to present 'a two-pronged inquiry:  First,

whether (the respondent) can be found within the district in terms of jurisdiction, and

second, if so, whether it can be found for service or process'") (citations omitted); Oilmar

Co. v. Energy Transp., Ltd., 2003 U.S. Dist. LEXIS 14350 (D. Conn. 2003); Blueye

Navigation v. Oltenia Navigation, 1995 U.S. Dist. LEXIS 1844, at *11-12 (S.D.N.Y.

1995); VTT Vulcan Petroleum v. Langham-Hill Petroleum, Inc., 684 F. Supp. 389, 390

(S.D.N.Y. 1988).

    In considering the same argument as that raised by WBC here, the Oilmar court

noted:

> It is well established that a defendant is "found within the
> district," in the context of this maritime Rule, only if the
> defendant "can be found within the district in terms of
> jurisdiction" and "can be found for service of process." …
> In other words, not only must the defendant be able to
> accept process, but the defendant must also 'be engaged in
> sufficient activity in the district to subject it to jurisdiction
> even in the absence of a resident agent expressly authorized
> to accept process.'

(Emphasis added).  Oilmar Co., supra, 2003 U.S. Dist. LEXIS 14350, at *6 (quoting VTT

Vulcan Petroleum, supra, 684 F. Supp. at 390 and citing Seawind, supra, 320 F.2d at 582-

83).

    The Oilmar court ultimately upheld the attachments, finding that even though the

defendant had designated an agent for service of process prior to the time when the Rule

B attachments were sought, defendant did not meet the second prong because it was not

present in the district in the jurisdictional sense at the time of the contested attachments.

Similarly, here, WBC's agent for service of process does not alone suffice to establish its

presence within the District for the purposes of Rule B. WBC must additionally show that it has a presence within the District jurisdictionally.

As such, Centauri submits the failure to include the existence of an agent for service of process in New York affirmation filed in support of the application for an attachment order was harmless error and that the inclusion of such information would not have prevented the issuance of the attachment order.

Centauri notes that a similar outcome occurred in <u>Auckland Shipping Company v. Western Bulk Carriers, KS</u>, 07 Civ. 4139 (CM) (S.D.N.Y.), in which Judge McMahon issued an attachment order against defendant WBC, even where the plaintiff had submitted a Rule B(1) affidavit setting forth that defendant WBC had an agent for service of process in New York. The attachment order was issued based on plaintiff's other allegations that WBC was not present in the District in the jurisdictional sense. (See Lyons Aff. in Opposition at ¶ 13). Similarly, plaintiff submits that ¶ 3 of the Rule B(1) Affirmation filed in this action supports the conclusion that WBC is not present in this District in the jurisdictional sense.

**b.    Defendant WBC is not present in the District in the**
      **<u>jurisdictional sense for the purposes of Rule B</u>**

At the outset, it should be noted that WBC does not purport that this Court may exercise specific jurisdiction over it. Nor could it, since the present claim does not involve the United States, let alone the State of New York, in any way, shape or form, whatsoever. WBC's wrongful arrest of plaintiff's vessel, the M/V CENTAURI, occurred in Luanda, Angola, obviously several thousands of miles from New York.

Since the underlying claims in this Rule B action are unrelated to WBC's purported contacts with New York, any jurisdiction over WBC would have to exist, if at all, under principles of general jurisdiction. VTT Vulcan Petroleum, S.A. v. Langham-Hill Petroleum, Inc., 684 F. Supp. 389, 392 (S.D.N.Y. 1988). In determining whether general jurisdiction can be obtained over a defendant, courts have looked to whether a defendant has "continuous and systematic" general business contacts with New York. See Erne Shipping Inc. v. HBC Hamburg Bulk Carriers GMBH & Co. KG, 409 F. Supp. 2d 427, 432-33 (S.D.N.Y. 2006), rejected on other grounds by Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd., 460 F.3d 434 (2nd Cir. 2006) (noting that "[s]uch an inquiry would be consistent with Seawind's formulation requiring that 'the respondent be engaged in sufficient activity in the district to subject it to jurisdiction' … and with the broader principle that 'the law of the forum state … governs the issue of personal jurisdiction in admiralty cases' generally."); see also VTT Vulcan Petroleum, S.A., supra; Integrated Container Service, Inc. v. Starlines Container Shipping, Ltd., 476 F. Supp. 119, 123 (S.D.N.Y. 1979).

In assessing whether a defendant corporation's contacts are "continuous and systematic," courts have typically focused on factors such as: "whether the company has an office in the state, whether it has any bank accounts or other property in the state, whether it has a phone listing in the state, whether it does public relations work there, and whether it has individuals permanently located in the state to promote its interests." Erne Shipping Inc., supra, 409 F. Supp. 2d at 434 (citations omitted).

The Erne court applied the above factors, finding that since the defendant did not have an office, property, telephone listings or employees located in the state, did no

advertising in the state, and had only caused an employee to come to New York once, the defendant's contacts with the state were insufficiently "continuous and systematic" to confer general jurisdiction.  Erne Shipping Inc., supra, 409 F. Supp. 2d at 434.  Notably, in reaching this conclusion, the Erne court disregarded evidence that the defendant had contractual arrangements in the state involving New York companies and which caused vessels to dock within the state, stating that:

> These contracts, although not insignificant in amount, represent a tiny fraction (approximately 2%) of HBC's overall revenue. While some of these contracts have caused vessels to dock within New York State's jurisdiction, these visits have no great jurisdictional significance beyond the revenue that is generated to New York from the underlying contracts… Even the contracts with New York-based shippers must be considered in light of the fact that they all involved shipments to other locations.

(Citations omitted). Erne Shipping Inc., supra, 409 F. Supp. 2d at 434.

It is also evident from the Second Circuit's decision in Seawind Compania that the presence of corporate minutes and stock transfer books and all of defendant's corporate officers in New York were not sufficient to qualify the defendant as "doing business under the ordinary tests." Seawind Compania, supra, 320 F.2d at 583.

Here, the facts submitted by WBC clearly show that it had insufficient contacts with the forum to subject it to general jurisdiction.  WBC does not maintain an office within the State of New York, has no employees located in New York, and owns no property in New York (other than their transitory property interest in EFTs passing through intermediary banks located in New York).  Indeed, WBC does not contend otherwise.

-10-

In fact, the only evidence WBC has submitted to establish that it is subject to the personal jurisdiction of this Court was that (1) defendant (and its related companies) have been party to a number of lawsuits in Federal court in New York and have not formally contested the courts' personal jurisdiction over it; (2) between 2005 and 2007, defendant has conducted business with seven brokers, had twelve business partners, used nine law firms, and had dealings with two other agents, all of which were located in New York, and additionally had two vessels which loaded or discharged cargoes or were bunkered in New York; and (3) "[d]uring any given year, WBC executives travel to New York anywhere from 4-6 times related to WBC business activities." (See the Declaration of Sara Gillingham Aukner dated August 9, 2007 ("Aukner Decl.") in Support, at ¶¶ 8-10).[1] However, even these contacts taken as a whole are insufficient to establish a jurisdictional presence in New York. See Erne Shipping, supra.

WBC's evidence is flawed for an even more fundamental reason. The "continuous and systematic" contacts must exist as of the time the verified complaint is filed under Rule B(1)(a) ) ("If a defendant is not found within the district when a verified complaint praying for attachment and the affidavit required by Rule B(1)(b) are filed,...")

---

[1] We ask the Court to take judicial notice that no commercial ocean-going vessels, except for passenger vessels on the West side of Manhattan, dock in the Southern District of New York. Therefore, it is highly unlikely that any of the vessels under charter to WBC actually berthed in this District. Moreover, participation in litigation is not considered to be "doing business" under New York law and thus, cannot form a basis for the assertion of personal jurisdiction over defendant WBC. See, e.g., Capitol Resource Funding v. Tri-County Bank, 1997 U.S. Dist. LEXIS 13055, at *6-7 (N.D.N.Y. 1997); Gulf Ins. Co. v. Caldor Corp., 2006 U.S. Dist. LEXIS 38136 (S.D.N.Y. 2006); Travelers Cas. & Sur. Co. v. Interclaim Ltd., 304 F. Supp. 2d 1018, 1025 (N.D. Ill. 2004) ("[plaintiff] has not carried its burden by providing any authority whatsoever for the dubious proposition that general jurisdiction may be asserted on the basis of involvement in an unrelated lawsuit. The court is unpersuaded that the prosecution of [unrelated litigation] by [defendant] constitutes "doing business" in Illinois"); Payton v. Summit Loans, Inc., 253 A.2d 459, 461 (D.C. 1969) ("The initiation of an action by a foreign corporation does not in and of itself constitute doing business in the jurisdiction where suit is brought."); Thus, the fact that WBC has chosen to defend lawsuits in this District does not confer general jurisdiction over it in unrelated future actions.

(Emphasis added). Past jurisdictional contacts are immaterial to the inquiry of whether a

defendant can be found in the District for purposes of Rule B. As Judge Leisure found in

the VTT Vulcan case:

> Past general jurisdictional contacts, unrelated to the subject
> matter of the litigation, provide no security to a plaintiff
> who wants to ensure that any judgment in its favor might be
> satisfied. Unlike specific jurisdictional contacts which do
> not terminate when a defendant physically leaves the forum
> state, general jurisdictional contacts do terminate when the
> defendant physically ends all continuous and systematic
> contact with the forum. Although past general
> jurisdictional contacts might satisfy due process concerns in
> other contexts, such past general jurisdictional contacts
> cannot satisfy the "jurisdictional presence" prong of the test
> for vacating a maritime attachment.

VTT Vulcan, supra, 684 F. Supp. at 392.

Thus, in addition to the other reasons discussed above, the evidence submitted by

WBC in support of the continuous and systematic contact with New York is defective

since it is silent as to when those contacts occurred. What may have occurred in 2005 is

immaterial to a determination as to whether WBC had a presence in the jurisdictional

sense on June 5, 2007, when the Verified Complaint and Rule B(1) Affirmation were

filed. For this reason alone, WBC's jurisdictional presence argument fails.

Moreover, we note that in other recent Rule B attachment proceedings in which

WBC was a defendant, WBC has curiously failed to move to vacate the attachment on the

basis that it was present within the District at the time of the attachment.

For example, in Auckland Shipping Company v. Western Bulk Carriers, KS, 07

Civ. 4139 (CM) (S.D.N.Y.), filed a mere eight (8) days before this action, when plaintiff

there sought to attach defendant WBC's assets to obtain $715,285.38 in security, WBC

did not assert its presence in the District to challenge the propriety of the attachment. Instead, on July 3, 2007, defendant WBC entered into an agreement with plaintiff to exchange alternate security and stay the action pending the outcome of London arbitration.

Similarly, in Perca Shipping Ltd. v. Western Bulk Carriers KS, 05 Civ. 4755 (GEL) (S.D.N.Y.), a plaintiff obtained an attachment order seeking security in the amount of $2,505,807.26. However, upon appearing in the action, WBC did not challenge the propriety of the attachment but seems to have entered into a settlement with plaintiff there, as evidenced by the plaintiff's filing of a voluntary dismissal without prejudice releasing all the attached funds.

Finally and clearly fatally, WBC has conceded that it does not have the requisite continuous and systematic contacts with New York to establish that it is subject to the general jurisdiction of this Court. "WBC concedes that despite its numerous contacts with the Southern District of New York ... such contacts would not meet the 'continuous and systematic' test that has been applied by the courts on a 'case-by-case' basis." (See WBC's Memo. in Support, p. 11-12). This concession alone, without more, is sufficient to defeat WBC's motion to vacate the attachment on the basis that WBC is not present in New York in the jurisdictional sense.[2]

Thus, there is no basis for this Court to exercise personal jurisdiction over WBC, and WBC is thus not present within the District for the purposes of Rule B.

---

[2] Given WBC's concession that it cannot meet the continuous and systematic contacts test of doing business in New York, the evidence submitted by defendant to support those contacts is irrelevant and immaterial to defendant's motion to vacate. However, to the extent the Court considers this evidence in deciding the issue, Centauri reserves its right to obtain discovery from WBC limited to the jurisdictional issue.

c.    **A license to do business cannot alone establish**
      **personal jurisdiction**

Having conceded that it lacks the sufficient minimum contacts to be subject to

personal jurisdiction in this Court, WBC nevertheless staggers forward and takes the

novel approach, which has been rejected by Courts in this District, that a license to do

business in New York <u>alone</u> is sufficient to establish both prongs of the "found within the

district" test – to wit:  (a) WBC has an agent for service of process in the District and (b)

WBC can be found in the District in the jurisdictional sense.  WBC cites no cases from

this Circuit, which have given the license to do business such wide-ranging effect in the

Rule B context.  It apparently did not do so because there are no such cases.  The only

cases in this District that have addressed the issue have rejected it.

Under WBC's theory, this paradoxical result obtains because the holdings in <u>Erne</u>

and the other authorities cited within that case, are inapplicable where a defendant has

filed for a license to do business within the jurisdiction, such as by the filing WBC has

done here.

However, the <u>Erne</u> court flatly rejected that approach and specifically held that an

authorization to do business is <u>not</u> sufficient to predicate jurisdiction for purposes of Rule

B.  In a well-reasoned decision, Magistrate Judge Gorenstein explained:

> As noted, the purposes of the maritime attachment rule are
> (1) to provide security for the plaintiff if a suit is successful,
> and (2) to assure the defendant's appearance in an action.
> Winter Storm, 310 F.3d at 268.  Accordingly, to determine
> how to treat a filing for authorization to do business under
> section 1305, we ask whether treating such a filing alone as
> meeting the "found within the district" requirement would
> vindicate these two policies.  We believe it would not.
>
> First, a mere filing for authorization to do business provides

no security to a plaintiff. While we recognize that a rule
requiring actual presence in the district (rather than just
consent) also does not necessarily provide security, at least
actual presence makes it far more likely that assets might be
located in the district to levy upon should the suit be
successful. A voluntary filing under the Business
Corporation Law, by contrast, has little or no correlation
with the presence of assets. Second, with respect to
assuring the defendant's appearance in the action, the mere
act of filing provides no assurance that suit could be
instituted in the future since the authorization can be
surrendered unilaterally at any time. See B.C.L. § 1310.
Thus if we granted vacatur and if HBC thereupon withdrew
its filing, Erne would have no means of obtaining
jurisdiction over HBC if it were ever necessary to bring suit
against HBC – for example, to enforce an arbitration award.

In sum, neither policy underlying Rule B is vindicated by
predicating jurisdiction on a mere filing for authorization to
do business under the Business Corporation Law.
Accordingly, we do not consider such filing to be sufficient
to make a showing that a defendant is "found" within the
district.

Erne Shipping, supra, 409 F. Supp.2d at 437.[3]

In addition, Judge Leisure in VTT Vulcan reached a similar conclusion involving

a defendant Mississippi corporation qualified to do business in New York through the

Secretary of State and which had an agent for service of process in New York City at the

time the Rule B maritime attachment proceeding was filed. Although at one time the

defendant there had an office in New York City, it had ceased to have an office in the

District shortly prior to the filing of the action. In addressing the ruling on defendant's

motion to vacate the attachment, Judge Leisure held:

Although an agent for service of process might provide a
basis for *in personam* jurisdiction in other contexts, the

---

[3] Interestingly, counsel for WBC in this action was the same counsel for plaintiff in the Erne Shipping case
in which counsel convinced Magistrate Judge Gorenstein that the very argument they make here was wrong!

> presence of an agent alone will not satisfy the two-prong
> test for vacating maritime attachment.

VTT Vulcan, supra, 684 F. Supp. at 390, n. 1.

"While [Judge Leisure] did not state so directly, a necessary element of [his]

holding was that the corporation's authorization to do business was insufficient by itself

to cause it to be 'found' within this district. Erne Shipping, supra, 409 F. Supp. 2d at

438. See also Oilmar Co., supra (holding that an agent for service of process was not,

without more, sufficient to meet the jurisdictional presence prong of the test.)

Magistrate Judge Gorenstein's holding and by implication Judge Leisure's

holding are based on very sound policy. In the context of Rule B, jurisdiction based on a

license to do business in New York without security is a hollow victory for a maritime

creditor. A piece of paper in Albany (i.e., the license issued by the Secretary of State

which is not even located in the Southern District of New York) provides absolutely no

comfort to a maritime creditor seeking security from a maritime debtor. The license to do

business does not have any talismanic power. It cannot be used as security for a future

judgment or a guarantee of payment of any judgment that may obtained. The license is

simply a right of the corporation to conduct business in New York – nothing more and

nothing less. It has no monetary or security value for a maritime creditor.

Maritime assets have long held a special place in the eyes of the Second Circuit.

> Maritime attachments arose because it is frequently, but not
> always, more difficult to find property of parties to a
> maritime dispute than of parties to a traditional civil action.
> (Citation omitted). Thus, the traditional policy underlying
> maritime attachment has been to permit the attachments of
> assets wherever they can be found and not to require the
> plaintiff to scour the globe to find a proper forum for suit or
> property of the defendant sufficient to satisfy a judgment.

Aqua Stoli, supra, 460 F.3d at 443.

This policy is no more prevalent here where WBC admittedly does not conduct continuous and systematic business in this District and has no offices within the State of New York, has no employees located in New York, and owns no property in New York (other than their transitory property interest in EFTs passing through intermediary banks located in New York). Could Centauri satisfy any judgment by levying on the license filed in the Secretary of State's office in Albany? Obviously, it could not.

WBC takes the further skewed position that since a license to do business in New York equates to being present in the District in the jurisdictional sense, a maritime creditor cannot obtain a Rule B maritime attachment simply for security. However, that is not the law and many courts, including the Second Circuit, have allowed Rule B maritime attachments simply to obtain security, rather than to obtain personal jurisdiction over a defendant. See, e.g., Central Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A., 56 F.3d 359, 371 (2nd Cir. 1995) (holding it is not improper to commence attachment solely for the purpose of obtaining security and noting that "[a] claimant's motive in filing an attachment is irrelevant.") (citing Nehring v. Steamship M/V POINT VAIL, 901 F.2d 1044 (11th Cir. 1990)); Parkroad Corp. v. China Worldwide Shipping Co., 2005 U.S. Dist. LEXIS 11122 (S.D.N.Y. 2005) ("A plaintiff may obtain a maritime attachment even though the party's primary objective is to obtain security to satisfy a potential judgment, and not to obtain personal jurisdiction over the defendant."); HBC Hamburg Bulk Carriers GmbH & Co. KG v. Proteinas y Oleicos S.A. de C.V., 2005 U.S. Dist. LEXIS 8009 (S.D.N.Y. 2005); Seaplus Line Co., Ltd. v. Bulkhandling Handymax,

AS, 409 F. Supp. 2d 316, 322 (S.D.N.Y. 2005) ("even when the attachment is not needed

for jurisdiction, providing security for a potential judgment is also a purpose of

Supplemental Rule B."); Staronset Shipping, Ltd. v. North Star Navigation, Inc., 659 F.

Supp. 189, 191 (S.D.N.Y. 1987) ("the spirit of [Supplemental Rule B(1)] is not violated

when a party's primary interest in seeking the attachment is obtaining security to satisfy a

judgment, rather than simply obtaining in personam jurisdiction.")

WBC's citation to Maritrans Operating Partners Ltd. Partnership v. M/V Balsa 37,

64 F.3d 150 (4th Cir. 1995), cert. denied, 516 U.S. 1073, 116 S. Ct. 775, 133 L. Ed. 2d

727 (1996), is inapposite, since as defendant candidly admits, that case involved a local

admiralty rule which provided a drastically different and narrower definition of "shall not

be found within the district" than Rule B provides.  Moreover, the decisions of the Fourth

Circuit Court of Appeals are not binding upon this Court and are squarely against the only

authority in this Circuit on the issue.

Finally, Centauri submits that a ruling in favor of WBC on this issue would set the

Rule B world on its head since maritime attachments, as have been known for the past

two hundred years, would evaporate under the slew of filings with the Secretary of State's

office in Albany.  Every maritime debtor worldwide that trades in U.S. Dollar

transactions would rush to obtain a license to do business in New York, knowing that

such a filing would protect and insulate it from any Rule B maritime attachment,

regardless of the extent, if any, of the debtor's contacts with New York.  One can easily

envision a maritime debtor located in the far reaches of the globe obtaining a license to do

business in New York and having the security of knowing that even though it has

absolutely no connection with New York, its maritime creditors would be powerless to

obtain security from the debtor by way of a Rule B attachment. This is certainly not the historical policy behind Rule B. "Th[e] policy has been implemented by a relatively broad maritime attachment rule, under which the attachment is quite easily obtained." Aqua Stoli, supra, 460 F.3d at 444. The ruling advocated by WBC would eviscerate that policy and consign Rule B maritime attachments to a mere historical footnote of maritime law.

In sum, WBC's filings with the DOS are insufficient to establish presence within the District for the purposes of Rule B. As noted above, WBC has conceded that it cannot establish the requisite contacts with the forum which would subject it to this Court's personal jurisdiction. Therefore, WBC was not present within the District for the purposes of Rule B and there is no basis for vacatur of this attachment.

## POINT III

### CENTAURI'S CAUSE OF ACTION IS NOT PREMATURE OR INEQUITABLE

As noted initially, the Supreme Court of the Republic of Angola has already held that WBC was guilty of "malicious abuse of legal process" in the wrongful arrest of the M/V CENTAURI. The Supreme Court also issued sanctions against WBC for the malicious abuse of legal process and ordered that WBC pay compensation to Centauri in an amount "to be fixed in the enforcement of the judgment." (See p. 115 of Ex. ASR 1, Part IV, to Ridings Decl. in Support). The decision of the Supreme Court is final and unappealable. (See Decl. of Ridings in Support at ¶ 22). As a result, Centauri has a final and unappealable judgment against WBC on the issue of liability. All that remains is for Centauri to obtain an assessment of damages by the Angolan courts.

Despite this, WBC takes the position that until a "money" judgment has been obtained against it in Angola, plaintiff cannot assert a *prima facie* valid maritime claim sufficient to justify the Rule B maritime attachment. (See defendant's Memo. in Support, p. 17; plaintiff "must obtain a money judgment against WBC from the Angolan courts before it even has a viable right to attach *any* funds of WBC pursuant to Rule B").

This allegation, which is the heart of WBC's ripeness argument, is utterly unsupported by the well-established case law in this Circuit regarding Rule B attachments. It is axiomatic that the entire purpose of Rule B is to obtain pre-judgment security. There is no requirement in the language of Rule B that the plaintiff must have a "money" judgment in hand at the time the Verified Complaint is filed.

In fact, the vast majority of Rule B attachment cases reported in this Circuit post-Aqua Stoli have involved pre-judgment security. A significant number of such cases have involved attachment proceedings seeking security for claims which were subject to London arbitration and which were either presently on-going or not yet commenced, and were thus, many months away from being resolved and an award issued. See, e.g., Transportes Navieros Y Terrestes v. Fairmount Heavy Transp. N.V., 2007 U.S. Dist. LEXIS 50260 (S.D.N.Y. 2007) (security sought for breach of charter party where arbitration was still under way); Mardas Marmara Deniz Isletmeciligi A.S. v. Fast Shipping & Trading Co., 2007 U.S. Dist. LEXIS 56685 (S.D.N.Y. 2007) (security sought where arbitration had not yet commenced); SPL Shipping Ltd. v. Gujarat Cheminex Ltd., 2007 U.S. Dist. LEXIS 18562 (S.D.N.Y. 2007) (Rule B action commenced one month after alleged breach of contract); Taxfield Shipping, Inc. v. Asiana Marine, Inc., 2006 U.S. Dist. LEXIS 77465 (S.D.N.Y. 2006) (security sought for breach of bill of lading

where Hong Kong arbitration remained under way); <u>Fesco Ocean Mgmt. v. High Seas Shipping Ltd.</u>, 2007 U.S. Dist. LEXIS 19970 (S.D.N.Y. 2007) (London arbitration still on-going); <u>Consub Del. LLC v. Schahin Engenharia Limitada</u>, 476 F. Supp. 2d 305, 308 (S.D.N.Y. 2007) (security sought for claim still being litigated in English courts).

This is consistent with the experience of counsel handling the matter for Centauri. Over 90% of the Rule B actions filed in the Southern District are not based on the existence of a judgment held by the plaintiff. Rather, they are typically based on a breach of a charter party claim that is subject to London arbitration, which is either on-going or yet to be commenced. Thus, at the time the Verified Complaint is filed, the plaintiff does not have a judgment in hand nor does plaintiff have an arbitration award in hand.

Thus, the fact that defendant WBC is arguing Centauri's claim is premature is non-sensical. If a mere breach of a charter party is sufficient to support a Rule B attachment, there is absolutely no logic in preventing the Centauri here, which actually has a decision in hand, issued by the Supreme Court, establishing WBC's liability, for wrongful arrest, from seeking pre-judgment security by way of a Rule B attachment.

To limit Rule B attachments to those situations where the plaintiff has a money judgment in hand would be tantamount to re-writing Rule B and making it a post-judgment remedy. That would be against the two hundred year policy of allowing maritime attachments to secure claims long <u>before</u> any judgment has been obtained by the maritime creditor. Truly there can be no doubt whatsoever that WBC's interpretation of the requirements of Rule B is faulty.

In sum, Centauri's claim for wrongful arrest of the M/V CENTAURI is mature and accrued and supports a *prima facie* admiralty claim against WBC, particularly since

plaintiff already has a liability judgment against WBC issued by the Supreme Court of Angola that specifically ordered WBC to "pay compensation" to Centauri in an amount to be fixed in "enforcement of the judgment."

In addition to arguing that the absence of a "money" judgment against WBC makes Centauri's claims premature and unable to support a *prima facie* admiralty claim against WBC, defendant further erroneously argues that the judgment presently issued by the Supreme Court against it is not capable of recognition and enforcement in this action. This is simply not true as the existing judgment issued by the Supreme Court is fully enforceable in this Court at this time.

Initially, WBC is correct in asserting that in New York, the enforcement of foreign judgments is governed by Article 53 of the Civil Practice Law and Rules. However, WBC's interpretation of Article 53, as not providing a basis for enforcement of a foreign judgment which does not award a sum of money is wrong.

A foreign judgment that does not qualify as a money judgment is still enforceable under § 5307, which provides that "[t]his article does not prevent the recognition of a foreign country judgment in situations not covered by this article." Thus, under this "catch-all" provision, a non-money foreign judgment can be recognized and enforced as well.

In such cases a court will be guided by the general principles of comity and will accordingly, consider whether: (1) the foreign court properly accepted personal jurisdiction over the defendant; (2) the defendant was properly served with notice of the proceedings and given a reasonable opportunity to be heard (often judged by international standards); (3) the proceedings were tainted with fraud; and (4) the judgment offends the

public policy of the local state. See generally, <u>Hilton v. Guyot</u>, 159 U.S. 113, 16 S.Ct. 139, 40 L.Ed. 95 (1895).

Thus, there is nothing in Article 53 of the CPLR to prevent enforcement of the present Angolan judgment by this Court, and such enforcement will be guided by the ordinary and familiar principles of comity.

Alternatively, WBC argues that this attachment is inequitable because Centauri has not yet commenced proceedings in Angola to obtain a money judgment against them. (See defendant's Memo. in Support, p. 16). As a threshold matter, it is disingenuous for WBC to rely on equitable principles to support its motion to vacate the Rule B attachment since it is Black letter law that under principles of equity, one with unclean hands is not entitled to equitable relief. WBC clearly and unequivocally has "unclean hands" by virtue of it having been found guilty of malicious abuse of legal process in wrongfully arresting plaintiff's vessel in Angola. Thus, Centauri respectfully requests the Court to reject any equitable relief sought by WBC.

In addition, given that WBC has a final, unappealable judgment that has been entered against it by the Supreme Court of the Republic of Angola and that a money judgment will inevitably be entered against WBC in connection with that judgment, Centauri's claims are hardly "purely hypothetical." They are more real and concrete than 90% of the Rule B attachments filed in this District in which no liability has even been established against the defendant.

Additionally, WBC apparently conflates the issue of the ripeness of a judgment for execution with the ripeness of an underlying claim. The alleged prematurity of a judgment in terms of its capability to be enforced by a court is simply inapposite to the

question of whether a plaintiff has alleged a valid *prima facie* maritime claim to support

an attachment under Rule B.

Finally and in any event, on August 16, 2007, Centauri commenced a proceeding

against WBC in the Maritime Court of Luanda Province to assess the amount of damages

due it for WBC's wrongful arrest of the M/V CENTAURI. (See Lyons Aff. in

Opposition at ¶¶ 20 and 21). Thus, any "prematurity" concerns that WBC has raised have

been cured.

## POINT IV

### CENTAURI MADE NO MISREPRESENTATIONS IN THE VERIFIED COMPLAINT AND NO DUE PROCESS CONCERNS ARE RAISED BY THIS ATTACHMENT

Defendant WBC's last argument is somewhat duplicative of its prior argument in

that it contends Centauri's attachment should be vacated on equitable grounds, stemming

from certain representations contained in the Verified Complaint. For the same reasons

discussed under POINT III, WBC is not entitled to any equitable relief as it has unclean

hands based on the finding by the Angolan Supreme Court that it was guilty of "malicious

abuse of legal process" in wrongfully arresting the M/V CENTAURI. If there is any

equity to be given in this action, it should flow only in the direction of Centauri whose

vessel was under arrest in Luanda, Angola for approximately 814 days based on WBC

filing intentionally misleading documents with the Angolan court in support of the arrest.

As for Centauri's erroneous omission of the fact that WBC was licensed to do

business in the State of New York and had a registered agent for the service of process

within the District in its Rule B(1) Affirmation, as discussed above in POINT II, the

omission, though regrettable, was harmless and would not have prevented Centauri from obtaining an attachment order in the first instance.

Moreover, WBC's citation to State of Oregon v. Tug Go Getter, 398 F.2d 873 (9th Cir. 1968), is inapposite. In State of Oregon, the Ninth Circuit vacated an attachment where the plaintiff had failed to perform the required due diligence search for presence within the District and as a result, had failed to discover that the defendant actually was present within the District (and in fact, had been doing business in the state of Oregon for five years and employed a managing agent there). Id. at 874. The critical difference here, of course, is that although Centauri plaintiff did make a misstatement to the Court regarding one factor used to determine the presence of WBC within the District, in the end, the fact remains that WBC admittedly does not have continuous and systematic contacts with New York sufficient to be found in the District for jurisdictional purposes and, therefore, was not present within the District. (See POINT II, supra).

We also note from the Second Circuit's decision in Seawind Compania that the failure to identify an agent for service of process in the District was not fatal to the maritime attachment obtained in that case. In fact, it played no part in the decision. The maritime attachment had been vacated by the District Court on the grounds that the defendant did have an agent for service of process in the District and the contract upon which the suit was based was made in New York. Vacatur of the attachment was upheld on appeal. Seawind Compania, supra, 320 F.2d at 580, 583.

With regard to the second alleged "misrepresentation," WBC argues that plaintiff's assertion in the Verified Complaint that the Angolan court proceedings were on-going is now moot. As Centauri advised the Court in its August 16, 2007 letter,

-25-

proceedings were commenced in Angola that same day to obtain a money judgment

against WBC.  (See Lyons Aff. in Opposition at ¶¶ 20 and 21.)  These proceedings are

active and on-going, and moreover, were on-going when WBC asserted incorrectly, that

as of August 28, 2007, Centauri had not commenced new proceedings before the Angolan

courts to obtain a money judgment against WBC.  (See defendant's Memo. in Support,

pp. 8 and 22).

Additionally, it must be noted that when the Verified Complaint was prepared it

was with the knowledge that a decision had been entered in Centauri's by the Supreme

Court on the issue of liability, and that an appeal from that decision had been recently

rejected by the Supreme Court.  We had thus presumed, incorrectly as it turns out due to

unfamiliarity with Angolan legal practice, that a money judgment would be obtained as

part of the same proceeding through which the previous judgment had been obtained.

(See Lyons Aff. at ¶¶ 17-19).  Thus, Centauri submits that if any inaccuracies were

contained in ¶ 14 of the Verified Complaint, such were made innocently, and in any case

are immaterial, especially where proceedings to obtain a money judgment have since

commenced in Angola.

In the interests of justice under Rule 15, Centauri respectfully requests permission

to amend its Verified Complaint to rectify any perceived deficiencies in the manner of

pleading.  Tide Line, Inc. v. Eastrade Commodities, Inc., 2006 U.S. Dist. LEXIS 60770

(S.D.N.Y. 2006).

Thus, since there are on-going proceedings in Angola by which Centauri is

seeking a money judgment against WBC, its argument that its minimal due process rights

have been impinged has become moot. WBC's argument must therefore fail in that it cannot demonstrate any possible due process concerns.[4]

## CONCLUSION

Plaintiff respectfully requests that this Court deny defendant WBC's motion to vacate in its entirety and to grant plaintiff such other and further relief as the Court sees fit.

Dated: August 31, 2007

<div style="margin-left: 40%;">

LYONS & FLOOD, LLP
Attorneys for Plaintiff
CENTAURI SHIPPING LTD.

By: *Kirk M. Lyons*

Kirk M. Lyons (KL-1568)
65 West 36th Street, 7th Floor
New York, New York 10018
(212) 594-2400

</div>

U:\kmhldocs\2648001\Motions\OTSC\MOL-OppVacate (kml rev 2).doc

---

[4] In several places in its Memorandum of Law in Support, WBC makes reference to the fact that it will contest in any enforcement proceedings in this Court that its due process rights were violated in the Angolan proceedings. For the sake of good order, we note (a) the issue of enforcement of any Angolan judgments is not now before Your Honor and (b) in a subsequent application to the Supreme Court, WBC made its due process arguments. These were rejected by the Supreme Court. (See pp. 136-138 of Ex. ASR 1, Part IV, to Ridings Decl. in Support).

## CERTIFICATE OF SERVICE

Kirk M. Lyons, an attorney duly admitted to practice before this Honorable Court, affirms on this 31st day of August 2007, I served true copies of the foregoing, by U.S. Mail, first-class postage pre-paid, and by e-mail to:

LENNON, MURPHY & LENNON, LLC
Tide Mill Landing
2425 Post Road
Southport, CT 06890

Attn.: Patrick F. Lennon, Esq.


_____
Kirk M. Lyons

U:\kmhldocs\2648001\Motions\OTSC\MOL-OppVacate (kml rev 2).doc