EXHIBIT "1"

**Appendix 3 to the Rulebook**

## MARGIN AND SETTLEMENT ACCOUNT AGREEMENT

This Margin and Settlement Account Agreement ("Agreement") is entered into as of
[ 26 March 2003 ..] between

A.     [ Western Bulk Carriers KS ........................] (the Company); and

B.     **THE NORWEGIAN FUTURES AND OPTION CLEARING HOUSE (NOS
CLEARING ASA) ("NOS"),**

       (together the **"Parties"**).

The Parties agree as follows:

1.     Reference is made to the Rulebook for Trading at IMAREX - The International
Maritime Exchange and Clearing with NOS - The Norwegian Futures and Options Clearing
House (NOS Clearing ASA) (as amended from time to time, the **"Rulebook"**).  The
provisions of the Rulebook (including without limitation Clause 8) shall apply to this
Agreement, and capitalized defined terms not defined in this Agreement have the meanings
given to them in the Rulebook.

2.     NOS has established in its name a deposit account (the **"Account"**) with the bank
identified a separate letter from NOS to the Member (the **"Settlement Bank"**).  Clearing
Members shall deposit funds into the Account to provide for margin in the form of cash
collateral and for settlement requirements for contracts on Non-Listed Products and Listed
Products on IMAREX.

3.     The Settlement Bank has agreed to maintain on its books and records a sub-account
for each Clearing Member.  A Clearing Member's sub-account will record the funds received
from that Clearing Member as well as disbursements made to the Clearing Member from the
Account at NOS's direction and withdrawals and deposits made by NOS.

4.     With the Member's authorization and agreement, NOS has directed the Settlement
Bank to establish a sub-account (the **"Sub-account"**) for the Member.  The Sub-account does
not constitute a separate account at the Settlement Bank and the Member does not have a
depositor or other contractual relationship with the Settlement Bank or the right to make
withdrawals from the Sub-account or the Account.  Only NOS has the right to make
withdrawals from the Account and to debit the Sub-account.  The Member has the right to
request that NOS direct the Settlement Bank to make disbursements to the Member under the
circumstances described in Clause 6(4)(b) of the Rulebook.  The Member authorizes NOS to

Version 2

NY:22768.2

hold the Member's funds in the Account and to commingle those funds with funds received from other Clearing Members.

5. In a separate letter from NOS to the Member, there is set forth (a) the identity and address of the branch of the Settlement Bank at which the Account and the Sub-Account are maintained, (b) the account number of the Account, and (c) the sub-account number of the Sub-account. In making deposits, the Member must reference both this account number and sub-account number. All deposits must be made in immediately available funds.

6. The Member bears all risk of loss with respect to funds held on its behalf in the Account with the Bank. NOS shall not be responsible for any loss suffered by the Member as a result of the insolvency of the Bank, the Bank's failure to make any payment, any moratorium or any other event whatsoever. The member recognizes and acknowledges that neither the account nor the sub-account is insured by any governmental agency or private entity.

7. The Member authorizes NOS to disclose such information concerning the Member as the Settlement Bank shall reasonably request, including without limitation the information contained in the Member's Trading and Clearing Membership Application Form and Appendix A: Commodity Exchange Act Compliance Questionnaire.

8. The Sub-account constitutes the Member's "Margin and Settlement Account" for purposes of the Rulebook and corresponds to the Clearing Account No. [ɜɕꝺ oɪ ] held by the Member with NOS for clearing of contracts in Non-Listed and Listed Products on IMAREX.

9. By signing this Agreement the Member acknowledges and accepts the terms of the Rulebook and agrees to be bound by and observe its terms, as amended from time to time. Without limiting the generality of the foregoing, the Member agrees to provide margin and pay settlements amounts when due in accordance with the provisions of the Rulebook.

10. The Member represents and warrants and shall represent and warrant on a continuing basis for the duration of this Agreement:

    (a)    that this Agreement and the Rulebook constitute legal, valid and binding obligations of the Member, enforceable against it in accordance with their respective terms;

    (b)    that it has all necessary power and authority to execute this Agreement and perform and comply with its obligations hereunder and that the individual signing this Agreement is duly authorized to do so;

    (c)    that the execution and performance of this Agreement does not violate any law, rule, or regulation, or any agreement, document or other instrument binding on or applicable to it;

    (d)    it has any and all licenses, consents, registrations, authorisations or other similar approvals which are required under applicable laws or regulations in order to enable it to participate as a Clearing Member in accordance with the Rulebook, execute Transactions in Cleared Contracts through IMAREX and

2                                                                 NY:22768.2

perform its obligations to its counterparties (including NOS) pursuant to such transactions; and

(e)     no person or entity other than the Member will have any interest in the Sub-account or the Pledged Cash (as defined below).

11.     The Member pledges to NOS and grants NOS a security interest and right of set-off in all cash which is at present, or will in the future be, deposited in or credited to the Sub-Account (including interest) (the **"Pledged Cash"**) to secure payment of margin and any settlement amounts in accordance with the Rulebook. For purposes of this pledge, the Members assigns to NOS any rights it may now have or later acquire to claim these cash deposits from the Settlement Bank. The Member will take all necessary steps to perfect this pledge and security interest.

12.     The Member agrees that NOS has the right to withdraw funds from the Account and debit the Sub-account without notice to the Member for the purposes and to make the payments described in the Rulebook. NOS may apply the Pledged Cash in payment of margin and any settlement amounts owing by the Member in accordance with the Rulebook without notice to the Member and in such order as NOS sees fit. The Member agrees that NOS alone has the right to give instructions to the Settlement Bank with respect to the Account and the Sub-account and further agrees that it will not give or attempt to give the Settlement Bank instructions with respect to the Account or the Sub-account.

13.     Interest shall accrue on the Sub-account to the extent, if any, provided a separate letter from NOS to the Member.

14.     The Member agrees that all confirmations and account statements received by it from NOS or the Settlement Bank shall be conclusive and binding on it unless the Member sends a written objection to NOS within [3] days after receipt.

15.     The Member authorizes NOS to disclose such information concerning NOS, the Member and its relationship and transactions with NOS as any regulator, regulatory authority or similar body may request.

16.     The Member agrees to indemnify NOS and hold NOS harmless from and against any and all liabilities, losses, damages, costs and expenses (including attorneys' fees) incurred by NOS in the performance of its obligations or the enforcement of its rights under this Agreement or in connection therewith or because of any default or breach by the Member of any of its obligations under this Agreement or in connection therewith, except to the extent that the same is incurred through the gross negligence, willful default or fraud of NOS. The Member also agrees to pay promptly to NOS all losses, damages, costs and expenses (including attorneys' fees) incurred by NOS in the enforcement of any provisions of this Agreement. This indemnity is additional to any other rights or remedies available to NOS.

17.     This Agreement may be amended only by a writing signed by both Parties. This Agreement shall be binding on the Parties and their respective successors and permitted assigns. The Member may assign or transfer its rights or obligations under this Agreement

3                                                                                           NY:22768.2

only with the prior written consent of NOS, and any transfer in violation of the foregoing shall be void and of no effect.

18.    This Agreement will be governed by and construed in accordance with the laws of the State of New York. With respect to any suit, action or proceedings relating to this Agreement, Chapter 10 of the Rulebook shall apply. The Parties irrevocably waive their rights to a trial by jury of any dispute or claim relating to this Agreement.

19.    Neither this Agreement, nor the establishment of the Account or the Sub-account, nor the deposit of funds in accordance with this Agreement establishes any fiduciary relationship, relationship of trust or agency or similar relationship between the Parties; and NOS shall have no fiduciary or similar duties to the Member. NOS shall have no responsibility or liability for the acts or omissions of third parties, including, without limitation, the Settlement Bank.

20.    This Agreement contains the entire agreement between the Parties with respect to the matters to which it relates, and supersedes all prior commitments, agreements and understandings, whether written or oral, with respect to those matters.

21.    This Agreement shall terminate only at such time as the Member has terminated its Clearing Membership Agreement and has fully discharged all its obligations to pay margin and settlement amounts in accordance with the Rulebook.

22.    This Agreement may be executed in counterparts, all of which taken together shall constitute one and the same original.

The Parties intending to be legally bound have executed and delivered this Agreement as of the date first above written.

[Company]..Western Bulk Carriers KS..................

By: (Signature) _____

Name: (Block letters) TONNY THORSEN

Title: C.E.O. _____


The Norwegian Futures and Option Clearing House
(NOS Clearing ASA)


By: BJØRN O. ØIULFSTAD _____

Name: _____

Title: CEO _____


The undersigned Notary Public hereby certifies
that Tonny Thorsen has signed this document.
The signature is certified on the basis of the
signature deposited in our register of signatories.
Oslo byfogd og notarius publicus, 10 April 2003.

Notary Public

**Wanja Røsæg**
konsulent