UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------------X
CENTAURI SHIPPING LTD.,                                    :        07 CIV 4761

                            Plaintiff,                    :        **ECF CASE**

    - against -                                            :

WESTERN BULK CARRIERS KS, WESTERN                          :
BULK CARRIERS AS, and WESTERN BULK AS,

                                 :

                        Defendants.
--------------------------------------------------------------------------------X

## REPLY MEMORANDUM OF LAW IN SUPPORT
## OF DEFENDANT WESTERN BULK CARRIERS K/S'S
## MOTION TO VACATE THE MARITIME ATTACHMENT

*Of counsel:*

Patrick F. Lennon, Esq.
LENNON, MURPHY & LENNON, LLC
The GrayBar Building
420 Lexington Avenue, Suite 300
New York, NY 10170
(212) 490-6050
(212) 490-6070 – fax

## TABLE OF CONTENTS

| **Topic** | | **Page** |
|---|---|---|
| POINT I | THE APOLOGY OF PLAINTIFF'S COUNSEL FOR HAVING ADMITTEDLY VIOLATED WBC'S DUE PROCESS RIGHTS IS INADEQUATE TO UPHOLD A WRONGFUL AND INEQUITABLE ATTACHMENT | 1 |
| POINT II | PLAINTIFF'S ATTEMPT TO RECAST THE BASIS FOR WBC'S MOTION TO VACATE THE ATTACHMENT IS A CLASSIC RED-HERRING | 3 |
| POINT III | PLAINTIFF HAS FAILED TO REFUTE THAT WBC COULD BE "FOUND" WITHIN THE DISTRICT AT THE TIME THE VERIFIED COMPLAINT WAS FILED | 5 |
| POINT IV | WBC'S MANHATTAN BASED BANK SUB-ACCOUNT TOGETHER WITH ITS APPOINTED AGENT FOR SERVICE OF PROCESS WITHIN THE DISTRICT MANDATE A FINDING THAT IT IS "PRESENT" WITHIN THE DISTRICT | 11 |
| POINT V | PLAINTIFF HAS OFFERED NO EVIDENCE TO REFUTE THE PREMATURE NATURE OF ITS CLAIM AS ALLEGED IN THE VERIFIED COMPLAINT AT THE TIME IT WAS FILED | 12 |
| POINT VI | PLAINTIFF MISREPRESENTED THE STATUS OF THE ANGOLAN COURT PROCEEDINGS | 17 |
| Conclusion | | 18 |

Defendant Western Bulk Carriers K/S (hereinafter "WBC") by and through its undersigned counsel, Lennon, Murphy & Lennon, LLC, respectfully submits this Reply Memorandum of Law in further support of its Motion to Vacate the June 5, 2007 Ex Parte Order for issuance of process of maritime attachment and garnishment ("PMAG") issued pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure ("Rule B") and for dismissal of the Verified Complaint. For the reasons set forth herein and in WBC's main moving papers, its motion should be granted. This is especially so considering that plaintiff has failed to refute any of WBC's contentions and most disturbingly offers only trite "*mea culpas*" for having grossly violated WBC's due process rights in obtaining an unjustified attachment of WBC's property in excess of $15 million.

### POINT I

### THE APOLOGY OF PLAINTIFF'S COUNSEL FOR HAVING ADMITTEDLY VIOLATED WBC'S DUE PROCESS RIGHTS IS INADEQUATE TO UPHOLD A WRONGFUL AND INEQUITABLE ATTACHMENT

As established by the evidence submitted in WBC's main motion papers, since June 22, 2005 WBC has been authorized to conduct business in the State of New York as a foreign limited partnership. *Gillingham Aukner Decl. ¶ 6, Exhibit "1."* Plaintiff does not contest this fact. Rather, it now admits to having concealed these facts from the Court at the time it applied for the June 5 Ex Parte Order, despite that the information was known to Plaintiff and its counsel.[1] In addition, WBC has also had a registered agent for service of process in New York City since June 22, 2005. *Id.* Again, a fact Plaintiff and its counsel concealed from the Court.

It is universally accepted by the courts and, in fact, a statutory due process requirement under Supplemental Admiralty Rule B that before the Court may issue an ex parte order

---

[1]    This is not the first case in which the due diligence requirement imposed by Rule B and Local Rule B.1 have arisen as issues in cases handled by plaintiff's counsel in this case. *See Yayasan Sabah Dua Shipping SDN BHB v. Scandinavian Liquid Carriers Ltd.*, 335 F. Supp. 2d 441 (S.D.N.Y. 2004) discussed at Point III, *infra.*

authorizing process of maritime attachment and garnishment, the plaintiff's counsel must submit

an affidavit setting forth its efforts to determine the defendant's presence in the district. *See*

*Supplemental Admiralty Rule B.* Rule B states, specifically, as follows:

> The plaintiff or the plaintiff's attorney must sign and file with the complaint an affidavit stating that, to the affiant's knowledge, or on information and belief, the defendant cannot be found within the district. The court must review the complaint and affidavit and, if the conditions of this Rule B appear to exist, enter an order so stating and authorizing process of attachment and garnishment. The clerk may issue supplemental process enforcing the court's order upon application without further court order.

Supp. Adm. R. (B). Local Rule B.1 goes further, imposing the following requirement:

> The affidavit required by Supplemental Rule B(1) to accompany the complaint, and the affidavit required by Supplemental Rule B(2)(c), shall list the efforts made by and on behalf of the plaintiff to find and serve the defendant within the district.

Loc. Adm. R. B.1. A simple review of the Affidavit submitted by plaintiff's counsel in this case

highlights the violation of WBC's due process rights. Not only did plaintiff's counsel fail to

disclose WBC's presence within the District, they materially misrepresented the facts by stating

affirmatively that they had checked with the New York State Department of Corporations and

could find no listing for WBC. *Lennon Decl. Exh. "2."* As plaintiff now admits, this was

entirely untrue because since June 22, 2005, WBC has in fact been qualified to conduct business

in New York with an authorized/appointed agent for service of process. *See Gillingham-Aukner*

*Decl. Exh. "1."*

Contrary to plaintiff's contention that these material misrepresentations were "harmless

error" due to an alleged "clerical error," it deprived WBC of its minimal due process rights

afforded by Rule B and Local Rule B.1 in that the June 5, 2007 Ex Parte Order was issued

without the Court possessing the full facts with regard to WBC's presence within the District.

Plaintiff's conjecture as to how the Court would have acted on its application for the Ex Parte

Order had it been provided with accurate facts does not alter the fact that WBC's due process

2

rights were violated. Likewise, facts from other lawsuits in which WBC is engaged have no

bearing on the violation of its due process rights in this action, and plaintiff's reliance on such

irrelevancies bespeaks its "say and do anything" approach to wrongfully attaching WBC's

property.[2] The bottom line is that when it sought the equitable remedy of attaching WBC's

property in excess of $15 million on an ex parte basis pursuant to Rule B, plaintiff had an

absolute obligation to "get it right" and to fully disclose accurate facts to the Court relating to

WBC's presence in New York. Its inexcusable and abject failure to do so provides the Court

with more than a sufficient basis to vacate the attachment.

## POINT II

### PLAINTIFF'S ATTEMPT TO RECAST THE BASIS FOR WBC'S MOTION TO VACATE THE ATTACHMENT IS A CLASSIC RED-HERRING

Plaintiff does nothing in its opposition papers to refute the fact that WBC has been a very

frequent party to litigation in this Court, including on the date the plaintiff filed its Verified

Complaint, *i.e.* June 5, 2007. *Gillingham-Aukner Decl. ¶ 8, Exhibit "2."* Plaintiff, via affidavit

of its counsel and unsupported assertions in its Memorandum of Law, attempts to contest the fact

that WBC regularly transacts business within the State of New York, especially with marine

vessel and cargo brokers, suppliers and professionals. *Gillingham Aukner Decl. ¶ 9.* However,

as with the entirety of its opposition papers, plaintiff fails to provide any evidence to rebut

WBC's evidence on these points and, in any event, illustrates the fact that plaintiff cannot carry

---

[2]     *Auckland Shipping Co. v. Western Bulk Carriers K/S*, 07 Civ. 4139 (CM)(S.D.N.Y.) is a case in which: (a)
less than $1 million of WBC's property was attached; (b) the plaintiff in that case did not violate WBC's due
process rights as Centauri has done here; (c) WBC is in the process of preparing a motion to vacate that attachment
as well, having reserved its rights to do so and not settled the dispute (yet another misrepresentation by plaintiff).
For obvious reasons this motion to vacate has priority to WBC. Likewise, the case of *Perca Shipping Ltd. v.
Western Bulk Carriers K/S*, 05 Civ. 4755 (GEL) (S.D.N.Y.) is wholly inapposite because it was commenced and
WBC's funds attached more than a month before WBC obtained authority to conduct business in New York by
registering with the New York State Division of Corporations.

3

its burden of showing cause why the wrongful attachment of WBC's property should be maintained. *See Supplemental Admiralty Rule E(4)(f).*

Otherwise ignoring significant portions of WBC's motion papers, plaintiff attempts to recast WBC's argument that it could be "found" within the district for purposes of Rule B by characterizing it as an argument premised *solely* on WBC's license to conduct business in New York. Not so. Plaintiff's puerile attempt to side-step the issue is unavailing because as WBC has made clear in its moving papers, it has at all material times considered itself subject to the personal jurisdiction of United States courts, and in particular the courts of the State of New York, and that its qualification to conduct business and designated agent for service of process ***combined*** with the overall quantum of its substantial business within the District make it plain that it could be "found" within the District at the time plaintiff filed the Verified Complaint. In order to obtain jurisdiction over WBC in New York plaintiff had no need to resort to the draconian remedy of a Rule B attachment because WBC was "present" within the meaning of Rule B. *See Gillingham Aukner Decl. ¶ 11.* Plaintiff's opposition papers fail to address in any meaningful way WBC's significant and ongoing business in the District (*see Gillingham-Aukner* Declaration) and the fact that it could quite easily have obtained jurisdiction over WBC by serving papers on its registered agent. In its desperation to prop up a sorely defective attachment, plaintiff resorts to "red-herring" diversionary tactics, focusing solely on an issue WBC notably did ***not*** argue, *i.e.* whether a license to do business alone is sufficient to create "presence" for Rule B purposes. *See Plaintiff's Memo of Law at 14-19.* Plaintiff's attempt twist the basis of WBC's motion and to divert the Court's attention should be rejected.

In any event, WBC's presence within the Southern District of New York was clear and unmistakable at the time plaintiff sought the $15 million + ex parte attachment of WBC's assets,

4

notwithstanding the above described misrepresentations contained in the affidavit of plaintiff's

counsel. *See Point III, infra.*

## POINT III

### PLAINTIFF HAS FAILED TO REFUTE THAT WBC COULD BE "FOUND" WITHIN THE DISTRICT AT THE TIME THE VERIFIED COMPLAINT WAS FILED

The proper interpretation of the standard applicable to WBC's motion to vacate based on

its presence within the district is an important consideration. The standard was recently and

properly expressed by Judge Kaplan in *Yayasan Sabah Dua Shipping SDN BHB v. Scandinavian*

*Liquid Carriers Ltd.*, 335 F. Supp. 2d 441 (S.D.N.Y. 2004), a case handled by none other than

plaintiff's counsel in this case, although not surprisingly it is not among the authorities plaintiff

cites in its opposition papers. Judge Kaplan recited the proper standard as follows:

> The phrase "not found within the district" is not defined in . . . Rule [B].
> Nevertheless, it denotes two types of absence. First, in order to be subject to
> maritime attachment the defendant must lack sufficient contacts with the forum to
> render it subject to personal jurisdiction. Second, the defendant must not be
> amenable to service of process. A plaintiff must show that the defendant is absent
> in both senses in order to sustain the attachment. Moreover, a plaintiff must make
> a *bona fide* effort to locate the defendant in the district before seeking a Rule B
> attachment, although an "exhaustive search" is not required.

*Yayasan*, 335 F.Supp.2d at 445.

In arguing that WBC's motion to vacate premised on its "presence" within the District

should fail because WBC has conceded it cannot meet the "continuous and systematic"

jurisdictional test that has been applied by some New York courts, plaintiff wholly ignores other

cases that apply a less stringent test and are in keeping with the standard expressed by Judge

Kaplan in *Yayasan*. For example, the court in *Bay Casino, LLC v. M/V Royal Empress*, 20 F.

Supp. 2d 440 (E.D.N.Y. 1998) stated the standard this way: "A defendant corporation is found

within jurisdiction of a federal district court if in the recent past it has conducted *substantial*

5

commercial activities in the district and will probably continue to do so in the future." *Id.* at 451 (*citing United States v. CIA Naviera Continental S.A.*, 178 F. Supp. 561 (S.D.N.Y. 1959); *International Shoe Co. v. Washington*, 326 U.S. 310, 90 L. Ed. 95, 66 S. Ct. 154 (1945). Continuing, the *Bay Casino* court explained, "[s]uch substantial business includes sending a vessel into the district." *Bay Casino*, 20 F.Supp.2d at 451 (*citing Navieros Inter-Americanos, S.A. v. M/V Vasilia Express*, 120 F.3d 304, 315 (1st Cir. 1997). WBC respectfully submits that is has provided the Court with ample evidence of its "substantial" business within the District and that plaintiff has failed to rebut this evidence in any way.

Combined with WBC's substantial contacts with the State of New York, its license to conduct business in New York and its appointment of an agent for service of process clearly create a sufficient "presence" for Rule B purposes to justify vacatur of the attachment. Plaintiff relies almost exclusively on *Erne Shipping Inc. v. HBC Hamburg Bulk Carriers GMBH & Co. KG*, 409 F. Supp. 2d 427 (S.D.N.Y. 2006) as the foundation for its opposition to WBC's motion to vacate on the "presence" issue. It is noteworthy that in *Erne* the defendant had only filed for authorization to conduct business in New York weeks prior to the filing of the verified complaint in that action, a factor though not discussed in the decision, troubled the court as to whether the defendant had made the filing for the sole purpose of avoiding the attachment. Here, WBC had been licensed to conduct business in New York, with an appointed agent for service of process within the District, for almost 2 years prior to the filing of plaintiff's Verified Complaint.

In any case, as with its overall approach to opposing the motion, plaintiff ignores vast portions of the *Erne* decision that are favorable to WBC's motion. For example, in discussing the effect of a defendant's license to conduct business in New York, the *Erne* court stated:

> there is **ample** New York case law stating that such filing is sufficient to subject a
> foreign corporation to general jurisdiction for any cause of action in New York

State. *See, e.g., Augsbury Corp. v. Petrokey Corp.*, 97 A.D.2d 173, 176, 470 N.Y.S.2d 787 (3d Dep't 1983); *Robfogel Mill-Andrews Corp. v. Cupples Co., Mfrs.*, 67 Misc. 2d 623, 624-25, 323 N.Y.S.2d 381 (N.Y. Sup. Ct. 1971); *accord* V. Alexander, *Practice Commentary 301:6* (McKinney's 2002). Cases arising in the federal courts have noted the applicability of this doctrine as well. *See, e.g., Iyalla v. TRT Holdings, Inc.*, 2005 U.S. Dist. LEXIS 14913, 2005 WL 1765707, at *3 (S.D.N.Y. July 25, 2005); *Cannon v. Newmar Corp.*, 210 F. Supp. 2d 461, 463 n.2 (S.D.N.Y. 2002); *Ugalde v. Dyncorp, Inc.*, 2000 U.S. Dist. LEXIS 1745, 2000 WL 217502, at *2 (S.D.N.Y. Feb. 23, 2000); *Speed v. Pelican Resort N.V.*, 1992 U.S. Dist. LEXIS 8278, 1992 WL 147646, at *1 (S.D.N.Y. June 16, 1992) (citing cases). *Two federal courts, however, have stated that **in the absence of any actual business conducted in the state**, a filing for authorization to do business is not by itself sufficient to confer personal jurisdiction. See Wright v. Maersk Line, Ltd.*, 2000 U.S. Dist. LEXIS 7947, 2000 WL 744370, at *1 (S.D.N.Y. June 9, 2000); *Bellepointe, Inc. v. Kohl's Dep't Stores, Inc.*, 975 F. Supp. 562, 564 (S.D.N.Y. 1997).

*Erne*, 409 F. Supp. 2d at 436.

The *Erne* court reasoned further that federal law and New York state law on the point were in harmony. However, with all due respect to Magistrate Judge Gorenstein, his decision in this regard is wrong because under New York state attachment law, plaintiff would not have been entitled to an attachment order against WBC due to WBC's qualification to conduct business in New York. CPLR 6201 provides in relevant part as follows:

§ 6201. Grounds for attachment

An order of attachment may be granted in any action, except a matrimonial action, where the plaintiff has demanded and would be entitled, in whole or in part, or in the alternative, to a money judgment against one or more defendants, when:

1. the defendant is a nondomiciliary residing without the state, or is a foreign corporation ***not qualified to do business in the state*** . . . .

NY CPLR 6201 (emphasis added). This point is emphasized in the Committee Notes to CPLR 6201 in discussing the 1976 amendments to the rule, which states:

The proposed amendment of subparagraph 1 of this section would subject foreign corporations to attachment only where such corporations are not qualified to do business in the state. ***There is never a need for a jurisdictional attachment when***

> _a foreign corporation has obtained a certificate of authority to do business in_
> _New York_. . . . If attachment is viewed as a method of acquiring jurisdiction, as
> contrasted to a method of assuring a plaintiff that he will be able to collect his
> judgment, attachment of the property of foreign corporations otherwise subject to
> the court's jurisdiction is unnecessary.

CPLR 6201, Committee Notes (emphasis added).

_Erne_ is distinguishable from this case in any event because here, it is irrefutable that in

addition to its license to conduct business in New York WBC has conducted actual business

within the District, and was doing so at the time the Verified Complaint was filed. The _Maersk_

case is particularly noteworthy in this regard. In a short opinion holding that the defendant,

_Maersk_ was subject to jurisdiction in the Southern District of New York, the court reasoned:

"Maersk's authorization to do business, taken together with the apparent presence of an office in

New York and the uncontested allegation that Maersk regularly sails into the Port of New York,

establishes a prima facie showing that this Court has personal jurisdiction over Maersk." _Wright_

_v. Maersk Line, Ltd._, 2000 U.S. Dist. LEXIS 7947 at *4. The facts here are analogous.

Likewise, and notwithstanding plaintiff's over-reliance on the _Erne_ decision, outside the

Rule B context, federal courts have held that an authorization to conduct business confers

general jurisdiction over a defendant. For example, in _Chong v. Healthtronics, Inc._, 2007 U.S.

Dist. LEXIS 45956 (E.D.N.Y. 2007) the court stated:

> Initially, since [defendant] is authorized by the New York Secretary of State to do
> business in New York, and, pursuant to New York Business Corporation Law §
> 304, has consented to jurisdiction in New York, general personal jurisdiction
> exists over [defendant] under N.Y. C.P.L.R. § 301. See e.g., _Obabueki v. IBM_,
> No. 99 Civ. 11262, 2001 WL 921172, at *5, 2001 U.S. Dist. LEXIS 11810
> (S.D.N.Y. Aug. 14, 2001) (finding that the defendant who was authorized by the
> New York Secretary of State to do business in New York met the "doing
> business" criteria of section 301 for the purposes of personal jurisdiction);
> _Amalgamet, Inc. v. Ledoux & Co._, 645 F.Supp. 248, 249 (S.D.N.Y. 1986)
> (holding that the general rule is that a foreign corporation which files a certificate
> of authority to do business in New York has consented to personal jurisdiction in
> the state and that by filing its application for authority to do business in New

York, defendant has also designated the Secretary of State as agent for service of process); *Augsbury Corp. v. Petrokey Corp.*, 97 A.D.2d 173, 175, 470 N.Y.S.2d 787 (3d Dept. 1983) (holding that the defendant's authorization to do business in New York and concomitant designation of the Secretary of State as its agent for service of process pursuant to section 304(b) of the New York Business Corporation Law is consent to in personam jurisdiction).

*Chong*, 2007 U.S. Dist. LEXIS 45956 at *17-*18. In a footnote, the *Chong* court discussed both

the *Maersk* and *Erne* decisions, and put them in context with the foregoing "general rule," as

follows:

> Although two district courts have held that a filing for authorization to do business alone is insufficient to confer personal jurisdiction, see *Wright v. Maersk Line, Ltd.*, No. 99 Civ. 11282, 2001 U.S. Dist. LEXIS 60, 2000 WL 744370, at *1 (S.D.N.Y. Jun. 9, 2000) and *Bellepoint, Inc. v. Kohl's Department Stores, Inc.*, 975 F.Supp. 562, 564 (S.D.N.Y. 1997), those cases rely on mere *dictum* from a Second Circuit case, *Beja v. Jahangiri*, 453 F.2d 959, 961-962 (2d Cir. 1972), which vaguely stated that "the mere authorization to do business . . . may not be conclusive on the issue of [personal] jurisdiction . . . [but was] certainly very strong evidence that the corporation is subject to in personam jurisdiction." (emphasis added). *Wright* and *Bellepoint* are not persuasive in light of the majority of federal district courts and New York courts which hold that a filing for authorization to do business in New York is sufficient to subject a foreign corporation to general personal jurisdiction in New York. *See, e.g. Erne Shipping Inc. v. HBC Hamburg Bulk Carriers GmbH & Co. KG*, 409 F.Supp.2d 427, 436 (S.D.N.Y. 2006) (*citing* New York and federal cases), rejected on other grounds by *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434 (2d Cir. 2006).

*Chong*, 2007 U.S. Dist. LEXIS 45956 at *18-*19.

Finally, it is noteworthy that in an unreported decision, Judge Lynch found Magistrate

Judge Gorenstein's decision in *Erne* unpersuasive and in conflict with other authorities. *See*

*Express Sea Transport Corp. v. Novel Commodities S.A.*, No. 06 Civ. 2404 (GEL) (S.D.N.Y.). A

copy of the transcript including Judge Lynch's oral decision from the bench is attached to this

Reply Memorandum as *Exhibit "1."* In *Express Sea*, Judge Lynch held that because the

defendant, Novel, had registered with the New York Secretary of State for authority to conduct

business in New York and appointed an agent for service of process within the district it was

"present" for Rule B purposes. *See id.* Thus, and contrary to plaintiff's assertion that "there are

no cases[3]" holding that a license to do business in New York <u>alone</u> is sufficient to establish

presence within the district for Rule B purposes, *Express Sea* is directly on point and provides

such authority. In particular, in vacating the Rule B attachment in that case, Judge Lynch found:

> defendant is a registered foreign corporation within the State of New York and
> under New York law a corporation that registers to do business within the state
> consents to general jurisdiction in the courts of the state. See *Iyalla versus TRT
> Holdings Incorporated*, 2005 Westlaw 1765707 at page star 3, (S.D.N.Y. July 25,
> 2005). Accordingly, defendant is subject to suit in the courts of this district and,
> therefore, defendant may be found within the district for purposes of jurisdiction.

*See Exhibit "1" annexed hereto.*

Thus, *Erne* expresses a minority view out of step with the general rule under New York

and federal law on the effect of a license to conduct business within the district. It is not,

therefore, the broad sweeping death-knell to WBC's motion to vacate that plaintiff urges it to be.

In fact, as *Chong* makes clear, the "general rule" is that the filing for authorization to do business

in New York alone does, in fact and law, confer general jurisdiction over the foreign party.

Moreover, plaintiff's argument that a decision vacating the attachment in this case "would set the

Rule B world on its head" is nonsense. As Judge Lynch pointed out in *Express Sea*, "Essentially,

Rule B gives potential defendants a choice; either they subject themselves to the courts of the

district or they open up the possibility that their property in the district will be attached." *See

Exhibit "1" annexed hereto.* WBC made the choice to subject itself to the courts of the state of

New York several years before plaintiff sought to attach WBC's property within the district.

Here, although WBC obviously could have made such an argument, *i.e.* that its mere

filing with New York Secretary of State alone created sufficient "presence" for Rule B purposes,

WBC has other substantial jurisdictional contacts within the District to make clear that it is

---

[3]    See plaintiff's Memorandum of Law at 14.

"present" within the District for Rule B purposes. Plaintiff has not refuted WBC's "registration plus" evidence and, accordingly, it has failed to carry its burden to show cause why the attachment should not be vacated on the basis that WBC was present within the Southern District of New York at the time plaintiff filed the Verified Complaint, within the meaning of Rule B. Accordingly, because the conditions for issuance of a Rule B ex parte order against WBC did not exist at the time the plaintiff filed the Verified Complaint on June 5, 2007, the Ex Parte Order for issuance of a PMAG against WBC must be vacated. *See Aqua Stoli,* 460 F.3d at 445.[4]

## POINT IV

### WBC'S MANHATTAN BASED BANK SUB-ACCOUNT TOGETHER WITH ITS APPOINTED AGENT FOR SERVICE OF PROCESS WITHIN THE DISTRICT MANDATE A FINDING THAT IT IS "PRESENT" WITHIN THE DISTRICT

One additional piece of evidence that WBC submits is the fact that it has had a sub-bank account in the Southern District of New York since 2004. This account was active throughout all periods relevant to this dispute, including at the time plaintiff files its Verified Complaint on June 5, 2007. *See Declaration of Sara Gillingham-Aukner dated September 4, 2007 ¶¶ 3-6.* It has been held by now Chief Judge Wood that the maintenance of a bank account and appointment of an agent for service of process within the district are sufficient to create "presence" for Rule B purposes. *See Dragonfly Shipping Co. v. Canadian Forest Nav. Co.,* 1989 U.S. Dist. LEXIS 13748, No. 89 Civ. 6091, 1989 WL 146273 (S.D.N.Y. 1989) ("defendant maintained an account in New York for at least the past seven years. When defendant charters a vessel, it uses that account to pay the vessel owner; ten percent of these vessels (approximately 3

---

[4]       Plaintiff's dissertation on the historical dual purpose of Rule B, *i.e.* to obtain jurisdiction and provide security fails to change the analysis at all because if the plaintiff cannot prove that the defendant is "not present within the district," it is not entitled to obtain the ex parte attachment order solely for the purpose of obtaining security, regardless of how great its need for security may be.  See, e.g. *Seawind Compania, S. A. v. Crescent Line, Inc.,* 320 F.2d 580, 582 (2d Cir. 1963) where the Court plainly stated that Rule B "cannot be used purely for the purpose of obtaining security: 'The two purposes may not be separated, however, for ***security cannot be obtained except as an adjunct to obtaining jurisdiction***.'" *Id.* (emphasis added). This point was made in WBC's main motion papers but totally ignored in plaintiff's opposition.

11

to 5 each year) are chartered through New York brokers. In addition, defendant uses the account

to receive payments of charter hire from subcharterers, and freight from shippers who carry

cargo on defendant's ships. . . . . These contacts are sufficient to subject defendant to personal

jurisdiction in New York. *See, Ivanhoe Trading Co. v. M/S Bornholm,* 160 F.Supp. 900

(S.D.N.Y. 1957.)"). As in *Dragonfly*, WBC's Manhattan based bank sub-account together with

its appointment of an agent for service of process support a finding that it is sufficiently

"present" within the District, which in turn requires that the attachment be vacated for this reason

as well.

## POINT V

### PLAINTIFF HAS OFFERED NO EVIDENCE
### TO REFUTE THE PREMATURE NATURE OF ITS CLAIM
### AS ALLEGED IN THE VERIFIED COMPLAINT AT THE TIME IT WAS FILED

Quite clearly and unmistakably, plaintiff claimed in its Verified Complaint as follows:

> The matter is ***presently pending before the Angolan court to determine the***
> ***amount of damages*** that will be awarded to plaintiff for the wrongful arrest of the
> Vessel."

*Lennon Decl., Exhibit "1," ¶ 14.* That allegation has not changed and remains the sole basis for

plaintiff's attachment of WBC's property in this action. What has changed is that since WBC

first attempted to file this motion, highlighting the fact that plaintiff did not have a money

judgment and had not commenced any action that could result in a money judgment, is that

plaintiff has now allegedly run back to Angola in a hasty attempt to commence such an action. It

is clear, however, that plaintiff only did so as a knee-jerk reaction to this motion, and not due to

its diligent pursuit of its "claim." Thus, it is undisputed that at the time plaintiff filed this action

and obtained the ex parte order, as well as at the time it attached in excess of $15 million of

WBC's property, there was no pending action anywhere in the world that would support the

attachment. It thus remains the case that plaintiff' sole claim before this Court, in which it has attached WBC's property, is for recognition and enforcement of the existing judgments issued by the Angolan courts, none of which awards plaintiff *any* money damages against WBC.

It is not even clear from plaintiff's papers whether, in fact, it commenced a proper proceeding in Angola on August 16 as it claims. Neither WBC nor its counsel has received any notice of these proceedings. Plaintiff also claims, without any support, that "all that remains is for Centauri to obtain an assessment of damages" in the Angolan courts. *See Plaintiff's Memo of Law at 19.* However, plaintiff fails to offer an affidavit or any other competent evidence to support this allegation. All that plaintiff has provided to this court is the "say so" of its New York counsel in this action (the reliability of which is questionable given the several misrepresentations already made as to WBC's presence in New York and the state of the Angolan proceedings as alleged in the Verified Complaint). In any event, none of the plaintiff's alleged actions in Angola on August 16 (in clear response to the August 10 original filing of this motion) alters the fact that plaintiff premised the attachment of WBC's property in excess of $15 million on a purely theoretical and premature "claim" against WBC.

It is noteworthy that none of the cases plaintiff cites as supposed "authority" for its contention that its claim is not premature involve situations even remotely similar to this case, where the Rule B ex parte order is obtained as an adjunct to a claim for "enforcement of a foreign judgment" that does not award the plaintiff money damages. All of the cases plaintiff cites at pages 20-21 of its Memorandum of Law involve either arbitrable claims or claims where foreign litigation is "on-going" and a prima facie claim for money damages has been affirmatively asserted. With regard to arbitrable claims, they are even further distinguishable from the plaintiff's claim here because the Federal Arbitration Act provides express authority for

13

commencing such a claim by "libel and seizure of the vessel or other property." 9 U.S.C. § 8

provides as follows:

> If the basis of jurisdiction be a cause of action otherwise justiciable in admiralty,
> then, notwithstanding anything herein to the contrary, the party claiming to be
> aggrieved may begin his proceeding hereunder by libel and seizure of the vessel
> or other property of the other party according to the usual course of admiralty
> proceedings, and the court shall then have jurisdiction to direct the parties to
> proceed with the arbitration and shall retain jurisdiction to enter its decree upon
> the award.

9 U.S.C. § 8.

Here, quite clearly plaintiff's claims are not arbitrable. Therefore, all of the cases

involving arbitrable claims provide no support for plaintiff's ripeness argument. Moreover, at

the time it took the improvident decision to seek attachment of WBC's property in excess of $15

million, plaintiff's "claim" for enforcement of the Angolan judgment was purely theoretical and

therefore unripe. None of the contentions in plaintiff's opposition papers alters this inescapable

fact.

> Plaintiff further provides no response to the fact that the *Aqua Stoli* Court made clear that
>
> a district court must vacate an attachment if the plaintiff fails to sustain his burden
> of showing that he has satisfied the requirements of Rules B and E. ***We also
> believe vacatur is appropriate in other limited circumstances.***

*Aqua Stoli*, 460 F.3d at 445 (emphasis added). As set out in WBC's main Memorandum of Law,

this Court has the discretion to vacate the attachment of WBC's property on equitable grounds.

Plaintiff's lone response to this point is an unsupported contention that WBC should be denied

equitable relief because it allegedly has "unclean hands" due to the findings made by the

Supreme Court of Angola. Plaintiff confuses the issue – the question is not whether WBC is

entitled to equitable relief, but rather, whether the court should exercise its discretion to vacate

this most inequitable attachment. It bears noting on this issue that prior to the Angolan Supreme

14

Court's judgment, WBC in fact obtained two decisions by lower Angolan courts on the basis that plaintiff's vessel, the M/V Centauri, was owned by the same ownership group as the defendant to WBC's underlying claim, Navitrans. *See Ridings Decl. ¶¶ 12-14; 17-19.*

Plaintiff effectively concedes that because it does not possess a money judgment, it has no claim to assert under the New York Uniform Foreign Country Money Judgment Recognition Act ("NYUFCMJRA"), CPLR section 5301. Plaintiff mistakenly contends, however, that the existing Angolan Supreme Court judgment is enforceable under an alleged "catch all" provision in the NYUFCMJRA. Plaintiff is wrong because only money judgments are enforceable under NYUFCMJRA. Plaintiff is correct, however, that it may seek to enforce non-money judgments under the NYUFCMJRA. Regardless, a crucial flaw in plaintiff's analysis is its failure to address the fact that a $15 million attachment cannot be justified by a claim to enforce a foreign non-money judgment since it cannot, by its very nature, result in the imposition of a money judgment against the defendant. Thus, the attachment at issue in this case remains fatally flawed because plaintiff's underlying claim is for enforcement of a money judgment which does not exist, which leads to the inescapable conclusion that plaintiff's claim is theoretical and premature. Moreover, at the time it wrongfully attached WBC's funds in excess of $15 million, plaintiff had not even commenced a proceeding in the Angolan courts that would potentially result in such a money judgment.[5]

Tellingly, in its opposition Memorandum of Law, plaintiff fails entirely to address the controlling case cited by WBC on ripeness, *i.e. Patricia Hayes & Assocs. v. Cammell Laird*

---

[5]     It is telling that for more than two months after it attached in excess of $15 million of WBC's property, plaintiff took absolutely no action to pursue its alleged substantive claims against WBC and it was not until after WBC first filed this motion on August 10 that plaintiff took any action whatsoever by purportedly commencing an action in Angola for money damages against WBC on August 16, 2007. WBC does not concede the plaintiff has properly commenced any such action because neither WBC nor its Angolan counsel has received any notification of the commencement of the action.

*Holdings U.K.,* 56 F.3d 76, 82 (2d Cir. 2003), where the Second Circuit held "[t]he

determination of whether . . . claims [are] ripe turns on the question of whether there were any

amounts due . . . at the time" the action is commenced.  Rather, plaintiff contrasts the ripeness of

indemnity claims with its own unripe claim for enforcement of a non-existent money judgment.

However, the distinction plaintiff draws does not provide an answer to the question of whether

plaintiff's claim for enforcement of a non-existent money judgment is unripe and premature.

Additionally, Plaintiff does not dispute the fact that in the context of a motion to vacate a Rule B

attachment, it is the plaintiff's burden to prove its claim is ripe. *See  J.K. Int'l, Pty., Ltd. v.*

*Agriko S.A.S.,* 2007 U.S. Dist. LEXIS 10074, * 11 (S.D.N.Y. 2007) (discussing unripe indemnity

claim); see also *Eitzen Sealift A/S v. Cementos Andinos Dominicanos, SA*, 2005 U.S. Dist.

LEXIS 19876 (S.D.N.Y. 2005) (holding that attachment was premature because London

arbitration had not been initiated).  Yet, plaintiff fails to provide any persuasive argument, let

alone any case authority, to show that at the time it attached WBC's property it possessed a ripe

claim.

   The *Patricia Hayes & Assocs. v. Cammell Laird Holdings U.K., supra,* is dispositive of

the ripeness issue.  In that case, the Second Circuit affirmed the district court's dismissal a

sureties' claims because they could not prove they possessed an accrued claim.  In particular, the

Court held:

> Thus, Sureties' claims were unripe not because Sureties failed to provide
> sufficient evidence to support their allegations, but rather because their
> allegations, taken as true, were insufficient to support their claim. Because
> Sureties had not paid any claims under the FMC bond by the time their motion to
> intervene was denied, there was no amount due under the contract at that time.
> Without a debt due, Sureties could not have a maritime lien to enforce against
> BRBII. Thus, we find no error in the district court's conclusion that Sureties'
> claims were unripe.

16

56 F.3d. at 82-83. The facts and principles at issue in this case are identical. Plaintiff did not possess an accrued claim for enforcement of a money judgment against WBC at the time it filed its Verified Complaint and attached in excess of $15 million of WBC's funds, and it does not possess such a claim now.

**POINT VI**

**PLAINTIFF MISREPRESENTED
THE STATUS OF THE ANGOLAN COURT PROCEEDINGS**

The misrepresentations made by plaintiff's counsel in obtaining the June 5, 2007 Ex Parte Order are discussed at Point I, *supra*, and in WBC's main Memorandum of Law. As also discussed in WBC's main Memorandum of Law, in its Verified Complaint plaintiff alleged that the Angolan court proceedings were **ongoing**, implying that it the Angolan courts would render a money judgment against WBC in due course. However, as with the misrepresentations made in its counsel's Rule B affidavit, plaintiff now admits that this was untrue. Plaintiff blithely contends, however, that this is a "moot" point because it alleges to have now commenced a proceeding in Angola on August 16. WBC begs to differ – the violation of a party's due process rights[6] and material misrepresentations made to a court, especially in the context of an ex parte application to attach assets, are not ameliorated with simple "mea culpa" excuses, including "unfamiliarity" with the prior history of the dispute and an after-the-fact rush to correct such fundamental violations.

As set forth above, plaintiff has made at least two material misrepresentations in commencing this action, one of which – relating to the alleged "ongoing" nature of the Angolan

---

[6]    Again, tellingly, plaintiff relegates to footnote treatment the Angolan Supreme Court's denial of fundamental due process rights to WBC. Quite clearly, even a cursory reading of the Angolan Supreme Court judgment on which plaintiff premises its claims reveals that the Angolan Supreme Court denied WBC the opportunity to submit any evidence whatsoever and rendered its dubious judgment based solely on plaintiff's submissions. Thus, with regard the August 16 action that plaintiff purportedly commenced against WBC in Angola, WBC has no reason to believe it will receive any greater due process protection from the Angolan courts.

17

legal proceedings – now admitted by plaintiff, illustrates that plaintiff's claim herein is premature and unripe. Moreover, plaintiff's misrepresentations in obtaining the attachment were a direct violation of WBC's minimal due process rights in this context. Thus, the attachment of WBC's property in this action is wholly inequitable and should be vacated in the exercise of the Court's discretion. *See Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434 (2d Cir. 2006).

## **CONCLUSION**

WHEREFORE, for all of the foregoing reasons and those set forth in its main Memorandum of Law and supporting papers, Western Bulk Carriers K/S respectfully requests that this Court grant its motion to vacate the attachment, dismiss the Verified Complaint and order Plaintiff to return the bond posted by Western Bulk Carriers K/S.

Dated: September 4, 2007
New York, NY

The Defendant,
WESTERN BULK CARRIERS K/S

By: _____
Patrick F. Lennon (PL 2162)
LENNON, MURPHY & LENNON, LLC
The GrayBar Building
420 Lexington Ave., Suite 300
New York, NY 10170
(212) 490-6050 – phone
(212) 490-6070 – fax
pfl@lenmur.com

## **AFFIRMATION OF SERVICE**

I hereby certify that on September 4, 2007, a copy of the foregoing Reply Memorandum of Law was filed on the Court's electronic case filing system and thus made available to all counsel of record and was otherwise was served by fax, e-mail or regular mail upon the following:

Kirk M. Lyons, Esq.
Lyons & Flood, LLP
65 W. 36th Street, 7th Floor
New York, NY 10018

_____
Patrick F. Lennon

19