UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
CENTAURI SHIPPING LTD.,                                  :

               Plaintiff,                               :

                                                        07 Civ. 4761 (KMK)

     - against -                                          :

WESTERN BULK CARRIERS KS, WESTERN        :        ECF CASE
BULK CARRIERS AS, and WESTERN BULK AS,
                                           :

               Defendants.
-----------------------------------------------------------------X

<br>

### WESTERN BULK CARRIERS KS'S
### MEMORANDUM OF LAW
### IN OPPOSITION TO PLAINTIFF'S MOTION TO STAY EXECUTION
### OF THE COURT'S SEPTEMBER 12, 2007 ORDER

<br>

*Of counsel:*

Patrick F. Lennon, Esq.
LENNON, MURPHY & LENNON, LLC
The Gray Bar Building
420 Lexington Avenue, Suite 300
New York, New York 10170
(212) 490-6050
(212) 490-6070 fax
pfl@lenmur.com

# TABLE OF CONTENTS

| **Topic** | **Page** |
|---|---|
| Preliminary Statement | 1 |
| Background | 1 |
| Argument | 2 |

Point I
The Plaintiff's Motion to Stay Should Be Denied ............ 2

There is no irreparable injury absent a stay ............ 4

A stay will cause substantial injury to WBC KS ............ 9

Plaintiff has not demonstrated a substantial
possibility of success on appeal ............ 10

There is no public interest warranting a stay ............ 12

Point II
A Further Stay While Plaintiff Seeks The
The Same Relief From the Court of Appeals
Is Unwarranted ............ 12
    10

Point III
In The Event The Court Grants The Plaintiff's
Motion, The Supersedeas Bond Should Be In The
Same Amount As The Surety Bond ............ 13

Conclusion ............ 15

### PRELIMINARY STATEMENT

Defendant, Western Bulk Carriers KS ("WBC KS") submits this Memorandum of Law in opposition Motion for a Stay of Execution of the Court's September 12, 2007 Order vacating maritime attachment issued pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure and directing the return of the surety bond posted by WBC KS as substitute security for Plaintiff's claims. As is set forth herein, Plaintiff is not entitled to a stay because it cannot establish any of the required factors necessary for the Court to exercise its discretion to order a stay. Moreover, Plaintiff relies on outdated case law and fails to cite controlling U.S. Supreme Court precedent that effectively renders its plea for a stay, as well as its "grave concerns" moot.

### BACKGROUND

On June 5, 2007, Plaintiff instituted the present action to obtain security in respect of claims for an alleged wrongful arrest of its vessel in Angola. Upon obtaining an Ex Parte Order authorizing the attachment of WBC KS's property (based on misrepresentations of fact presented to Judge Karas), Plaintiff proceeded to begin attaching millions of dollars belonging to WBC KS which were in the hands of various garnishee intermediary banks within the District. Upon learning on June 7 2007 that Plaintiff had commenced this action WBC KS was immediately able to use working capital as cash collateral and so arrange for and offer to tender to Plaintiff a surety bond in the sum of USD $15,350,796.00 within 3 business days (i.e. by June 11, 2007). *See Accompanying Declaration of Kjetil Vangsnes at ¶ 16.* Despite Plaintiff's refusal to accept the bond, the Court ordered the bond be accepted and it was, in fact, posted on

June 15, 2007. *Id.* Thus, within 10 days of Plaintiff's commencement of this action, WBC KS undertook voluntarily to fully secure Plaintiff's claim.

WBC KS moved to vacate the attachment pursuant to Rule E of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure (hereinafter the "Supplemental Rules"). On September 5, 2007, this Court heard oral argument on the Motion to Vacate the Maritime Attachment. On September 7, 2007, this Court issued a carefully reasoned oral decision granting the Motion to Vacate based upon the fact that WBC KS was "present" in the District at the time Plaintiff filed its Verified Complaint.

The Plaintiff has now made a motion for this Court to stay this action during the time in which the Plaintiff appeals. For the reasons stated below, the Defendant WBC KS opposes the Plaintiff's motion which, for the reasons that follow, must be denied.

## ARGUMENT

### POINT I

### THE PLAINTIFF'S MOTION FOR A STAY SHOULD BE DENIED

In its Motion, dated September 17, 2007, the Plaintiff "seeks a stay of the execution of the Court's September 12, 2007 Order basically on the sole ground that it is "gravely concerned that the surety bond currently held as security for its wrongful arrest claim against defendant WESTERN BULK CARRIERS KS ("WBC") will be lost during the pendency of the appeal . . . unless a stay is issued by this Court." *See Plaintiff's Memo of Law dated September 17, 2007 at 1.* However, throughout its entire argument the Plaintiff has not cited to any authority to justify its request for a stay under the circumstances.

2

Courts considering motions for a stay pending appeal almost universally apply the following factors:

> (1) whether the movant will suffer irreparable injury absent a stay;
> (2) whether a party will suffer substantial injury if a stay is issued;
> (3) whether the movant has demonstrated a substantial possibility, although less than a likelihood, of success on appeal; and
> (4) the public interest that may be affected.

*Hirschfeld v. Board of Elections,* 984 F.2d 35, 39 (2d Cir. 1992) (citations and internal quotation marks omitted).

The party seeking a stay pending appeal bears the burden of proving an entitlement to the stay. *United States v. Private Sanitation Industry Ass'n of Nassau/Suffolk, Inc.,* 44 F.3d 1082, 1084 (2d Cir. 1995) ("A party seeking a stay of a lower court's order bears a difficult burden."); *see also, Clarett v. National Football League,* 306 F. Supp. 2d 411, 412 (S.D.N.Y. 2004) (denying application for stay because movant failed to meet burden to prove entitlement to stay); *Neely v. Pension Trust Fund of the Pension, Hospitalization and Benefit Plan of the Electrical Industry,* 2003 U.S. Dist. LEXIS 12497, No. 00-CV-2013 (SJ), 2003 WL 21448872, at *1 (E.D.N.Y. June 4, 2003) (denying application for stay because movants did not satisfy "high burden" placed upon them). Furthermore, a "[Movant's] failure to satisfy one prong of the standard for granting a stay pending appeal dooms the motion." *Covanta Onondaga Ltd. P'ship v. Onondaga County Resource Recovery Agency,* 2002 U.S. Dist. LEXIS 20298 (N.D.N.Y. Oct. 24, 2002) (*quoting Green Point Bank v. Treston,* 188 B.R. 9, 12 (S.D.N.Y. 1995)); *see also, Hirschfeld,* 984 F.2d at 39 (*quoting Dubose v. Pierce,* 761 F.2d 913, 920 (2d Cir. 1985)).

In the case at hand, the Plaintiff cannot satisfy any of the prongs, let alone all of them. Moreover, and contrary to its hollow assertions, equity does not favor granting the relief Plaintiff requests in this case if not least because of its violations of WBC KS's rights in obtaining the Ex Parte Order, which were thoroughly discussed at both the September 5 and September 7 hearings on WBC KS's motion to vacate the attachment. As such, and as established below, the Plaintiff has not and cannot satisfy the high burden required to justify the Court's exercise of discretion to grant a stay.

### *(1)    There is no irreparable injury absent a stay*

The Plaintiff's argument that absent a stay the "appeal of the Vacatur Order would be an 'empty rite' should Centauri be required to return the surety bond before the appeal is decided" completely ignores the current state of the law in this arena. *See Plaintiff's Memo of Law at 11.* As a matter of fact and law, Plaintiff will not be irreparably injured by returning the surety bond to WBC KS.

As an initial point, it is again noteworthy that at the time Plaintiff sought the Ex Parte Order in this action, it had not even initiated proceedings in Angola in order to obtain a judgment that it could then seek to enforce in this proceeding. To the extent that Plaintiff concedes that a Rule B attachment is an ancillary remedy, which is axiomatic, there was nothing for it to secure at the time it filed its Verified Complaint. This is the reason why WBC KS raised prematurity and ripeness issues as an alternative basis for the Court to vacate the Ex Parte Order. That the Court did not decide these arguments in its September 7, 2007 oral decision makes them no less pertinent to underscoring why Plaintiff will not suffer irreparable injury should it be forced to return the bond to WBC KS. In other words, Plaintiff's cry of irreparable injury is remote and speculative, at best.

*Equal Employment Opportunity Commission v. Local 638*, 1995 U.S. Dist. LEXIS 7756,

No. 71 CV 2877, 1995 WL 355589, at \*2 (S.D.N.Y. June 7, 1995) ("[t]o establish

irreparable harm, [parties] must demonstrate an injury that is neither remote nor

speculative, but actual and imminent.")(internal citations omitted) (*quoting Consolidated*

*Brands, Inc. v. Mondi*, 638 F. Supp. 152, 155 (E.D.N.Y. 1986)).

Apart from that, and perhaps constituting the most glaring omission in Plaintiff's

motion papers, is the fact that continuous control of the *res* is no longer required to

maintain appellate jurisdiction in a case where a maritime attachment is vacated. *See,*

*Republic Nat'l Bank of Miami v. United States*, 506 U.S. 80, 88 (1993)("We hold that, in

an *in rem* forfeiture action, the Court of Appeals is not divested of jurisdiction by the

prevailing party's transfer of the *res* from the district."); *accord, Stevedoring Services of*

*America v. Ancora Transport, N.V.*, 59 F.3d 879 (9th Cir. 1995) a rule B attachment case

that followed *Republic Nat'l Bank of Miami* and held that appellate jurisdiction is not lost

when a motion to vacate an attachment is granted.

Furthermore, the Plaintiff's reliance on the "useless judgment" rule, as enunciated

by the Supreme Court in 1950 in *Swift & Co. Packers v . Compania Columbiana Del*

*Caribe, S.A.,* 339 U.S. 684, 698 (1950), is equally misplaced. For one thing, any concern

of a "useless judgment" is highly speculative in light of the fact that the plaintiff has not

even obtained an Angolan money judgment against WBC KS, much less converted such

Angolan judgment into a U.S. judgment that would be capable of enforcement in this

proceeding. For another, WBC KS is a well-respected international company and, as

noted by Judge Rakoff under similar circumstances, "Plaintiff's ability to collect a

prospective judgment is remarkably secure ... because defendant's need to use the

world's financial markets regularly ensures that attachment of EFTs will be as available post-judgment as it has been pre-judgment." *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 384 F. Supp. 2d 726,730-31 (S.D.N.Y. 2005) *overruled on other grounds by* 460 F.3d 434 (2d Cir. N.Y. 2006). Therefore, "while plaintiff clearly would be less secure in the absence of the attachment, it would suffer no prejudice if the attachment were vacated. Indeed, its position would be no worse than that of any other plaintiff in a civil action." *Signet Shipping Co. v. Southern Hardwoods, Inc.*, 108 F. Supp. 2d 649, 650 (E.D. La. 2000), *cited with approval in Allied Mar., Inc. v. Rice Corp.*, 2004 U.S. Dist. LEXIS 20353, \*9, footnote 17 (S.D.N.Y. 2004), *reconsideration denied by, stay denied by, Allied Maritime, supra.*

Perhaps in implicit recognition that the law does not favor its motion, Plaintiff proceeds to smear WBC KS by alleging it is a financially unstable enterprise that, if Plaintiff's "the sky is falling" argumentation is to be believed, will not be around to satisfy a theoretical future judgment in Plaintiff's favor. *See Plaintiff's Memo of Law at 11-15.* To support this fiction, Plaintiff submitted on September 17, 2007 and Affirmation of Kirk Lyons, its counsel in this matter, with accompanying exhibits, largely relating to the financial reports of companies within the Western Bulk group.

Upon initial review of Mr. Lyons Affirmation, it was readily apparent to WBC KS that Mr. Lyons had, mistakenly or otherwise, made misstatements in his Affirmation with regard to the financial performance of WBC KS in prior years. This point was raised during the September 18, 2007 teleconference with the Court. Thereafter, recognizing the inaccuracy of the representations in the September 17, 2008 Lyons Affirmation, Plaintiff then submitted, without first obtaining the Court's permission or

6

consent of WBC KS, supplemental Affirmations of Mr. Lyons and Plaintiff's Norwegian

counsel - Lars Museaus - to correct the misrepresentations. This would perhaps be a

pardonable offense but for the fact that Plaintiff's Rule B Affidavit already contained

material misrepresentations as to Western Bulk KS's presence in New York which

Plaintiff has never sought to correct. The information leading to the "corrections" in Mr.

Lyons September 21, 2007 Affirmation, which is based upon the facts detailed in Mr.

Museaus' Declaration of the same date, were quite apparently available to Plaintiff long

before it even filed Mr. Lyons' misleading September 17, 2007 Affirmation. For

example, Exhibits 2, 3, and 4 to the September 21, 2007 Lyons Affirmation were all

printed on June 5, 2007 and Exhibit 6 was printed, apparently, on September 11, 2007.

　　In any case, it is not even clear that the issue of WBC KS's financial status is

relevant to the issues presented by Plaintiff's Motion to Stay and Plaintiff has cited not a

single case to support such a notion. Nonetheless, the folly of Plaintiff's argument is

revealed by the accompanying Declaration of Kjetil Vangsnes, Chief Financial Officer of

Western Bulk AS, the managing partner of the Defendant in this action, Western Bulk

Carriers KS.

　　In his Declaration, Mr. Vangsnes illustrates that I note that the claims involved in

this lawsuit are between Plaintiff and Western Bulk Carriers KS and do not involve any

other entity within the Western Bulk group of companies. *Vangsnes Declaration,* ¶ *9.*

Yet in the September 17, 2007 Lyons Affirmation and Plaintiff's Memorandum of Law

reference is continually made to the financial results of the Western Bulk Group (being

the consolidated accounts for all companies within the Western Bulk group) for the years

between 2004 and 2006 as if such results are those of WBC KS alone. *Id.* Moreover, the

September 17, 2007 Lyons Affirmation creates an inaccurate and skewed picture of the corporate structure and relationships among the companies within the Western Bulk group, which Mr. Vangsnes clarifies in his Declaration. *Id.* ¶ *10.*

Most damning to Plaintiff's motion, however, is Mr. Vangsnes's clarification of the actual, current financial condition of WBC KS and the companies within the Western Bulk group overall. As can bee seen from Mr. Vangsnes Declaration, whereas in 2006 the Western Bulk Group incurred a pre-tax loss of $3.2 million, **year to date 2007 it has generated a pre-tax profit of $33.2 million**. *Id.* ¶ *11.* Also, 2007 year to date, shareholder's equity has more than doubled since 31 December 2006 and the equity ratio has grown by 12 points (from 29% to 41%) during that same period. *Id.* These figures are all referenced in the Western Bulk Group Key Figures sheet annexed hereto as Exhibit "1" to the Vangsnes Declaration.   Moreover, of the pre-tax profit of $33.2 million generated by the Western Bulk Group in 2007, **WBC KS generated pre-tax profit of $20.4 million as at 31 August 2007**. *Id.* WBC KS, and the Western Bulk Group generally, are enjoying their best ever yearly financial performance. *Id.* ¶ *15.* Thus, the Plaintiff's speculation that WBC KS might not be financially viable by the time an appeal is rendered in this case is just that, idle, unsupported speculation. The fact that within 3 business days of learning that the Ex Parte Order had been issued in this action WBC KS was able to arrange for and tender to Plaintiff a surety bond in the sum of $15,350,796.00[1] speaks volumes regarding the baseless nature of Plaintiff's defamatory allegations concerning WBC KS's financial standing, not to mention that of the other companies within the Western Bulk Group.

---

[1]     *See Vangsnes Declaration* ¶ *16.*

The foregoing conclusively demonstrates that the Plaintiff has not satisfied its burden to demonstrate irreparable harm and stay of this action pending appeal is therefore inappropriate. WBC KS has no intention of dissolving its New York state business registration, as Plaintiff suggests (*see September 17, 2007 Lyons Decl. ¶ 18*), and fully appreciates that this Court will retain jurisdiction over it to order the return of the surety bond if the Court of Appeals reverses this Court's September 12, 2007 Order. *See Vangsnes Decl. ¶ 17.* WBC KS would not, in any event, risk exposing itself to further attachment of its property by Centauri. *Id.*

In sum, Plaintiff has failed utterly to point to any ***irreparable*** injury it would suffer should a stay not be issued. Its arguments to the contrary are all rendered moot in view of the fact that it failed to cite, much less consider, that under the Supreme Court's decision in *Republic Nat'l Bank of Miami v. United States*, 506 U.S. 80, 88 (1993) maintenance of the res in an attachment case is no longer necessary to preserve the Court's jurisdiction.

### (2)    *A stay will cause substantial injury to WBC KS*

Admittedly, the injury that WBC KS will continue to suffer if a stay is issued is limited to economic and administrative injury. However, the standard here is not irreparable harm, but substantial injury. In that context, it cannot be denied that having the substantial sum of $15,350,796.00 in the form of surety bond under continued restraint while the Plaintiff's appeal is under consideration is a substantial economic and administrative injury to WBC KS. Issuance and maintenance of the bond has (a) deprived WBC of the use of a percentage of its credit facility; and (b) cost WBC KS significant sums of money which it will continue to incur so long as the bond is

9

outstanding.[2]  Plaintiff's offer to post a supersedeas bond does not address the inherent

inequity of allowing Plaintiff to keep the bond during appeal when the point of the

Court's September 7, 2007 decision was that Plaintiff never should have sought to attach

WBC KS's property in the first place and in any event made material misrepresentations

of fact to the Court in obtaining the Ex Parte Order.  Accordingly, because the equities tilt

heavily in WBC KS's favor, this factor weighs in support of denying the Plaintiff's

motion for a stay.

### (3)      *Plaintiff has not demonstrated a substantial possibility of success on appeal*

The Plaintiff has not demonstrated that there is a substantial possibility of success

on appeal with regard to the merits because Plaintiff has simply reargued the issues

previously decided. *See Plaintiff's Memorandum of Law at 4-10.*  Contempt for the

Court's September 7, 2007 and repackaging of its prior, unsuccessful arguments cannot

support a finding of a strong likelihood of success on the merits. *See, Schwartz v. Dolan,*

159 F. R.D. 380, 384(N.D.N.Y. 1995)(analyzing the likelihood of success on the merits

of an appeal for purposes of Rule 62(a), the Court observed: "[m]ere repetition of

arguments previously considered and rejected cannot be characterized as a "strong

showing").

A cursory review of the Plaintiff's Memoranda of Law both on this motion, and in

opposition to WBC KS's motion to vacate, reveals that Plaintiff has cited not a single

relevant case in support of its argument that it has proven a substantial likelihood of

success on appeal.  In fact, in its zeal Plaintiff completely ignores key portions of the

---

[2]      As yet another example of Plaintiff's reckless use of factual assertions in this case, it wrongly
contends that WBC KS has not incurred any costs in posting the bond because "on information and belief"
it has insurance to cover such costs.  Plaintiff is, again, completely wrong and the costs to WBC KS are
very real.

Court's September 7, 2007 oral decision that render vast portions of its Memorandum of

Law irrelevant. For example, the Court ruled as follows:

> plaintiff contends that WBC's contacts "taken as a whole are insufficient
> to establish a jurisdictional presence in New York" thereby defeating
> WBC's motion to vacate the attachment on the basis that WBC is not
> present in New York in the jurisdictional sense. That's also plaintiff's
> memorandum at 10 and 11 and 13. **I reject this argument as
> inconsistent with the Second Circuit's opinion in Seawind.** Like Judge
> Lynch in Express Sea Transport Corp. v. Novel Commodities SA, 06 CV
> 2404, cited in the defendants' brief, **I reiterate that the key inquiry
> relating to the jurisdictional prong of the Seawind test is whether the
> defendant is amenable to suit within the district.** Although such
> amenability may at times be demonstrated tacitly through the existence of
> continuous and systematic contacts such as those described by plaintiff,
> such contacts are by no means the only method of demonstrating a
> defendant's jurisdictional presence in the district. In fact, **the language
> and context of Seawind suggests that inquiry into the intra-district
> activities of the defendant is most relevant perhaps as a default in the
> absence of more explicit manifestations of jurisdictional acquiescence.
> Here, there is no dispute that the defendant is and was at all times
> relevant to the attachment a registered foreign corporation within the
> State of New York.** As such, defendant, under New York law, has
> consented to jurisdiction in the courts of this state. And I cite New York
> Business Corporations Law 1304 through 1314.

*Transcript from September 17, 2007 hearing  (emphasis added).*

As the foregoing demonstrates, the arguments Plaintiff asserts in its Motion to

Stay are carbon copies of the arguments this Court previously rejected. The Plaintiff's

motion consists largely of a rehashed attempt to persuade this Court that its analysis is

inconsistent with rulings from other District Judges, which WBC KS asserts is incorrect.

While such disagreement with a ruling from the District Court may form the basis for an

appeal (improvident or otherwise), such arguments are nevertheless an entirely

inadequate basis for demonstrating a substantial possibility of success on appeal.

Consequently, Plaintiff has not satisfied the likelihood of success on the merits of an

appeal prong to warrant any further stay of the Court's September 12, 2007 Order

11

because it has not demonstrated any likelihood of success on appeal, let alone a strong likelihood.

### (4)    *There is no public interest warranting a stay*

The Plaintiff has not truly pointed to a single public interest that is implicated in this action. Nor, therefore, has it made any showing that the public interest will be harmed if a stay is not granted. More particularly, there is basis for claiming there is any public interest in the United States in this case involving foreign parties with regard to the future enforceability of an Angolan money judgment (assuming judgments issued by Angolan courts would ever be entitled to recognition and enforcement in U.S. courts in the first place). Since the public interest is not in any meaningful way implicated in this case, which at best is described as a dispute between two foreign parties regarding events occurring in Angola and the future enforceability of a theoretical Angolan judgment, the Court must find that the Plaintiff is unable to satisfy this factor. For this reason alone, the Motion for a Stay must be denied. *Covanta*, 2002 U.S. Dist. LEXIS 20298 (N.D.N.Y. Oct. 24, 2002).

### POINT II

### A FURTHER STAY WHILE PLAINTIFF SEEKS THE SAME RELIEF FROM THE COURT OF APPEALS IS UNWARRANTED

Should the Court deny its Motion to Stay, Plaintiff asks that the Court grant a further temporary stay to allow it the latitude to seek the identical relief from the Court of Appeals. Plaintiff had the option of seeking the stay from the Court of Appeals in the first instance. Having chosen to seek the stay order from this Court, it should not be given a second bite at the apple while WBC KS's surety bond remains in its possession.

Thus, on equitable grounds alone, no further stay is warranted in the event the Court denies the Plaintiff's instant Motion to Stay.

**POINT III**

**IN THE EVENT THE COURT GRANTS THE
PLAINTIFF'S MOTION, THE SUPERSEDEAS BOND
SHOULD BE IN THE SAME AMOUNT AS THE SURETY BOND**

In the event the Court grants Plaintiff's Motion to Stay, Plaintiff should be required to post a supersedeas bond in the amount of $15,350,796.00 and the bond should be issued by a Court approved surety within the District.

Plaintiff states that it is "prepared" to post a supersedeas bond should the Court grant a stay. However, it suggest that the quantum of such bond should only be in an amount equal to what it cost WBC KS to put it in place. *See Plaintiff's, Memorandum of Law at 14-15.* It further suggests that it should be entitled to provide a foreign bank guarantee in lieu of such a bond. *Id.* However, under Federal Rule of Procedure 62, petitioner is *required* to post a bond in order to obtain a stay. *See,* Fed. R. Civ. P. 62(d)("[w]hen an appeal is taken the appellant by giving a supersedeas bond may obtain a stay subject to the exceptions contained in subdivision (a) of this rule [which involve "Injunctions, Receiverships, and Patent Accountings."].

It is hornbook law that "if a court departs from the requirement of a full-security supersedeas bond, the burden should be on the moving party to demonstrate the reasons warranting such a departure." 20-308 *Moore's Federal Practice – Civil* § 308.30. Here, the Plaintiff has not met this burden. *See also, C. Albert Sauter Co. v. Richard S. Sauter Co.,* 368 F. Supp. 501, 520 (E.D.Pa. 1973) ("because Rule 62(d) expressly dictates that a supersedeas bond must be posted, only in 'extraordinary circumstances' should anything

13

less be required."). *See also Poplar Grove Planting & Refining Co. v Bache Halsey Stuart, Inc.,* 600 F.2d 1189 (5th Cir. 1979) (nature of supersedeas bond's dual protection role requires that amount of bond be computed by District Court to include whole amount of judgment remaining unsatisfied, costs on appeal, interest, and damages for delay, unless court after notice and hearing for good cause shown fixes different amount or orders security other than bond). Thus, the very purpose of a supersedeas bond is to preserve the *status quo* while protecting the non-appealing party's rights. *Id.* at 1190. ).

Plaintiff admits that WBC KS will be damaged by the continued maintenance of the surety bond it posted to secure Plaintiff's claims. *See Plaintiff's Memorandum of Law at 14.* In addition, WBC KS will be damaged by the costs of this action and costs on appeal. Additionally, if the attachment is found to have been wrongful, WBC KS may be entitled to attorney's fees and other consequential and/or punitive damages. Most importantly, the supersedeas bond is to protect a single party – the District Court winner. *See, Cal Dive Int'l, Inc. v. M/V TZIMIN,* 743 F. Supp. 813, 815 (S.D. Ala. 1990). Having prevailed in this Court on its Motion to Vacate, and the Court having ordered Plaintiff to return the surety bond to WBC KS, WBC KS should be entitled to the use of all of its assets utilized to arrange the surety bond. But, Plaintiff's appeal would serve to preclude WBC KS of such rights for as long as the appeal takes to be decided. As such, should the Court grant Plaintiff's Motion to Stay, which for the foregoing reasons WBC KS maintains it should not, WBC KS is entitled to a supersedeas bond that ensures it is secured for any and all costs and damages it stands to potentially recover in the event Plaintiff's appeal is denied and WBC KS is awarded wrongful attachment damages. An

appropriate figure in this regard would be an amount equivalent to WBC KS' surety

bond, *i.e.* $15,350,796.00.

## **CONCLUSION**

For the reasons set forth herein, there is no valid reason to stay execution of the

judgment entered by the District Court pending appeal. The Plaintiff-Appellant has not

even come close to demonstrating circumstances that would warrant a stay pending

appeal.  Accordingly, the Court must deny the Plaintiff-Appellant's Motion for a stay or,

at a minimum, direct the Plaintiff to post a supersedeas bond in the sum of

$15,350,796.00.

Dated: September 27, 2007
        New York, New York

                                The Defendant,
                                WESTERN BULK CARRIERS KS


                        By: _____
                                Patrick F. Lennon (PL – 2162)
                                LENNON, MURPHY & LENNON, LLC
                                The Gray Bar Building
                                420 Lexington Avenue, Suite 300
                                New York, New York 10170
                                (212) 490-6050
                                (212) 490-6070 fax
                                pfl@lenmur.com

15

## **AFFIRMATION OF SERVICE**

I hereby certify that on September 27, 2007, a copy of the foregoing

Memorandum of Law was filed electronically and served by mail on anyone unable to

accept electronic filing. Notice of this filing will be sent by e-mail to all parties by

operation of the Court's electronic filing system or by mail to anyone unable to accept

electronic filing. Parties may access this filing through the Court's CM/ECF system.

Patrick F. Lennon