UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
CENTAURI SHIPPING LTD.,                    :    07 CIV 4761 (KMK)

                Plaintiff,                    :    ECF CASE

  - against -                                         :

WESTERN BULK CARRIERS KS, WESTERN    :
BULK CARRIERS AS, and WESTERN BULK AS,
                                            :

                Defendants.
-----------------------------------------------------------X

## DECLARATION OF KJETIL VANGSNES
## PURSUANT TO 28 UNITED STATES CODE SECTION 1746

KJETIL VANGSNES hereby declares as follows:

1. I am the Chief Financial Officer of Western Bulk Carriers AS, the managing partner of the Defendant herein, Western Bulk Carriers KS ("WBC KS").

2. I make this Declaration in support of WBC KS's opposition to Plaintiff's Motion to Stay execution of the Court's September 12, 2007 Order ("Order") vacating maritime attachment and ordering return of the bond WBC KS posted to secure Plaintiff's claims.

3. I understand that the purpose of the September 17, 2007 Affirmation of Kirk Lyons, Plaintiff's counsel, is to persuade the Court that it should stay matters, including the return of the bond posted by WBC KS, pending Plaintiff's appeal of the Order.

4. I understand, also, that the September 21, 2007 "supplemental" Affirmation of Kirk Lyons and the Declaration of Lars Musaeus were submitted by Plaintiff in order to correct factual misrepresentations contained in Mr. Lyons' September 17, 2007 Affirmation relating to WBC KS's financial health.

1

5. In order to dispel the misleading picture Plaintiff has attempted to paint regarding the financial standing of WBC KS, I wish to bring the following facts to the Court's attention.

6. By way of brief introductory background, and as has been previously been explained by my colleague, Sara Gillingham Aukner in her Declaration dated August 9, 2007, WBC KS is a lead player in the field of chartering and operating ocean going vessels for the carriage of dry bulk cargos world-wide. At any given time, WBC KS has commercial control of 50-70 vessels.

7. WBC KS maintains its base of operations in Oslo, Norway.

8. WBC KS also has, since June 22, 2005 been registered with the New York State Department of Corporations to conduct business in the State of New York as a foreign limited partnership and has also maintained an appointed agent for service of process since that time.

9. I note that the claims involved in this lawsuit are between Plaintiff and Western Bulk Carriers KS. The dispute does *not* involve any other entity within the Western Bulk group of companies, yet in Mr. Lyons September 17, 2007 Affirmation and throughout Plaintiff's Memorandum of Law in support of its Motion to Stay, reference is continually made to the financial results of the Western Bulk Group (being the consolidated accounts for all companies within the Western Bulk group) for the years between 2004 and 2006 as if such results reflected the financial condition of <u>WBC KS</u>.

10. Mr. Lyons also makes mistakes about corporate relationships within the Western Bulk group of companies. As is apparent from the Exhibits to the Affirmations of Kirk Lyons and Lars Musæus, the correct corporate picture is as follows:

* WBC KS is a limited liability partnership;
* As a limited partnership, WBC KS is required by law to act through its general managers WBC AS, a private limited company;
* WBC AS is wholly owned by Western Bulk A/S, a private limited company;

2

* WBC KS is owned by Western Bulk AS (99.3%) and by WBC AS (0.7%);
* Kistefos AS, is a private limited company which now owns 95.5% of Western Bulk AS (Kistefos AS is not the corporate parent of WBC KS);
* Western Bulk AS is the corporate parent of WBC KS;
* WBC KS, WBC AS and Western Bulk AS are all distinct corporate entities;
* Western Bulk AS is the holding company of the Western Bulk group of companies, of which WBC KS is merely one company; and
* Therefore, the financial results of the Western Bulk Group are affected by performance of other companies and not merely WBC KS.

11. To the extent that Mr. Lyons' focus on the financial standing of Western Bulk KS or of the Western Bulk Group is in fact relevant to the Court's determination of whether a stay of its Order is warranted, I wish to advise the Court of the correct financial numbers for Western Bulk KS and for the Western Bulk Group. Since Mr Lyons' has focused on the financial standing of the Western Bulk Group, I wish to advise the Court that whereas in 2006 it incurred a pre-tax loss of USD 3.2 million, year to date the Western Bulk Group has generated a pre-tax profit of USD 33.2 million (before bonus) as at 31 August 2007 (unaudited). Also, 2007 year to date, shareholder's equity has more than doubled since 31 December 2006 and the equity ratio has grown by 12 points (from 29% to 41%) during that same period. These figures are all referenced in the Western Bulk Group Key Figures sheet annexed hereto as Exhibit "1." I would also like to add that, of the group's pre-tax profit of USD 33.2 million, the Defendant WBC KS generated pre-tax profit of USD 20.4 million as at 31 August 2007 (unaudited). I trust that these figures serve to more than adequately assure the Court that, contrary to Plaintiff's allegations, both WBC KS and the Western Bulk Group are thriving and financially quite sound.

12. There are a number of further inaccuracies found in Mr. Lyons' September 17 Affirmation. For example, at Paragraph 11 he makes reference to WBC KS having made preparations in 2005 to become a publicly traded company on the Oslo Stock Exchange. In fact, Mr. Lyons is wrong in this regard. The 2004 press release upon which Mr. Lyons relies to make

3

this statement (Lyons Aff. ¶ 11, Ex. G) in fact refers to the possible listing of the group holding company **Western Bulk AS** (formerly known as Western Bulk Carriers Holding ASA). It does not refer to WBC KS at all. Mr. Lyons allegation that WBC KS "retreated" from that position is therefore similarly inaccurate.

13. In his Affirmation, Mr. Lyons also attempts to portray WBC KS as unstable in its management structure. Mr. Lyons' representation at paragraph 12 of his Affirmation relating to Mr. Tonny Thorsen is inaccurate. Mr. Thorsen was not CEO of WBC KS for 16 years or at any time. Rather, he was CEO/Managing Director of Western Bulk Carriers AS and CEO/Managing Director of Western Bulk AS (known at that time as Western Bulk Carriers Holding ASA) for 3 years from 2002 to 2004. However, Mr Thorsen had been with the Western Bulk Group for 16 years (as stated in the press release annexed as Exhibit I to the Lyons Affirmation).

14. It is relevant though that WBC KS' financial results in 2005, and so also those of the Western Bulk Group, were negatively affected by about USD $7 million due to losses incurred as a result of the default on FFA contracts by Navitrans Maritime Inc, another company under the same beneficial ownership as Centauri. Reference to the FFA claims are found both in Plaintiff's Verified Complaint in this action, as well as the Declaration of Andrew Ridings submitted by WBC KS in support of its Motion to Vacate. On any view, it seems wrong for Plaintiff to try and twice benefit by default on the FFA contracts with WBC KS – first by the failure and refusal of an affiliated company to pay the sums due under the FFA contracts and second by now contending that WBC KS was financially unstable in 2005 when any such financial underperformance was a direct result of an affiliated company of the Plaintiff, in breaching the FFA contracts.

15.     Finally, the last paragraph of Exhibit K to Mr. Lyons Affirmation, the Kistefos AS Annual Report for 2006, states that "Western Bulk appears to have made a good start to 2007 and expects a good first quarter result." Mr. Lyons has ignored this evidence. The results for the Western Bulk Group so far in 2007 have been the best ever and the prognosis for the 2007 financial year is likely to produce the best ever yearly result for the Western Bulk Group.. I have already referred to the financial results for year to date at Paragraph 11 of this Declaration. I have difficulty, therefore, accepting Mr. Lyons conclusion that WBC KS, or any of the companies within the Western Bulk group, suffer from any financial instability.

16.     At least insofar as it relates to this lawsuit, perhaps the best evidence of WBC KS's financial stability and strength is found in the fact that upon learning on June 7 2007 that Plaintiff had commenced this action seeking to attach in excess of USD $15 million of WBC KS's property, WBC KS was immediately able to use working capital as cash collateral and so arrange for and offer to tender to Plaintiff a surety bond in the sum of USD $15,350,796.00 within 3 business days (i.e. by June 11, 2007). Despite Plaintiff's refusal to accept the bond, the Court ordered the bond be accepted and it was, in fact, posted on June 15, 2007.

17.     To dispel further misconceptions contained in Mr. Lyons Affirmation, I would like to clarify the following:

*     WBC KS does not intend to surrender its registration with the New York State Secretary of State Division of Corporations. The registration was filed almost two (2) years prior to Centauri commencing this action and WBC KS has other legitimate business reasons for maintaining it beyond any issues relevant to this lawsuit and in any event, I am advised that this Court has jurisdiction over WBC KS regardless of the existence of the bond, so

5

there is no possibility of WBC KS "disappearing" as Mr. Lyons seems to be suggesting. Similarly, WBC KS intends to maintain the appointment of its agent for service of process; and

    \*    If Plaintiff were to succeed on its appeal and this Court were to order WBC KS to restore or repost the bond, WBC KS would immediately undertake to do so rather than to have its business interrupted by Plaintiff's further attempts to attach WBC KS's assets in this action..

18.    In sum, contrary to Plaintiff's inaccurate portrayal of WBC KS, it is in fact a financially strong, stable and flourishing company. I believe the Plaintiff's mis-portrayal of WBC KS's current financial standing is obviously an attempt to keep hold of WBC KS's USD $15,350,796.00 surety bond as security for a judgment it one day hopes to obtain in the Angolan legal proceedings between the parties. The Plaintiff has previously made misrepresentations concerning WBC KS's presence in the State of New York, which violated WBC KS's rights, and I hope the Court will now also reject the misleading and incorrect factual allegations contained in Mr. Lyons' two Affirmations.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and belief..

Executed this ____ day of September 2007 in Singapore.

 

_____
Kjetil Vangsnes

## AFFIRMATION OF SERVICE

I hereby certify that on September 27, 2007, a copy of the foregoing Declaration of Kjetil Vansnes was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's CM/ECF system.

                                                               Patrick F. Lennon