# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

Nº 07-CV-4761 (RJS) (HBP)

CENTAURI SHIPPING LTD.,

Plaintiff,

VERSUS

# WESTERN BULK CARRIERS KS, WESTERN BULK CARRIERS, AS, AND WESTERN BULK, AS,

Defendants.

MEMORANDUM AND ORDER
October 12, 2007

RICHARD J. SULLIVAN, District Judge:

Plaintiff Centauri Shipping Ltd. ("Centauri") commenced the above-entitled action on June 5, 2007, seeking, *inter alia,* a writ of attachment pursuant to Rule B of the Federal Rules of Civil Procedure, Supplemental Rules for Certain Admiralty and Maritime Claims. On that date, the Honorable Kenneth M. Karas, District Judge, signed an order permitting plaintiff to attach assets of defendants Western Bulk Carriers KS ("defendant" or "WBC KS"), Western Bulk Carriers AS ("WBC AS"), and Western Bulk AS (collectively, the "WBC Group"), in the amount of $15,350,796.00 (hereinafter, "the attachment order"). *(See* Order dated June 5, 2007.) Subsequently, by order dated

September 7, 2007, the Court vacated the attachment order (hereinafter, "the *vacatur*"). Plaintiff now moves, pursuant to Rule 62 of the Federal Rules of Civil Procedure, to stay the *vacatur* during the pendency of the appeal of that order or, in the alternative, to stay the *vacatur* temporarily so that plaintiff may apply for a stay to the Second Circuit Court of Appeals. For the following reasons, the Court denies plaintiff's motion for a stay pending appeal, and orders a temporary stay pending resolution of plaintiff's application to the Court of Appeals.

## I. BACKGROUND AND PROCEDURAL HISTORY

The Court presumes the parties' familiarity with the facts and procedural history of this action. Below, the Court briefly recites the facts necessary to resolve the instant motion:[1]

On June 5, 2007, Centauri commenced this action by filing a complaint and a proposed *ex parte* order of attachment against WBC KS and two distinct corporate entities that co-own WBC KS. (Compl. ¶ 3; Vangsnes Decl. ¶ 10.) In support of the proposed attachment order, Centauri's counsel submitted an affirmation (the "June 5 affirmation") stating, *inter alia*, that:

> Your affiant [plaintiff's counsel] has attempted to locate the defendants . . . within this District. As part of the investigation, my office has contacted the Division of Corporations of the New York Department of State and found no records indicating that defendants were either incorporated or licensed to do business in the State of New York. . . . I declare and state under the penalty of perjury that the foregoing is true and correct.

(Lyons Aff. dated June 5, 2007, ¶ 2.)

On June 5, 2007, Judge Karas signed the *ex parte* attachment order. Thereafter, Centauri proceeded to attach assets of WBC KS found within the Southern District of New York (the "District") in the amount of $15,350,796.00. (Lyons Aff. dated Sept. 17, 2007 (hereinafter, "Lyons Aff."), ¶ 2.) On

June 15, 2007, upon WBC KS' motion, Judge Karas signed an order dissolving the attachment and directing WBC KS to post a bond in the amount equal to the attached assets (the "surety bond"). (Order dated June 15, 2007.)

Subsequently, on August 10, 2007, WBC KS moved to vacate the attachment order pursuant to Rule E of the Supplemental Rules for Certain Admiralty and Maritime Claims ("Rule E"). In its moving papers, WBC KS asserted that the above-quoted portion of the June 5 affirmation of plaintiff's counsel was demonstrably false, and that, in fact, WBC KS had been licensed as a foreign corporation in New York State since 2005 and was so licensed at the time that plaintiff sought and obtained the attachment order. (Lennon Decl. ¶ 5.)

By letter dated August 16, 2007, plaintiff's counsel represented to the Court that, at the time he submitted the proposed attachment order and the June 5 affirmation, he had "knowledge that defendant [WBC KS] was registered" with the State as a foreign corporation. (Pl.'s Aug. 16, 2007 Ltr., at 2.) However, according to plaintiff's counsel, the false statements regarding WBC KS' registration were included in the June 5 affirmation due to a purported "clerical error" by plaintiff's counsel.[2] (*Id.*)

On September 5, 2007, the undersigned heard oral argument regarding the motion to

---

[1] The facts recited herein are undisputed, unless otherwise noted.

[2] On September 12, 2007, the Court directed plaintiff's counsel to show cause as to why the Court should not impose sanctions on counsel pursuant to Rule 11(b) of the Federal Rules of Civil Procedure, in light of counsel's submission of a demonstrably false affidavit. The issue of whether to impose sanctions on plaintiff's counsel is now pending before the Court.

Case 1:07-cv-04761-RJS    Document 31    Filed 10/12/2007    Page 3 of 12


vacate.[3] (*See* Tr. of Proceedings on Sept. 5, 2007.) By oral decision on September 7, 2007, the Court granted WBC KS' motion to vacate the attachment and stated the reasons therefor on the record (the "*vacatur* decision"). (*See* Tr. of Proceedings on Sept. 7, 2007 (hereinafter, "Tr. of the *Vacatur* Decision").) On September 12, 2007, the Court issued the *vacatur*, lifting the attachment and directing plaintiff to return the surety bond to WBC KS after the expiration of ten days from the date of the *vacatur*.

On September 17, 2007, plaintiff filed a notice of appeal of the *vacatur* with the Court of Appeals for the Second Circuit. Also on September 17, 2007, plaintiff filed a motion with this Court to stay the *vacatur* pending appeal. On September 28, 2007, the Court heard oral argument regarding plaintiff's motion to stay. (*See* Tr. of Proceedings on Sept. 28, 2007.)

## II. STANDARD OF REVIEW

As a threshold matter, the Court must determine the correct subsection of Rule 62 to apply to plaintiff's motion. In their submissions to the Court, the parties address plaintiff's motion as one made under subsection (d) of Rule 62. However, it is well-settled that subsection (d) applies exclusively to stays of money judgments, and permits the moving party to obtain a stay *as of right* upon the posting of a *supersedeas* bond. *See, e.g, J. Perez & CIA, Inc., v. United States*, 747 F.2d 813, 816 (1st Cir. 1984) (Breyer, J.) (observing that Rule 62(d) "is likely aimed at money judgments, the value of which can be calculated and secured with relative ease") (internal citation omitted); *In*

*re Tower Automotive, Inc.*, No. 06-CV-2105 (RWS), 2007 WL 1975447, at *1-2 (S.D.N.Y. July 6, 2007) (finding that "Rule 62(d) is inapplicable" where "the [c]ourt's [o]pinion was not a money judgment, but rather a declaratory judgment which determined the scope of [a party's monetary] obligation"); *see also Hebert v. Exxon Corp.*, 953 F.2d 936, 938 (5th Cir. 1992) (granting a Rule 62(d) stay only where the declaratory judgment required payment of "a specific sum of money"); *Government Guar. Fund of Fin. v. Hyatt Corp.*, 167 F.R.D. 399, 400 (D.V.I. 1996) ("Although the issue appears not to have arisen very often, those courts to address it have limited the applicability of Rule 62(d) to appeals from money judgments or their equivalent.") (internal citations omitted).

Accordingly, the Court finds that subsection (c), rather than subsection (d), of Rule 62 should apply in this case. Rule 62(c) provides, in pertinent part:

> When an appeal is taken from an interlocutory or final judgment granting, dissolving, or denying an injunction, the court in its discretion may suspend, modify, restore, or grant an injunction during the pendency of the appeal upon such terms as to bond or otherwise as it considers proper for the security of the rights of the adverse party.

Fed. R. Civ. P. 62(c).

In the instant case, it is clear that plaintiff's motion should be analyzed under subsection (c) because the *vacatur* effectively "lift[ed] . . . an injunction" which provided for the attachment of defendants' assets, *see* Fed. R. Civ. P. 62(c), and ordered plaintiff "to do" an affirmative act — namely, to return the surety bond to defendant, *see Donovan v. Fall*

---

[3] This action was reassigned to the undersigned on September 4, 2007.

*River Foundry Co.*, 696 F.2d 524, 526 (7th Cir. 1982) ("The reference in Rule 62(d) to *supersedeas* bond suggests that had the framers thought about the point they would have limited the right to an automatic stay to cases where the judgment being appealed from was a 'money judgment.' . . . But this solution makes little sense as applied to an order to do, rather than an order to pay, whether or not the order to do is a conventional injunction."). *See In re Tower Automotive, Inc.*, 2007 WL 1975447, at *1-2; *accord J. Perez & CIA., Inc.*, 747 F.2d at 816 (applying subsection (c) rather than subsection (d) to "[a] case in which a party seeks review of an agency's suspension order, . . . [because it] is more naturally viewed as a case involving an order to do, or not to do, something (that is, involving something like an injunction) rather than a case involving a money judgment") (internal citation omitted).

In any event, the Court notes that, although the parties specifically cite subsection (d) in their submissions, both characterize plaintiff's motion as an application for the Court to exercise its *discretion* to stay the *vacatur* pending appeal, and both present arguments relating to the factors for a discretionary stay under Rule 62(c). (*See* Pl.'s Mem. at 3; Defs.' Mem. at 3.)

## III. DISCUSSION

### A. The Relevant Factors

The factors relating to a discretionary stay under Rule 62(c) include:

(1) Whether the movant has demonstrated "a substantial possibility, although less than a likelihood, of success" on appeal;

(2) The risk of irreparable injury to the movant absent a stay;

(3) The lack of substantial harm to the non-movant if the stay is granted;

(4) The public interests that may be affected.

*Hirschfeld v. Bd. of Elections*, 984 F.2d 35, 39 (2d Cir. 1993) (internal citations omitted); *Tower Automotive*, 2007 WL 1975447, at *1-2. In making such a determination, "[t]he Court treats these factors 'somewhat like a sliding scale.'" *United States v. VISA U.S.A., Inc.*, No. 98-CV-7076 (BSJ), 2007 WL 2274866, at *1 (S.D.N.Y. Aug. 7, 2007) (quoting *Thapa v. Gonzales*, 460 F.3d 323, 334 (2d Cir. 2006)). Thus, "'the necessary level or degree of possibility of success will vary according to the court's assessment of the other stay factors.'"[4] *Id.* (quoting *Thapa*,

___

[4] Defendant asserts that a movant's "'failure to satisfy one prong of the standard for granting a stay pending appeal dooms the motion.'" (Defs.' Br. at 3 (quoting *Covanta Onondaga Ltd. P'ship v. Onondaga County Resource Recovery Agency*, No. 02-CV-492, 2002 WL 31399797, at *2 (N.D.N.Y. Oct. 24, 2002)).) The Court notes that its review of relevant authority regarding the above-cited standard does *not* indicate that the movant's failure to satisfy one factor "dooms the motion." (*Id.*) Rather, as noted *supra*, it is well-settled that the above-cited factors are treated as a "sliding scale," wherein "'more of one excuses less of the other.'" *Thapa*, 460 F.3d at 334 (citing *Mohammed v. Reno*, 309 F.3d 95, 100 (2d Cir. 2002)). In addition, the single district court case cited by defendant in support of this proposition, *Covanta Onondaga*, appears to have derived the "failure as to one, failure as to all" rule from a line of decisions addressing applications for stays under the Bankruptcy Rules. *See Covanta Onondaga*, 2002 WL 31399797, at *2 (citing *Green Point Bank v. Treston*, 188 B.R. 9,12 (S.D.N.Y. 1995) (denying an application for a stay of a bankruptcy court order under Bankruptcy Rule 8005)). As such, the Court declines to apply the rule advanced by defendants, and, instead, adopts the "sliding scale"

460 F.3d at 334) (additional internal quotation marks and citation omitted); *see also Hayes v. City Univ. of New York*, 503 F. Supp. 946, 962 (S.D.N.Y. 1980) ("Issuance of a stay pending appeal is discretionary and equitable . . . .").

For the following reasons, the Court concludes, upon examination of these factors, that plaintiff's motion to stay the *vacatur* pending appeal should be denied.

## 1. Substantial Possibility of Success On Appeal

Plaintiff asserts that the *vacatur* was wrongly decided, and, more specifically, that there is a substantial possibility that the Court of Appeals will adopt plaintiff's position on the issue of whether defendant WBC KS can be "found" within the District for the purposes of Rule B.[5] Defendants respond that plaintiff has merely reiterated arguments that were previously rejected by this Court in the

*vacatur* decision, and that the authorities relied on by the Court in that decision indicate that there is not a substantial possibility that plaintiff's position will prevail on appeal.

The "key inquiry" with regard to the jurisdictional presence issue is "whether the defendant is amenable to suit within the district."[6] (*See* Tr. of *Vacatur* Decision, at 7.) Upon consideration of defendant's motion to vacate the attachment order, the Court conducted such an inquiry and concluded that WBC KS has unambiguously made itself amenable to suit within the District. (*See id.* at 3-8.) With regard to the instant motion, the Court adheres to its prior determination on this issue, and further finds, for the following reasons, that plaintiff's position — namely, that defendant's amenability to suit in the District is insufficient, by itself, to establish defendant's presence here — does not present a "substantial" possibility of success on appeal.

---

approach employed by the Court of Appeals for the Second Circuit and the overwhelming majority of district courts in this Circuit.

[5] As discussed in the *vacatur* decision, Rule B provides that, for an order of attachment to issue, the plaintiff must establish that the defendant cannot be "found within the district." Rule B(1)(a). The Second Circuit has held that this requirement presents "a two-pronged inquiry: First, whether (the respondent) can be found within the district in terms of jurisdiction, and second, if so, whether it can be found for service of process." *Seawind Compania, S.A. v. Crescent Line, Inc.*, 320 F.2d 580, 582 (2d Cir.1963) (internal quotation marks and citations omitted). The Court notes that plaintiff has conceded that the second prong of the *Seawind* test has been satisfied in this action. Specifically, it is undisputed that WBC KS has a designated agent for service of process in this District. However, the parties have vigorously disputed whether defendant was present for jurisdictional purposes within the District at the time of attachment. In the *vacatur* decision, the Court found that defendant was present for jurisdictional purposes.

[6] As a threshold matter, the Court notes that there is a split of authority among district courts in this circuit as to the central issue in this action — namely, whether defendant's registration in New York State as a foreign corporation and its consent to this Court's jurisdiction, taken together, are sufficient to establish under Rule B that defendant can be "found" for jurisdictional purposes within the District. *Compare Express Sea Transport Corp., v. Novel Commodities S.A.*, No. 06-CV-2404 (GEL) (Tr. of Oral Decision issued on May 4, 2006) (S.D.N.Y. 2006) (finding that the defendant's registration as a foreign corporation in New York State and its consent to the court's jurisdiction were sufficient to establish that it "can be found within the district for the purposes of jurisdiction"), *with Erne Shipping Inc. v. HBC Hamburg Bulk Carriers GmbH & Co. KG*, 409 F. Supp. 2d 427, 438 (S.D.N.Y. 2006) ("[W]e do not consider such filing to be sufficient to make a showing that a defendant is 'found' within the district."). Nevertheless, notwithstanding the divergent authority on this issue, the Court finds, for the reasons set forth herein and for the reasons stated on the record in the *vacatur* decision, that plaintiff has failed to establish a possibility of success on appeal.

In evaluating the jurisdictional presence factor under Rule B, the Second Circuit and the majority of district courts in this Circuit have focused principally upon that party's amenability to suit rather than the party's economic and physical activities in the district at issue. In *Integrated Container, Inc. v. Starlines Container Shipping, Ltd.,* 476 F. Supp. 119, 123 (S.D.N.Y. 1979), Judge Leval, sitting on the district court, held that the defendant could be "found" within the district for jurisdictional purposes based on, *inter alia*, the defendant's registration as a licensed foreign corporation within New York State and an agreement in which the defendant expressly consented to "the jurisdiction of the courts of New York."[7] More recently, the Second Circuit declined to discuss specifically the presence factor, but, instead, cited *Integrated Container* for the proposition that district courts have not "experienced any confusion in its application." *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.,* 460 F.3d 434, 445 n.4 (2d Cir. 2006). Indeed, the court in *Aqua Stoli* specifically characterized the district court's opinion in *Integrated Container* as "explaining the [presence] requirement." *Aqua Stoli,* 460 F.3d at 445 n.4.

Plaintiff argues that the court in *Integrated Container* specifically rejected the "notion . . . that an agent in the district over whom personal jurisdiction could be gained . . . was

---
[7] The court in *Integrated Container* also relied on the fact that the defendant had entered into a third agreement which "called for submission to arbitration in New York with New York law to apply." 476 F. Supp. at 123. In addition, the Court notes that, ultimately, the *Integrated Container* court declined to vacate the maritime attachment in that case because the defendant did not satisfy the service of process prong of the *Seawind* test. By contrast, in the instant case, as noted *supra*, it is undisputed that WBC KS has satisfied the service of process prong of the *Seawind* test.

alone sufficient to meet the jurisdictional presence prong under Rule B." (Pl.'s Mem. at 7.) Instead, according to plaintiff, the court in *Integrated Container* "required something more than the mere presence of an agent in the district" for the purposes of the jurisdictional presence factor. (*Id.*) However, plaintiff offers an overly narrow view of the scope of the court's holding in *Integrated Container* regarding the jurisdictional presence factor. Rather, in *Integrated Container*, the court held that the jurisdictional presence factor is satisfied either where the defendant's "activity in the district" or its "contacts with the district . . . permit the court to exercise *in personam* jurisdiction over the defendant." 476 F. Supp. at 122. Applying this standard, the court found that the defendant's registration as a foreign corporation in New York State and its consent via contract to the court's jurisdiction and to arbitration within New York State were sufficient to establish the defendant's jurisdictional presence in the district at issue. *See id.* at 123.

Similarly, in this case, it is undisputed that, as noted *supra*, WBC KS is a registered foreign corporation within the State of New York and, as such, under well-settled principles of New York State law, WBC KS has consented to general jurisdiction in the courts of the state, and, consequently, in this Court. *See Speed v. Pelican Resort N.V.*, No. 91-CV-7686 (SWK), 1992 WL 147646, at *1 (S.D.N.Y. June 16, 1992) (finding, with regard to a Netherlands Antilles corporation, that "it is clear that 'if a foreign corporation is authorized to do business in this state, a court is justified in inferring that it is doing business so that it is subject to jurisdiction of the courts.'") (quoting 14 N.Y. Jur. 2d, Business Relationships § 522 (1981)); *accord Iyalla v. TRT Holdings, Inc.*, No. 04-CV-8114 (NRB), 2005 WL 1765707, at *3 (S.D.N.Y. July 25,

2005) ("[A]ny corporation registered to do business within the state is subject to personal jurisdiction in the state."); *Obabueki v. IBM*, Nos. 99-CV-11262, 99-CV-12486 (AGS), 2001 WL 921172, at *5 (S.D.N.Y. Aug. 14, 2001). Furthermore, it is beyond doubt that WBC KS has specifically consented, on the record, to the jurisdiction of this Court for the purposes of any and all proceedings relating to this action.[8] Accordingly, based on the close similarity of the facts relating to the presence issue in this case with those found in *Integrated Container*, the fact that the Second Circuit has recently cited with approval the analysis of that issue by the district court in *Integrated Container*, and, as set forth in the *vacatur* decision, this Court's prior determination that the controlling factor with regard to jurisdictional presence is the defendant's amenability to suit in the District, the Court finds that plaintiff's position does not present a substantial possibility of success on appeal.

2. The Risk of Irreparable Injury to Plaintiff

Plaintiff asserts that, absent a stay of the *vacatur*, there is a significant risk of irreparable injury to plaintiff. Specifically, plaintiff asserts that, absent a stay of the *vacatur*, WBC KS may withdraw its registration as a licensed foreign corporation in New York State, thus preventing this Court and/or the Court of Appeals from exercising jurisdiction over WBC KS. In addition, plaintiff argues that, if WBC KS is permitted to remove the surety bond, WBC KS may subsequently experience a financial downturn

which may, in the absence of the surety bond, frustrate plaintiff's efforts to collect on any future money judgment obtained by plaintiff against defendant. The Court rejects both of plaintiff's arguments and, instead, finds that, absent a stay, there is little risk that plaintiff will suffer irreparable injury that cannot be compensated by money damages.

a. Loss of Jurisdiction Over Defendant

The Court rejects plaintiff's assertion that defendant's de-registration as a licensed foreign corporation in New York would somehow prevent this Court and/or the Court of Appeals from exercising jurisdiction over defendant. As an initial matter, the Court notes that plaintiff has failed to offer any evidence that defendant intends to de-register, and defendant vigorously asserts its intention to maintain its current registration status. However, even assuming *arguendo* that defendant is likely to de-register and, subsequently, remove its assets from the District, it is beyond doubt that this Court and the Court of Appeals would retain jurisdiction over this action.

In *Republic National Bank of Miami v. United States*, 506 U.S. 80, 87-88 (1992), the Supreme Court, applying admiralty principles to a civil forfeiture proceeding,[9] found that, while a district court must have jurisdiction over a *res* to *initiate* an *in rem* action, it need not maintain continuous control of the *res* to *maintain* jurisdiction of the action. The Court observed:

> Stasis is not a general prerequisite to the maintenance of jurisdiction. Jurisdiction over the person survives a

---

[8] Defendant's counsel stated such consent in two appearances before the Court: during argument regarding the *vacatur* and, once again, during argument regarding the instant motion to stay. (*See* Tr. of *Vacatur* Decision, at 7; Tr. of Proceedings on Sept. 28, 2007, at 12.)

[9] 28 U.S.C. § 2461(b) directs federal courts to conduct civil forfeiture proceedings in a manner "as near as may be to proceedings in admiralty."

7

change in circumstances, *Leman v. Krentler-Arnold Hinge Last Co.*, 284 U.S. 448, 454 (1932) ("[A]fter a final decree a party cannot defeat the jurisdiction of the appellate tribunal by removing from the jurisdiction, as the proceedings on appeal are part of the cause," citing *Nations v. Johnson*, 65 U.S.C. (24 How.) 195 (1861)), as does jurisdiction over the subject matter, *Louisville, N.A. & C.R. Co. v. Louisville Trust Co.*, 174 U.S. 552, 566 (1899) (midsuit change in the citizenship of a party does not destroy diversity jurisdiction); *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 289-290 (1938) (jurisdiction survives reduction of amount in controversy). Nothing in the nature of *in rem* jurisdiction suggests a reason to treat it differently.

*Republic Nat'l Bank*, 506 U.S. at 87-88.

In the context of maritime attachments, at least one circuit has, not surprisingly, read the holding in *Republic National Bank* to "eliminate any requirement on a party seeking to institute a maritime attachment to obtain a stay or post a *supersedeas* bond to preserve the district court's jurisdiction over the garnished funds while [that party] appealed the release of the garnished funds." *Stevedoring Servs. of Am. v. Ancora Transp., N.V.*, 59 F.3d 879, 882 (9th Cir. 1995) ("We conclude that the district court's release of the garnished funds . . . did not divest the court of jurisdiction over the *res*.")[10]; *see also Ventura*

*Packers, Inc. v. F/V Jeanine Kathleen*, 424 F.3d 852, 860, 861 (9th Cir. 2005) ("In short, *in rem* or *quasi in rem* jurisdiction remains throughout the course of an appeal, as long as jurisdiction was properly obtained at the initiation of the action. Otherwise, the prevailing party could frustrate the losing party's appeal by transferring the *res* out of the district court's jurisdiction, a practice to which [t]he Supreme Court objected in no uncertain terms in *Republic National Bank*.") (internal quotation marks and citation omitted).

Here, the Court adopts the sound reasoning of the Ninth Circuit in *Stevedoring Services* in applying the holding of *Republic National Bank* to the maritime attachment context, and, as such, concludes that defendant's de-registration, and the subsequent removal of defendant's assets from the District, will not divest this Court or the Court of Appeals of jurisdiction over defendant. Accordingly, the Court rejects the alleged injury regarding the loss of jurisdiction over defendant as a basis for a stay.

---

[10] The court in *Stevedoring Services* rejected as immaterial the lone fact that could have served to undermine the application of the *Republic National Bank* holding in the context of maritime attachments; specifically, the court refused to distinguish the Supreme Court's holding based upon the fact that the forfeiture action at issue in *Republic National Bank* was

an *in rem* proceeding and that maritime attachments are *quasi in-rem* proceedings. *See Stevedoring Servs.*, 59 F.3d at 882-83 ("[T]his difference suggests no reason why we should distinguish the Supreme Court's decision in [*Republic National Bank*].").

## b. Plaintiff's Inability to Enforce Money Judgments Against Defendant

Plaintiff also asserts that "the loss of the surety bond [posted by defendant] in this matter would be an irreparable injury, since there is a reasonable chance that [defendant] may not be able to satisfy" future money judgments obtained by plaintiff against defendant. (Pl.'s Mem. at 14.) The Court rejects this alleged injury as a basis for a stay pending appeal. Instead, the Court finds that the monetary injury alleged by plaintiff is not the type of injury that may justify a stay of the *vacatur* pending appeal.

"As a general matter, because monetary injury can be estimated and compensated, the likelihood of such injury usually does not constitute irreparable harm." *Brenntag Int'l Chem., Inc. v. Bank of India*, 175 F.3d 245, 249 (2d Cir. 1999) (citing *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979) (per curiam); *see also Ford v. Reynolds*, 316 F.3d 351, 355 (2d Cir. 2003) ("To establish irreparable harm, the injury alleged 'must be one requiring a remedy of more than mere money damages.'") (quoting *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 975 (2d Cir. 1989)); *E.E.O.C. v. Local* 638, No. 71-CV-2877 (RLC), 1995 WL 355589, at *2 (S.D.N.Y. June 7, 1995) ("Irreparable injury means 'the kind of injury for which money cannot compensate,' and therefore '[a] monetary loss will not suffice unless the movant provides evidence of damage[] that cannot be rectified by financial compensation.'") (quoting *Sperry Int'l Trade, Inc. v. Gov't of Israel*, 670 F.2d 8, 12 (2d Cir. 1982), and *Tucker Anthony Realty Corp.*, 888 F.2d at 975). However, "courts have excepted from the general rule regarding monetary injury situations involving obligations owed by insolvents." *Brenntag Int'l Chem.*, 175 F.3d at 250 (collecting

cases). Accordingly, monetary injury *may* suffice to establish irreparable harm in situations "where the party that might ultimately be ordered to pay the monetary damages is insolvent or facing imminent bankruptcy, or is in a perilous financial state." *Bridgeport, Port Jefferson Steamboat Co. v. Bridgeport Port Auth.*, No. Civ. A. 3:03-CV-599 (CFD), 2004 WL 840140, at *3 (D. Conn. April 15, 2004) (internal quotation marks and citations omitted); *accord Sea Carriers Corp. v. Empire Programs, Inc.*, No. 04-CV-7395 (RWS), 2006 WL 3354139, at *4 (S.D.N.Y. Nov. 20, 2006) ("Monetary loss therefore will not suffice unless the movant shows damage that cannot be rectified by financial compensation . . . . One such exception is where the party to be enjoined is shown to be insolvent or imminently insolvent."); *Mitsubishi Power Sys., Inc. v. Shaw Group, Inc.*, No. 04-CV-1251 (RMB), 2004 WL 527047, at *2 (S.D.N.Y. March 16, 2004) ("Courts have generally applied this limited exception where insolvency is imminent.").

Here, it is beyond doubt that the injuries alleged by plaintiff are *not* ones requiring a remedy of more than money damages: plaintiff specifically seeks to ensure that it will be able to collect on money judgments against WBC KS.

Furthermore, plaintiff has failed to establish that any judgment against defendant WBC KS would otherwise be uncollectible. Plaintiff has not asserted that WBC KS is currently insolvent, and the Court rejects as mere speculation plaintiff's assertions regarding the perilous financial condition of WBC KS. Indeed, although plaintiff has shown that WBC KS has experienced some financial losses within the past four years, it is clear that WBC KS retains sizable assets and, as of August 31, 2007, had generated pre-tax profits of $20.4 million during the current

financial year. (Vangsnes Decl. ¶¶ 11, 15.) As such, WBC KS does not appear to be experiencing the financial distress that other courts have required before applying the "imminent insolvency" exception to the monetary injury rule. *See, e.g., Mitsubishi Power Sys.*, 2004 WL 527047, at *4 (citing, *inter alia*, the following cases: *Meringolo v. Power2ship*, No. 03-CV-4476 (PKL), 2003 WL 21750009, at *3-5 (S.D.N.Y. July 28, 2003) (denying preliminary injunction and declining to apply the imminent insolvency exception even though the defendant company had "generated almost no revenue from its inception [and] has never earned a profit since its formation," and its "independent auditors have qualified the company's financial statements as a 'going concern.'"); *General Transp. Servs. Inc. v. Kemper Ins. Co.*, No. 5:03-CV-620, 2003 WL 21703635, at *3-4 (N.D.N.Y. June 25, 2003) (denying a preliminary injunction and finding that "although Plaintiff arguably raises questions about [the defendant's] present financial condition, its assertions fall far short of establishing that [the defendant] is in 'imminent' danger of becoming insolvent," even where the defendant's credit rating had been downgraded to "C++" and the defendant had defaulted on $700 million of its notes and laid off 1,000 of its 7,000 employees)). Accordingly, the Court finds that plaintiff has fallen short of establishing WBC KS' imminent insolvency so as to establish a risk of irreparable injury. Therefore, because "[t]he possibility that adequate compensatory or other corrective relief will be available at a later date . . . weighs heavily against a claim of irreparable harm," *Sampson v. Murray*, 415 U.S. 61, 90 (1974), the Court rejects

plaintiff's alleged monetary injury as a basis for a stay of the *vacatur* pending appeal.[11]

### 3. Substantial Harm to Defendant

Defendant asserts that, if a stay is entered, it will suffer substantial harm in the form of the continued cost of maintaining the surety bond during the pendency of an appeal, and the consequent loss of "the use of a percentage of its credit facility." (Defs.' Mem. at 9-10.) In response, plaintiff asserts that a stay will not result in substantial harm to defendant because plaintiff is prepared to post a bond to cover the cost of maintaining the surety bond during the appeal. (Pl.'s Mem. at 14-15.) The Court finds that this factor weighs in favor of granting a stay. Thus, assuming *arguendo* that plaintiff could post a sufficient bond to satisfy the Court, any

---

[11] Plaintiff also cites to *Swift & Co. Packers v. Compania Colombiana Del Caribe*, S.A.,
339 U.S. 684, 689 (1950), in support of its argument regarding irreparable harm. Specifically, plaintiff cites *Swift* for the proposition that "[a]ppellate review of the order dissolving the attachment at a later date would be an empty rite after the vessel had been released and the restoration of the attachment only theoretically possible." *Id.* at 689. The Court finds that *Swift*, and the quotation therefrom, are not relevant to the irreparable harm inquiry in the instant case. *Swift* addressed the issue of whether "the order vacating the attachment was not a final order and therefore not reviewable" by the appellate court. *Id.* at 688. By contrast, the issue here is whether equity favors a stay of the *vacatur* pending appeal. Furthermore, the circumstances of *Swift* — involving the attachment of a *vessel* — contrast significantly with those of the instant case, wherein the *vacatur* relates exclusively to the release of security posted by defendants. Thus, as discussed herein, the Court finds that the concern enunciated in *Swift* is absent from the instant case — there is no significant risk that plaintiff's appeal will prove an "empty rite," at least where plaintiff does not seek to attach a vessel and the Court may direct defendant to post security following an appeal, if necessary.

10

financial harm suffered by defendant is unlikely to be substantial.

#### 4. The Public Interest

Plaintiff asserts that the public's interest in ensuring the enforcement of foreign judgments — such as the judgment plaintiff expects to obtain against defendant in the courts of Angola — favors a stay of the *vacatur* pending appeal. The Court rejects this argument. Initially, the Court notes that plaintiff fails to cite any authority in support of the alleged public interest. In addition, it is beyond doubt that plaintiff has yet to obtain a judgment against defendant in the Angolan action. As such, the Court finds that plaintiff presents mere speculation as to the presence of a public interest favoring a stay of the *vacatur* and, thus, could reject plaintiff's argument on that basis alone.

However, even assuming *arguendo* that there is a public interest in the enforcement of foreign judgments *and* that plaintiff will eventually obtain such a judgment, plaintiff has failed, as discussed *supra*, to establish that its will be unable to collect on any future judgments obtained against WBC KS in this action. Therefore, there is no basis for this Court to find that such an interest would be adversely effected by denying a stay of the *vacatur*.

#### B. Weighing the Factors

On balance, the above-cited factors weigh against granting a stay of the *vacatur* pending appeal. Although the factor concerning substantial harm to defendant slightly favors a stay, the remaining factors weigh heavily against a stay of the *vacatur*. First, the factor regarding plaintiff's possibility of success on appeal weighs against a stay; that is, plaintiff's possibility of success on appeal, although not insignificant, does not appear to be "substantial." Second, most significantly, the factor concerning irreparable injury

overwhelmingly weighs against a stay of the *vacatur*; as discussed *supra*, plaintiff has failed to establish any legally cognizable type of irreparable injury sufficient to justify a stay pending appeal. Finally, plaintiff has failed to establish any public interest favoring a stay.

#### C. Plaintiff's Request for a Temporary Stay

The Court grants plaintiff's request for a temporary stay of the *vacatur* so that plaintiff may apply to the Court of Appeals for the Second Circuit for a stay pending appeal, pursuant to Rule 8(a) of the Federal Rules of Appellate Procedure. *See, e.g., In re Albicocco*, No. 06-CV-3409 (JFB), 2006 WL 2620464, at *5 (E.D.N.Y. Sept. 13, 2006) (denying a stay pending appeal under Rule 62, but granting a temporary stay so that a party could apply to the Court of Appeals for a stay); *Motorola Credit Corp. v. Uzan*, 275 F. Supp. 2d 519, 525 (S.D.N.Y. 2003) (same); *Paris v. (1) Dep't of Nat'l Store Branch (1) Vietnam*, No. 99-CV-8607 (NRB), 2000 WL 777904, at *5 (S.D.N.Y. June 15, 2000) (same); *LNC Investments, Inc. v. Republic of Nicaragua*, No. 96-CV-6360 (JFK) 2000 WL 729216, at *2 (S.D.N.Y. June 6, 2000) (same). If plaintiff fails to apply to the Court of Appeals by Wednesday, October 17, 2007, the temporary stay shall expire. However, if plaintiff applies for a stay pending appeal with the Court of Appeals before that deadline, this Court's temporary stay will remain in effect until the stay motion before the Second Circuit is decided.

although not insignificant, does not appear to be "substantial." Second, most significantly, the factor concerning irreparable injury overwhelmingly weighs against a stay of the *vacatur*; as discussed *supra*, plaintiff has failed to establish any legally cognizable type of irreparable injury sufficient to justify a stay pending appeal. Finally, plaintiff has failed to establish any public interest favoring a stay.

C. Plaintiff's Request for a Temporary Stay

The Court grants plaintiff's request for a temporary stay of the *vacatur* so that plaintiff may apply to the Court of Appeals for the Second Circuit for a stay pending appeal, pursuant to Rule 8(a) of the Federal Rules of Appellate Procedure. *See, e.g., In re Albicocco*, No. 06-CV-3409 (JFB), 2006 WL 2620464, at *5 (E.D.N.Y. Sept. 13, 2006) (denying a stay pending appeal under Rule 62, but granting a temporary stay so that a party could apply to the Court of Appeals for a stay); *Motorola Credit Corp. v. Uzan*, 275 F. Supp. 2d 519, 525 (S.D.N.Y. 2003) (same); *Paris v. (1) Dep't of Nat'l Store Branch (1) Vietnam*, No. 99-CV-8607 (NRB), 2000 WL 777904, at *5 (S.D.N.Y. June 15, 2000) (same); *LNC Investments, Inc. v. Republic of Nicaragua*, No. 96-CV-6360 (JFK) 2000 WL 729216, at *2 (S.D.N.Y. June 6, 2000) (same). If plaintiff fails to apply to the Court of Appeals by Friday, October 19, 2007, the temporary stay shall expire. However, if plaintiff applies for a stay pending appeal with the Court of Appeals before that deadline, this Court's temporary stay will remain in effect until the stay motion before the Second Circuit is decided.

IV. CONCLUSION

For the foregoing reasons, plaintiff's motion for a stay of the *vacatur* pending appeal is DENIED. Plaintiff's request for a temporary stay of the *vacatur* pending the Court of Appeals' resolution of a motion to stay is GRANTED.

SO ORDERED.

RICHARD J. SULLIVAN
United States District Judge

Dated: October 12, 2007
New York, NY

* * *

Plaintiff is represented by Kirk M.H. Lyons, Esq., Lyons & Flood, L.L.P., 65 West 36th Street, 7th Floor, New York, New York 10018. Defendants are represented by Kevin John Lennon, Esq., and Patrick F. Lennon, Esq., Lennon, Murphy & Lennon, LLC, The GrayBar Building, 420 Lexington Avenue, Suite 300, New York, New York 10170.