UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

№ 07-CV-4761 (RJS) (HBP)
_____

CENTAURI SHIPPING LTD.,

Plaintiff,

VERSUS

WESTERN BULK CARRIERS KS, WESTERN BULK CARRIERS, AS, AND WESTERN BULK, AS,

Defendants.

_____

MEMORANDUM AND ORDER
November 5, 2007
_____

RICHARD J. SULLIVAN, District Judge:

Plaintiff Centauri Shipping Ltd. ("Centauri") commenced the above-entitled action on June 5, 2007, seeking, *inter alia*, a writ of attachment pursuant to Rule B of the Federal Rules of Civil Procedure, Supplemental Rules for Certain Admiralty and Maritime Claims. On that date, the Honorable Kenneth M. Karas, District Judge, signed an order permitting plaintiff to attach assets of defendants Western Bulk Carriers KS ("WBC KS"), Western Bulk Carriers AS ("WBC AS"), and Western Bulk AS ("WB") (collectively, "defendants"), in the amount of $15,350,796.00 (hereinafter, "the attachment order"). By order dated September 7, 2007, the Court vacated the attachment order.

Thereafter, by order dated September 12, 2007, the Court directed plaintiff's counsel, Kirk M. Lyons (hereinafter, "Counsel"), to show cause as to why sanctions should not be imposed on him pursuant to Rule 11(b) of the Federal Rules of Civil Procedure (hereinafter, the "Order to Show Cause"). In addition, on September 28, 2007, Counsel submitted a request for a protective order "sealing the papers submitted and proceedings related to" the Order to Show Cause for sanctions. (Counsel's Sept. 28, 2007 Ltr., at 1.) For the following reasons, the Court declines to impose monetary sanctions on Counsel under Rule 11(b), and denies Counsel's request for a protective order.

## I. BACKGROUND

The Court has recited the underlying facts of this action elsewhere and assumes the parties' familiarity therewith. (*See* Transcript of Sept. 7, 2007 Proceedings (hereinafter, "*Vacatur* Tr.") (granting defendants' *vacatur* motion); and *Centauri Shipping Ltd. v. Western Bulk Carriers KS*, No. 07 Civ. 4761(RJS), 2007 WL 3025706, at *1-2 (S.D.N.Y. Oct. 12, 2007) (denying plaintiff's request for a stay of the *vacatur* decision). Thus, the Court briefly recites the facts relevant to the sanctions and protective order issues.

On June 5, 2007, Counsel submitted an "Affirmation in Support of Maritime Attachment and Garnishment Pursuant to Supplemental Rule B(1)" (hereinafter, the "Affirmation") to Judge Karas, to whom this action had previously been assigned.[1] In the Affirmation, which comprised six paragraphs extending over two pages, Counsel stated the following "under penalty of perjury pursuant to 28 U.S.C. § 1746":

> Your affiant has attempted to locate the defendants . . . within this District. As part of the investigation, my office has contacted the Division of Corporations of the New York Department of State and found no records indicating that defendants were either incorporated or licensed to do business in the State of New York.

(Affirmation ¶ 2.)

On that same day, Judge Karas granted plaintiff's *ex parte* application for an attachment of the defendants' assets, pursuant to the four-prong test set forth by the Second Circuit in *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.,* 460 F.3d 434 (2d Cir. 2006), which includes a requirement that the defendant must be "present" in the district for the purposes of personal jurisdiction and service of process. (*See* June 5, 2007 Attachment Order.)

Subsequently, on August 10, 2007, defendant WBC KS moved to vacate the attachment order pursuant to Rule E of the Supplemental Rules for Certain Admiralty and Maritime Claims. In its moving papers, WBC KS asserted that the above-quoted portion of the Affirmation was false, and that, in fact, defendants WBC KS and WBC AS had been licensed as foreign corporations in New York State since 2005, and were so licensed at the time that plaintiff sought and obtained the attachment order. (Lennon Decl. ¶ 5.)

By letter dated August 16, 2007, Counsel represented to the Court that, at the time he submitted the Affirmation, he possessed "knowledge that defendant [WBC KS] was registered" with the State as a foreign corporation. (Pl.'s Aug. 16, 2007 Ltr., at 2.) However, according to Counsel, the false statements regarding WBC KS' registration were included in the Affirmation due to a purported "clerical error" by Counsel. (*Id.*)

On September 5, 2007, the undersigned heard oral argument regarding defendant WBC KS' motion to vacate. By oral decision on September 7, 2007, the Court granted WBC KS' motion to vacate the attachment and stated the reasons therefor on the record (the "*vacatur* decision"). Specifically, the Court found that WBC KS was "present" in the district under the *Aqua Stoli* test on the ground that it was licensed as a foreign

---

[1] The action was reassigned to the undersigned on September 4, 2007.

corporation in the New York State and, as such, under well-settled principles of New York law, had consented to general jurisdiction in the courts of the state, and, consequently, in this Court. (*See Vacatur* Tr. at 7-8; *see also Centauri Shipping Ltd.*, 2007 WL 3025706, at *5.) By order dated September 12, 2007, the Court lifted the attachment and directed plaintiff to return the surety bond to WBC KS. On that date, the Court also directed Counsel to show cause as to why the Court should not impose sanctions on him pursuant to Rule 11(b), in light of the false statements contained in the Affirmation.[2] On September 28, 2007, Counsel submitted his response to the Order to Show Cause.

## II. STANDARD OF REVIEW

In a 2003 case, *In re Pennie & Edmonds, LLP*, 323 F.3d 86, 91-92 (2d Cir. 2003), the Second Circuit considered the appropriate *mens rea* standard for a sanction proceeding initiated by a district court against an attorney.[3] There, the court made clear that, in order to impose sanctions *sua sponte* upon an attorney, the district court must make a "finding of bad faith on the part of the attorney." 323 F.3d at 90. The court reasoned that, as opposed to a sanctions proceeding initiated by a party's motion, "when a lawyer's submission . . . is subject to sanction by a *court*, the absence of a 'safe harbor' opportunity" for counsel to reconsider the challenged submission weighs in favor of "avoiding the inhibiting effect of an 'objectively unreasonable' standard." *Pennie & Edmonds*, 323 F.3d at 91 (emphasis supplied). Thus, the court concluded, the "bad faith standard applies to a court-initiated show cause order issued where an opportunity for withdrawal or correction is unavailable." *Id.* at 91 n.4.

As such, the Second Circuit has prescribed "two separate standards of culpability" under Rule 11, "depending upon who initiates sanction proceedings": those initiated by a *party* are subject to an "objective unreasonableness" standard, and those initiated by the *court* are subject to "the heightened standard of 'subjective bad faith' established by the Second Circuit in *Pennie*." *HD Brous & Co., Inc. v. Mrzyglocki*, No. 03

---

[2] On September 17, 2007, plaintiff filed a notice of appeal of the *vacatur* decision with the Court of Appeals for the Second Circuit. Also on September 17, 2007, plaintiff filed a motion with this Court to stay the *vacatur* decision pending appeal. In a Memorandum and Order dated October 12, 2007 (the "stay decision"), the Court denied plaintiff's motion for a stay pending appeal, but granted plaintiff a temporary stay while it sought a stay from the Court of Appeals. *Centauri Shipping Ltd.*, 2007 WL 3025706, at *10.

[3] Specifically, the court in *Pennie & Edmonds* addressed the "narrow issue concerning the applicable *mens rea* standard when a trial judge, *sua sponte*, initiates a post-trial Rule 11 sanction proceeding because a lawyer permitted a *client* to submit a false affidavit at an earlier stage of the litigation." 323 F.3d at 87 (emphasis added). Nevertheless, district courts in this circuit have consistently applied the *Pennie & Edmonds* standard to cases where, as here, the attorney *personally* submitted a false or misleading filing and the court, *sua sponte*, initiated a *pre-trial* Rule 11 sanction proceeding. *See, e.g., TVT Records v. Island Def Jam Music Group*, 447 F. Supp. 2d 311, 314-15 (S.D.N.Y. 2006); *HD Brous & Co., Inc. v. Mrzyglocki*, No. 03 Civ. 8385 (CSH), 2004 WL 1367451, at *2 (S.D.N.Y. June 16, 2004) ("It could be argued that the present case, which concerns maintenance of contradictory claims, misleading use of authority, misrepresentations of fact by counsel, and maintaining of a frivolous petition, is not within the scope of *Pennie*. . . . However, I decline to draw such a distinction in this case because I regard the Second Circuit's rationale [in *Pennie & Edmonds*] as sufficiently broad to cover both sets of circumstances.") (internal citation omitted). Similarly, this Court finds that the court's holding in *Pennie & Edmonds* is sufficiently broad so as to govern the sanction proceeding in the instant case.

3

Civ. 8385 (CSH), 2004 WL 1367451, at *1-2 (S.D.N.Y. June 16, 2004). Here, the Court applies the subjective bad-faith standard and, for the following reasons, declines to impose sanctions upon Counsel.

### III. ANALYSIS

### A. Sanctions

It is undisputed that the assertions contained in paragraph two of the Affirmation are false, at least with regard to WBC KS and WBC AS. Specifically, Counsel now concedes that, at the time he prepared and filed the Affirmation, he knew that defendants WBC KS and WBC AS were, in fact, licensed as foreign corporations in New York State, and that such information was readily available through a search of public records. (Counsel's Aff. in Response to the Order to Show Cause, dated Sept. 28, 2007 (hereinafter, "Counsel's Resp. Aff."), ¶ 10.) Thus, the Court's sole concern is whether the Affirmation was submitted in bad faith, or, in other words, was the product of deliberate dishonesty.

In his response to the Order to Show Cause, Counsel attests that, although he was aware of WBC KS' and WBC AS' respective registrations in New York State at the time he prepared and filed the Affirmation, he negligently — rather than willfully — failed to correct the false statements set forth in the Affirmation. (Counsel's Resp. Aff. ¶ 15.) Specifically, Counsel states that:

> I cannot adequately explain the reason why the [Affirmation] did not recite that defendants WBC AS and WBC KS were authorized to conduct business in New York . . . . I take full responsibility for the omission of those facts in [the Affirmation]. It was an omission in the draft . . . that should have been caught by me but it was not. For that oversight, I apologize to the Court and defendants. . . . [T]he omission and failure to catch the omission were not deliberate or intentional by me . . . . It was a fact that would be easily noted by defendants in opposing any attachment (as it was in fact) and, therefore, there was no reason why such an omission would be deliberately or intentionally made.

(Counsel's Resp. Aff. ¶¶ 15-16.)

Despite the Court's disapproval of Counsel's conduct in this action, as discussed below, the Court finds no basis to doubt Counsel's assertion that the false statements in the Affirmation were the product of negligence rather than deliberate dishonesty. (*See* Counsel's Resp. Aff. ¶¶ 14-15.) Accordingly, because the record in this case does not support a finding of bad faith or a willful intent to deceive on the part of Counsel, the Court declines to impose monetary sanctions on him pursuant to Rule 11(b).

While the Court credits Counsel's assertion that he neglected to correct the false statements in the Affirmation — rather than wilfully included such statements therein — the Court takes this opportunity to note its disapproval of Counsel's conduct in this action. Specifically, the Court addresses (1) the Affirmation itself and the undisputed facts relating to its preparation; (2) Counsel's conduct immediately following his discovery of the misstatements in the Affirmation; and (3) Counsel's statements to this Court regarding his error — namely, Counsel's statements in his written submissions opposing defendants' *vacatur* motion, during

4

oral argument before this Court regarding that motion, and in Counsel's Response to the instant Order to Show Cause (the "Response"). For the following reasons, the Court finds that Counsel has failed to sufficiently observe his duties "'to exercise that degree of care, skill and diligence commonly possessed and exercised by a member of the legal community,'" *Iannazzo v. Day Pitney LLP*, No. 04 Civ. 7413 (DC), 2007 WL 2020052, at *6 (S.D.N.Y. July 10, 2007) (quoting *Nobile v. Schwartz*, 265 F. Supp. 2d 282, 288 (S.D.N.Y. 2003)) (additional internal citations omitted), and to fulfill "the obligations of truth, candor, accuracy, and professional judgment that are expected of [him] as [an] officer[] of the court," *Oliveri v. Thompson*, 803 F.2d 1265, 1267 (2d Cir. 1988).

In addition, the Court notes that Counsel's conduct is of particular concern where, as here, Counsel appeared "before a Judge seeking extraordinary relief *ex parte* . . . ." *Four Star Fin. Servs., LLC v. Commonwealth Mgmt. Assoc.*, 166 F. Supp. 2d 805, 810 (S.D.N.Y. 2001) (Martin, J.). Like Judge Martin, this Court emphasizes the fact that "[a]ttorneys are officers of the Court, and our system of justice cannot operate efficiently" if the Court is unable to rely on counsel in an *ex parte* proceeding to work diligently to ensure the accuracy of his representations to the Court. *See id.*

First, on its face, the Affirmation reflects an insufficient degree of care on Counsel's part in preparing the document. As the Court noted during oral argument:

> There's only six paragraphs in [the Affirmation]. . . . Most of the paragraphs, frankly, don't really go to the heart of [the issue of defendants'] presence in the district. The first [paragraph] is purely introductory. Number six is basically just the request. So, there's four substantive paragraphs, and clearly the most compelling one . . . with respect to presence in the district is paragraph two[,] in which you [Counsel] state unequivocally that you yourself attempted to locate the defendants, and that as part of that investigation, your office contacted the Division of Corporations of the New York Department of State and found no records indicating that the defendants were either incorporated or licensed to do business in the State of New York, which is false.

(Tr. of Sept. 5, 2007 Argument (hereinafter, "Argument Tr."), at 19.)

Counsel now concedes that, at the time he signed the Affirmation, he was aware that defendants WBC KS and WBC AS were, in fact, licensed with the State of New York as foreign corporations but that he nevertheless signed and submitted the Affirmation to the Court, along with the grossly inaccurate factual assertions contained therein. (*See, e.g.,* Argument Tr. at 18.) Therefore, as the Court previously stated, it appears that Counsel "signed a crucial *ex parte* affirmation without reading it in even the most cursory fashion. . . ."[4] (*Vacatur* Tr. at 13.)

Second, immediately following Counsel's discovery that the Affirmation contained false statements, it is clear that Counsel failed to

---

[4] In fact, Counsel appears to have approached an admission on this point — during oral argument, the Court asked Counsel: "did you just not read [the Affirmation] before you signed it and submitted it?" (Argument Tr. at 18.) Counsel replied: "I must have read [the Affirmation] *or did not read it.* . . . I can't explain it." (*Id.* at 19 (emphasis supplied).)

5

sufficiently observe his obligation to inform the Court in a timely manner of the material misstatements contained in the Affirmation. Specifically, it appears that Counsel discovered his error on August 10, 2007, but failed to take *any* steps to inform the Court that the Affirmation contained false statements until August 16, 2007. Indeed, Counsel did not inform the Court of his error until three days *after* defendants had submitted a letter to the Court regarding the false statements contained in the Affirmation. (*See* Counsel's Resp. Aff. ¶¶ 19-23.) Therefore, although Counsel now concedes, "[i]n hindsight," that he should have notified the Court immediately of the false statements in the Affirmation (Counsel's Resp. Aff. ¶ 21), the Court finds that Counsel failed, at least for a period of days, to abide by his "'continuing duty to inform the Court of any development which may conceivably affect the outcome' of the litigation." *Bd. of License Comm'rs of Tiverton v. Pastore*, 469 U.S. 238, 240 (1985) (quoting *Fusari v. Steinberg*, 419 U.S. 379, 391 (1975) (Burger, C.J., concurring)).

Finally, the Court notes that Counsel has repeatedly sought to minimize the severity of his error and/or to explain it away as a harmless "clerical error." (*See* Pl.'s Mem. Opp. *Vacatur*, at 6; Lyons Aff. in Opp. to *Vacatur* at ¶¶ 8-14.) For instance, during oral argument, Counsel characterized the misstatements in the Affirmation as a "mistake," but asserted that "Judge Karas would have still signed [the Affirmation]" in the absence of the false statements contained therein. (Argument Tr. at 20.) Similarly, in his Response, Counsel characterized the error as a mere "omission" of facts, (*id.*), and an "oversight" on his part, (Counsel's Aff. ¶ 15), which, in Counsel's view, did not "gain[] any advantage" for his client "since [Counsel] believed that a Rule B attachment was appropriate" in this case notwithstanding the misstatements in the Affirmation. (Counsel's Resp. Br. at 5.)

However, as the Court has previously noted, the purported harmlessness of Counsel's error "is not a determination that [Counsel] is entitled to make." (*Vacatur* Tr. at 14.) Moreover, in the Court's view, it is clear that Counsel's misstatements in the Affirmation, rather than relating to facts *collateral* to the resolution of plaintiff's *ex parte* application, squarely addressed the central issue involved in plaintiff's application — namely, defendants' "presence" in this district.  Indeed, the facts relating to defendants' license in New York State — once they were actually disclosed to the Court — provided the basis, in large part, for this Court's decision to vacate the attachment order. (*See Vacatur* Tr. at 2-8.) Thus, as the Court previously noted, it is clear that "[C]ounsel's confidence in the harmlessness of the misstatement at issue was highly misplaced."[5] (*Vacatur* Tr. at 14.)

In sum, it is clear that Counsel failed to diligently observe his duties to his client and as an officer of the Court in preparing and

---

[5] Plaintiff's appeal of the *vacatur* decision is currently pending with the Court of Appeals.  However, the Court notes that the criticisms offered herein would apply with equal force regardless of whether the Court of Appeals determines that this Court erred in finding that defendants were "present" in the district based, in part, on defendants' status as licensed corporations in New York State.  That is, even assuming *arguendo* that the Court of Appeals reaches a different conclusion as to the central issue in this action, it is beyond doubt that (1) the misstatements contained in the Affirmation were factually incorrect — that is, defendants WBC KS and WBC AS were, in fact, licensed with the New York State Division of Corporations — and (2) such misstatements figured significantly in the *Aqua Stoli* analysis in this action and, thus, the Court's determination as to the merits of plaintiff's *ex parte* application.

6

filing the Affirmation in an *ex parte* proceeding.[6] As the Court noted:

> Rule B is a powerful and in some ways unprecedented tool available to plaintiffs in maritime actions. There are good reasons for it. But[] it is premised on the assurance that plaintiffs and their counsel will act with care and candor in *ex parte* proceedings with the court. That clearly did not happen here.

(*Vacatur* Tr. at 15.)

### B. Protective Order

Counsel also requests a "protective order sealing the papers submitted and proceedings related to . . . the Order to Show Cause for Sanctions under Rule 11(b) . . . ." (Counsel's Oct. 9, 2007 Ltr., at 1.) Counsel argues that, absent a protective order, print publications dedicated to covering the maritime industry will publicize the sanctions proceeding, thus damaging Counsel's and his firm's reputation in the "maritime community." (*Id.* at 2.) For the following reasons, the Court denies Counsel's request for a protective order.

---

[6] The Court notes that, in the Response, Counsel misstates the standard applicable to the sanctions inquiry in this case. Specifically, Counsel asserts that "the standard to be applied . . . is an objective standard of reasonableness." (Counsel's Resp. Br. at 2 (internal citations omitted).) For the reasons discussed *supra*, the Court finds this standard inapplicable to the instant case. However, if the Court were to consider Counsel's conduct under the "objective reasonableness" standard, it would have likely found such conduct to be sanctionable. Specifically, the Court has serious doubts as to whether Counsel's actions could be deemed objectively reasonable where it is undisputed, as discussed *supra*, that he failed to discern and to correct gross misstatements of material facts in the Affirmation, and then failed to inform the Court of his error for six days.

"[T]he decision as to access [to judicial records] is one best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case." *Nixon v. Warner Comm'n, Inc.*, 435 U.S. 589, 599 (1978). The Second Circuit has explained this principle as follows:

> The presumption of access is based on the need for federal courts, although independent — indeed, particularly because they are independent — to have a measure of accountability and for the public to have confidence in the administration of justice. . . . Although courts have a number of internal checks, . . . professional and public monitoring is an essential feature of democratic control. . . . Such monitoring is not possible without access to testimony and documents that are used in the performance of Article III functions.

*United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995).

Thus, there is a strong presumption of public access to "judicial documents," or "items filed with the court that are relevant to the performance of the judicial function and useful in the judicial process." *See In re Terrorist Attacks on September 11, 2001*, 454 F. Supp. 2d 220, 222 (S.D.N.Y. 2006) (quoting *SEC v. TheStreet.com*, 273 F.3d 222, 231 (2d Cir. 2001) (internal quotation marks omitted)). "Accordingly, a party seeking a protective order sealing trial, other court hearings, or motions and accompanying exhibits filed with the court must satisfy a more demanding standard of good cause." *In re Terrorist Attacks*, 454 F. Supp. 2d at 222-23.

7

Nevertheless, the Second Circuit has also noted that "an abundance of statements and documents generated in federal litigation actually have little or no bearing on the exercise of Article III judicial power." *Amodeo*, 71 F.3d at 1049. As such, the Second Circuit has set forth a detailed analysis for the consideration of requests for protective orders. *See Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119-20 (2d Cir. 2006); *Standard Inv. Chartered, Inc. v. Nat'l Ass'n of Sec. Dealers, Inc.*, No. 07 Civ. 2014 (SWK), 2007 WL 2790387, at *3 (S.D.N.Y. Sept. 26, 2007). First, a court must determine whether "the documents are indeed 'judicial documents.'" *Lugosch*, 435 F.3d at 119. "In order to be designated a judicial document, the item filed must be relevant to the performance of the judicial function and useful in the judicial process." *Id.* (internal quotation marks and citation omitted). As to non-judicial documents, "such as those passed between the parties in discovery," *Amodeo*, 71 F.3d at 1050, there is no presumption of public access, and the movant need only make a showing of good cause in order to justify a protective order. *Lugosch*, 435 F.3d at 119. By contrast, as to items deemed "judicial documents," the court must determine the *weight* of the presumption of access due to such items by fixing their location on a "continuum" ranging "from matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance." *Amodeo*, 71 F.3d at 1049. "Finally, after determining the weight of the presumption of access, the court must 'balance competing considerations against it.'" *Lugosch*, 435 F.3d at 120 (quoting *Amodeo*, 71 F.3d at 1050). "Such countervailing factors include but are not limited to 'the danger of impairing law enforcement or judicial efficiency' and 'the privacy interests of those resisting disclosure.'" *Id.*

Here, the Court finds, as an initial matter, that the submissions relating to the sanctions proceeding — including the Order to Show Cause, plaintiff's response thereto, and the instant Order — are "judicial documents." *Lubosch*, 435 F.3d at 119. Specifically, it is beyond doubt that the items at issue are clearly "relevant to the performance of the judicial function," *id.*, insofar as it relates to the Court's duty under Rule 11 to determine "whether the attorney has abused the judicial process, and, if so, what sanction would be appropriate." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 396 (1990); *see Oliveri*, 803 F.2d at 867 ("[S]anctions against attorneys play a limited but necessary role in the administration of our civil justice system. . . . In recent years, . . . increasing attention has been focused upon lesser sanctions [under Rule 11] as a means of fine-tuning our litigation system to weed out some of its abuses and to improve its dispute-resolving function."). Indeed, the Court's "power to determine . . . the appropriateness of sanctions" under Rule 11 is so closely intertwined with the performance of the judicial function that it continues even *after* the court has been divested of jurisdiction over an action. *Perpetual Sec., Inc. v. Tang*, 290 F.3d 132, 141 (2d Cir. 2002); *see, e.g., Cooter & Gell*, 496 U.S. at 395 (finding that, even after the voluntary dismissal of an action, "a court must have the authority to consider whether there has been a violation of [Rule 11's] signing requirement"). As such, because Rule 11 specifically directs "the *court*" to "impose an appropriate sanction upon the attorneys . . . that have violated" its provisions, Fed. R. Civ. P. 11(c), it is clear that the items relating to the sanctions proceeding in this action constitute "judicial

documents."[7] *See Lubosch*, 435 F.3d at 119.

Next, with regard to the weight of the presumption to be accorded these items, the Court finds that the items are located substantially higher on the "continuum" described *supra* than those documents that the Second Circuit has specifically placed at the "low end" of the continuum — namely, "testimony or documents [that] play only a negligible role in the performance of Article III duties," such as discovery items that "come within a court's purview solely to insure their irrelevance." *Id.* at 119-21. Rather, as discussed *supra*, the items relating to the sanctions proceeding in this action come within the "court's purview," *id.*, for the essential purpose of permitting this Court to perform its Article III duties of deterring "abuse[s] [of] the judicial process" and imposing sanctions to achieve that end, if necessary. *Cooter & Gell*, 496 U.S. at 396. Accordingly, the Court finds that the items at issue here must be accorded a strong presumption of public access.

Finally, the Court considers the "competing considerations" which may weigh against applying the presumption of public access in this matter. 435 F.3d at 120. The sole consideration advanced by Counsel is his interest in avoiding the negative publicity, and the concomitant risk of injury to his firm's business, that Counsel asserts will arise from public disclosure of the items at issue. The Court rejects this consideration as a basis for overcoming the strong presumption of public access to these items. According to Counsel, the Order to Show Cause has already been the subject of an article in a maritime publication to which "70%" of Counsel's maritime clients subscribe. (Counsel's Oct. 9, 2007 Ltr., at 2.) In addition, the conduct of Counsel that prompted the Order to Show Cause has already been described, in detail, in two decisions previously issued by this Court — namely, the *vacatur* decision, delivered orally on the record, and the written stay decision — that Counsel does *not* seek to include in the proposed protective order. (*See Vacatur* Tr. at 9 ("[T]he supporting affirmation of this case contained what I consider to be serious misstatements of fact that to my mind require further comment and action by the [C]ourt . . . ."); *Centauri Shipping Ltd.*, 2007 WL 3025706, at *1-2 & n.2 (the stay decision) (noting, *inter alia*, that "the false statements regarding WBC KS' registration were included in the [Affirmation] due to a purported 'clerical error' by plaintiff's counsel").[8] Thus, in light of the extensive

---

[7] The Court notes that Counsel fails to present any authority in support of his assertion that the items relating to the sanctions proceeding are not "judicial documents." (*See* Counsel's Sept. 28, 2007 Ltr. at 2-3.) Although Counsel correctly asserts that the items at issue here do not directly pertain to "determining litigants' substantive rights" and, thus, lie outside of the category of items entitled to the *strongest* presumption of public access, *see Amodeo*, 71 F.3d at 1049, that fact does not alter the Court's conclusion that these items are "judicial documents" entitled to a strong presumption of access.

[8] In any event, even assuming *arguendo* that plaintiff's request for a protective order also encompasses the Court's *vacatur* and stay decisions, and the materials related thereto — rather than just the items related to the issue of sanctions — the Court finds that such items are clearly "judicial documents" entitled to the strongest presumption of access because they relate directly to the Court's adjudication of the merits of this action and the parties' substantive rights. *Lugosch*, 435 F.3d at 119. The Court also notes that the portions of these items that specifically address Counsel's misstatements in the Affirmation are directly relevant to the Court's adjudication of the merits. Specifically, as the Court observed in the *vacatur* decision, "the facts [relating to the misstatements in the Affirmation] would arguably justify *vacatur* of the [attachment order] as an exercise of the Court's equitable discretion generally recognized by the Second Circuit in [*Aqua Stoli*, 460 F.3d at 435]" and other maritime cases, though . . . it [is] not necessary to reach that finding for purposes of

9

information regarding Counsel's conduct that is already in the public domain and that is *not* within the scope of the protective order sought by Counsel, *see* Counsel's Oct. 9, 2007 Ltr. at 1-3, the Court finds that public access to the remaining items at issue — namely, Counsel's response to the Order to Show Cause and the instant Order — presents absolutely no risk of disclosing facts that would otherwise be unavailable to the public.

In any event, even assuming *arguendo* that such information had not already been disclosed to the public, the Court finds that Counsel has failed to overcome the strong presumption of public access that must be accorded to the documents at issue here. Indeed, the Court views disclosure of these items to be especially important where, as here, the Court has declined to impose money sanctions on Counsel and "is persuaded that little sanction beyond the publication of this [Order] is required to prevent repetition of similar conduct [by Counsel]." *Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, No. 98 Civ. 10175 (JSM), 2002 WL 59434, at *10 (S.D.N.Y. Jan. 16, 2002).

## IV. CONCLUSION

For the foregoing reasons, the Court DECLINES to impose sanctions on Counsel pursuant to Rule 11(b). In addition, Counsel's request for a protective order is DENIED.

SO ORDERED.

RICHARD J. SULLIVAN
United States District Judge

Dated: November 5, 2007
New York, NY

\* \* \*

Plaintiff is represented by Kirk M.H. Lyons, Esq., Lyons & Flood, L.L.P., 65 West 36th Street, 7th Floor, New York, New York 10018. Defendants are represented by Kevin John Lennon, Esq., and Patrick F. Lennon, Esq., Lennon, Murphy & Lennon, LLC, The GrayBar Building, 420 Lexington Avenue, Suite 300, New York, New York 10170.

---

the motion to vacate." (*Vacatur* Tr. at 14.)