UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/6/08
```

CENTAURI SHIPPING LTD.,

    Plaintiff,

-v-

WESTERN BULK CARRIERS KS, WESTERN
BULK CARRIERS AS, and WESTERN BULK, AS,

    Defendants.

No. 07 Civ. 4761 (RJS)
ORDER

RICHARD J. SULLIVAN, District Judge:

    Plaintiff Centauri Shipping Ltd. ("Centauri") commenced the above-entitled action on June 5, 2007, seeking, *inter alia*, a writ of attachment pursuant to Rule B of the Federal Rules of Civil Procedure, Supplemental Rules for Certain Admiralty and Maritime Claims. On that date, the Honorable Kenneth M. Karas, District Judge, signed an order permitting plaintiff to attach assets of defendants Western Bulk Carriers KS, Western Bulk Carriers AS, and Western Bulk AS, in the amount of $15,350,796.00 (hereinafter, "the attachment order").[1] (*See* Order dated June 5, 2007.) Subsequently, by order dated September 12, 2007, the Court vacated the attachment order (hereinafter, "the *vacatur*"). (*See* Order dated Sept. 12, 2007; *see also* Sept. 7, 2007 Tr.) On October 12, 2007, the Court denied plaintiff's motion for a stay of the *vacatur* pending appeal but ordered a temporary stay of the *vacatur* pending resolution of plaintiff's application to the Court of Appeals (hereinafter, the "Stay Order"). (*See* Order dated Oct. 12, 2007.) Moreover, because the Court denied plaintiff's motion for a stay of the *vacatur*, it did not resolve defendants' request seeking, in the event that a stay was entered, the issuance of a *supersedeas* bond.

---

[1] The case was reassigned to the undersigned on September 4, 2007.

On January 30, 2008, the Court of Appeals for the Second Circuit granted plaintiff's application to stay the *vacatur* pending appeal, and directed defendants to submit an application for a *supersedeas* bond to this Court. (*See* Jan. 30, 2008 Order at 2.)[2] By letters dated, respectively, February 20 and February 29, 2008, the parties submitted letter briefs to this Court regarding the amount of a *supersedeas* bond. On April 8, 2008, the Court heard oral argument regarding this issue. Thereafter, the parties each submitted supplemental letter briefs to the Court.

At oral argument regarding this issue, plaintiff's counsel stated that his client had previously "offered to provide a bond in the amount of the cost [to defendants] to maintain the surety bond. So [plaintiff is] obviously standing by that representation." (Apr. 8 Tr. at 9.) In its April 18 letter brief, plaintiff concedes that the cost to defendants of maintaining the surety bond is $312,753. (Pl.'s Apr. 18 Ltr. at 2 & n.1.)

Nevertheless, in its April 18 letter, plaintiff asserted for the first time that it "has a fundamental issue with the bond premium and associated cost[s]" to defendants of maintaining the surety bond. (*Id.*) Specifically, plaintiff argues that, in June 2007, defendants "could have" avoided the costs of the surety bond by obtaining a "bank guarantee or letter of credit" in lieu of the surety bond. (*Id.* at 2-3.) According to plaintiff, on June 11, 2007, plaintiff suggested to defendants that they obtain a bank guarantee, but defendants rejected that suggestion on the ground that they did "not have a bank in London or New York for such purposes." (*Id.* at 2 (quoting Defs.' June 11, 2007 Ltr.).) Plaintiff now — for the first time since the parties raised the issue of a *supersedeas* bond with the undersigned in September 2007 — "takes exception" to

---

[2] The Second Circuit noted that defendant was required to make such an application to this Court, in the first instance, pursuant to Rule 8(a)(1)(B) of the Federal Rules of Appellate Procedure, which provides that "A party must ordinarily move first in the district court for . . . approval of a supersedeas bond . . . ."

2

defendants' refusal to obtain a bank guarantee in lieu of a surety bond, and asserts, *inter alia*, that "a number of banks in New York," including defendants' own bank, "will issue letters of credit," which are purportedly "equivalent to bank guarantees."[3] (*Id.*)

The Court rejects plaintiff's arguments that the amount of the *supersedeas* bond should be reduced based on defendants' purported failure to obtain a specific form of alternative security in June 2007. Although plaintiff now "takes exception" to defendants' failure to obtain a bank guarantee in June 2007, plaintiff did not make these exceptions known to the Court at *any* point prior to plaintiff's April 18, 2008 letter, notwithstanding the fact that plaintiff's counsel has appeared for several conferences before the Court to discuss this issue and has submitted multiple letters and briefs to this Court, as well as the Court of Appeals (*see* Defs.' Apr. 18, 2008 Ltr., Ex. 3), that specifically address the issue of the *supersedeas* bond. To the contrary, throughout the course of this action, plaintiff has consistently indicated that the amount of the *supersedeas* bond should equal "the amount of money it would cost [defendants] to maintain the surety bond during the course of the appeal" in this action. (Sept. 28 Tr. at 16-17; *see* Pl.'s Feb. 29, 2008 Ltr. at 2; Apr. 8 Tr. at 9;.)

Moreover, even if plaintiff had diligently pursued this line of argument, the Court finds that plaintiff has failed to present *any* statute or authority, or any persuasive equitable argument, in support of its position that defendants were obliged to obtain security in precisely the form desired by plaintiff, or that defendants' failure to do so in June 2007 requires this Court to now reduce the amount of the *supersedeas* bond that should be posted by plaintiff pending appeal.

---

[3] In response, defendants maintain that (1) New York banks do not issue bank guarantees, and do not indicate a view as to whether "letters of credit" -- which are apparently distinct from bank guarantees — may be obtained from New York banks; and (2) they declined plaintiff's suggestion in June 2007 to obtain a bank guarantee for a number of reasons, including, *inter alia*, their concern that doing so would "have further exposed [defendants'] property to potential maritime attachment by other creditors" seeking to attach funds in this District. (Defs.' Apr. 18, 2008 Ltr. at 2-3.)

3

Rule 62(c) of the Federal Rules of Civil Procedure provides, in pertinent part:

> When an appeal is taken from an interlocutory or final judgment granting, dissolving, or denying an injunction, the court in its discretion may suspend, modify, restore, or grant an injunction during the pendency of the appeal upon such terms as to bond or otherwise as it considers proper for the security of the rights of the adverse party.[4]

Under Rule 62(c), "a *supersedeas* bond provides compensation for those injuries which can be said to be the 'natural and proximate result of the stay.'" *Moore v. Townsend*, 577 F.2d 424, 427 (7th Cir. 1978) (quoting *Weiner v. 222 East Chestnut Corp.*, 303 F.2d 630, 634 (7th Cir. 1962)).

In this case, given that the very purpose of the bond under Rule 62(c) is "to preserve the status quo pending [the] appeal . . . ," *Int'l Ass'n of Machinists and Aerospace Workers, AFL-CIO v. Eastern Air Lines, Inc.*, 847 F.2d 1014, 1018 (2d Cir. 1988), the Court finds that it would be inappropriate, at this time, to set the bond amount on the basis of plaintiff's dissatisfaction with surety arrangements that have been in place since June 2007. Rather, it is clear that the "injuries . . . result[ing]" from the stay in this case are the defendants' costs of maintaining the June 2007 surety bond — costs that would not exist but for the stay obtained by plaintiff — during the course of the appeal. *See Moore*, 577 F.2d at 427. Accordingly, the Court directs plaintiff to post a *supersedeas* bond in the amount of $312,753 in order to cover the costs to defendants of maintaining the surety bond in this action pending appeal.[5] Specifically, the

---

[4] Although plaintiff initially sought a stay under Rule 62(d), the parties now agree that the stay should be construed as one issued pursuant to Rule 62(c). (*See* Stay Order at 3-4.)

[5] It is undisputed that this amount is the cost to defendants of maintaining the surety bond through December 2008. (*See* Defs.' Apr. 18, 2008 Ltr., Ex. 1; Pl.'s Apr. 18, 2008 Ltr at 2 n.1.) In the event that it appears that plaintiff's appeal will not be resolved by December 31, 2008, the parties should apply to this Court for a modification of the amount of the *supersedeas* bond.

4

Court finds that such security is "necessary" under Rule 62(c) to "preserve the status quo pending [the] appeal" of this action. *Int'l Ass'n of Machinists*, 847 F.2d at 1018.

SO ORDERED.

Dated:   New York, New York
         May 5, 2008

                                          RICHARD J. SULLIVAN
                                          UNITED STATES DISTRICT JUDGE